# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| STEPHEN THAXTON and PATRICIA THAXTON, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>COLLINS ASSET GROUP, LLC, COLLINS & HILTON ASSET GROUP, LLC, DIVERSIFIED FINANCING, LLC, MARK W. MILLER, ALT MONEY INVESTMENTS, LLC, ALT MONEY INVESTMENTS II, LLC, ALT MONEY INVESTMENTS III, LLC, ALT MONEY INVESTMENTS IV, LLC, and SONOQUI, LLC,<br><br>Defendants. | Case No.:<br><br>__COMPLAINT – CLASS CTION__ |

## CLASS ACTION COMPLAINT

Plaintiffs Stephen Thaxton and Patricia Thaxton file this class action complaint individually and on behalf of all others similarly situated against Defendants Collins Asset Group, LLC ("Collins Asset Group"), Collins & Hilton Asset Group, LLC ("Collins & Hilton"), Diversified Financing, LLC ("Diversified Financing"), Mark William Miller, ALT Money Investments, LLC, ALT Money

Investments II, LLC, ALT Money Investments III, LLC, ALT Money Investments IV, LLC (the four ALT Money Investments entities are collectively referred to as the "ALT Money Entities" or "ALT Money"), and Sonoqui, LLC ("Sonoqui"). Plaintiffs further allege as follows:

## SUMMARY OF CASE

1.      This matter involves a fraudulent scheme orchestrated by and among Defendants who fraudulently induced Plaintiffs and Class Members to invest in what was falsely described to them as safe and conservative portfolios of commercial and customer accounts receivable market investments that were purportedly managed by Defendants Collins Asset Group and Collins & Hilton Asset Group, LLC and secured by the assets of Defendant Collins Asset Group, LLC.  Plaintiffs Stephen Thaxton and Patricia Thaxton are victims of this scheme and in April 2015 they invested approximately $222,000 of their hard-earned retirement savings into the scheme described below and lost their entire investment.

2.      Defendant Collins Asset Group, LLC is a debt collection company that was formed in Delaware on or about October 27, 2011.  The company operates throughout the United States, including Georgia, and its business involves purchasing distressed accounts receivable debt from commercial and customer accounts at a discount and then collecting that debt through its platform of collection agents and attorneys.

2

3.     The crux of Defendants' investment scheme is that from at least 2013-2018, Collins Asset Group, LLC and Collins & Hilton Asset Group, LLC raised investment capital from Plaintiffs and Class Members to purchase distressed accounts receivables for its business through the issuance of unregistered securities in the form of promissory notes issued to Plaintiffs and Class Members. At no time during the relevant time period, were any of the Defendants licensed in any capacity under federal law or in any State, including Georgia, to issue securities, sell securities, act as a broker-dealer, investment adviser or associated person of a broker-dealer or investment adviser, or to manage investments in any capacity.

4.     At all times material, Defendants operated in concert and disseminated marketing materials to Plaintiffs and Class Members containing material misrepresentations and omissions that falsely promised that Plaintiffs and Class Members would not only be guaranteed to receive their principal back at a future date, e.g. five (5) years after investing, but that Plaintiffs and Class Members would be able to participate and profit from Defendants Collins Asset Group, LLC's and Collins & Hilton Asset Group, LLC's expertise in collecting on the debt.  Also, Defendants falsely promised that Plaintiffs' and Class Members' investment principal would be 100% secured by the assets of Defendant Collins Asset Group, LLC.

5.     Defendants Collins Asset Group, LLC and Collins & Hilton Asset

Group, LLC (collectively referred to as "CAG") created and facilitated a layered investment scheme that structured the business, relationships, and written agreements with a network of shell companies, e.g. Defendants Diversified Financing, LLC, Sonoqui, LLC and the ALT Money entities (collectively referred to as "Fundraising Entities") in an to attempt to avoid repaying Plaintiffs and Class Members anything in return for their investments and to avoid the appearance that Defendants were selling unregistered and illegal securities.

6.     Defendants crafted the language of the promissory notes issued to Plaintiffs and Class Members in a way to attempt to insulate CAG from repaying the obligations under the notes and at the same time defraud Plaintiffs and Class Members into believing that their investments were safe and secured by the assets of Collins Asset Group, LLC.

7.     For example, even though CAG received some or all of the investment proceeds from the promissory notes issued, CAG was not listed as the maker or obligor on the promissory notes. Instead, the Fundraising Entities were identified as the maker of the notes. In addition, the promissory notes state that payments due to Plaintiffs and Class Members are secured by UCC liens obtained by CAG during their collection efforts for the benefit of Plaintiffs and Class Members. Defendant Collins Asset Group, LLC, however, listed the shell companies Diversified Financing, LLC and/or one of more of the ALT Money entities as the secured

creditors, which gives those entities a secured interest in the collateral, not Plaintiffs and Class Members. Copies of all active UCC Financial Statements on file with the State of Delaware filed by Collins Asset Group, LLC that list the Fundraising Entities as secured creditors and describe the collateral are attached as Exhibit A.

8.      Furthermore, as alleged in greater detail below, after Plaintiffs and Class Members invested with Defendants, Defendants actively concealed the fraudulent scheme from them by providing account statements and other documents containing false information meant to reassure Plaintiffs and Class Members that their investments were safe and performing properly when they were not.  For example, the false information included accounts statements sent to Plaintiffs and Class Members that provided false and inflated current values, false projected values at maturity, false distributions that were mischaracterized as reinvestments, and correspondence to investors reassuring them that their investments were safe.

9.      Between 2013 and 2018, CAG used the Fundraising Entities[1] to raise tens of millions of dollars in capital from over 100 investors.  All of the promissory notes sold to Plaintiffs and Class Members are now in default and the Fundraising Entities are now defunct and out of business, leaving Plaintiff and Class Members

_____

[1]      Fundraising Entities also includes individuals and entities that participated in this fraudulent scheme other than Mark Miller and ALT Money that participated in this fraudulent scheme that resulted in Class Members receiving promissory notes issued by Defendant Diversified Financing and Sonoqui.

with nothing in return for the tens of millions of dollars received by Defendants Collins Asset Group, LLC and/or Collins & Hilton Asset Group, LLC.

10.     Plaintiff and Class Members bring this class action against Defendants, in part, to obtain judgments against Defendants so that Plaintiffs and Class Members can exercise their contractual right to foreclose on the collateral listed in the UCC Financing Statements attached as Exhibit A.  In addition, and/or in the alternative, Plaintiffs and Class Members seek damages as a result of Defendants' fraudulent scheme that induced Plaintiffs and Class Members to invest.  Plaintiffs and Class Members also seek injunctive relief from this Court to prevent Defendants from assigning, transferring or otherwise disposing of any of the collateral described in Exhibit A or any proceeds derived by Defendant Collins Asset Group, LLC and/or Collins & Hilton Asset Group, LLC through its collections efforts on the collateral.

11.     As alleged in greater detail below, Defendants are liable to Plaintiffs and Class Members for breach of contract, breach of implied contract, breach of good faith and fair dealing, fraudulent misrepresentation and concealment, conspiracy to commit fraud, aiding and abetting fraud, breach of fiduciary duty, conspiracy to commit a breach of fiduciary duty, aiding and abetting breach of fiduciary duty, constructive fraud, conversion, violations of O.C.G.A. §16-14-4 (Georgia's RICO claim), unjust enrichment, injunctive relief, attorney's fees

pursuant to O.C.G.A. §13-6-11, and punitive damages pursuant to O.C.G.A. §51-12-5.1.

## PARTIES, JURISDICTION AND VENUE

12.    This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), the amount in controversy exceeds $5 million exclusive of interest and costs, there are more than 100 putative class members[2] and some of the Defendants have a different citizenship from Plaintiffs.

13.    Plaintiff Stephen Thaxton is a citizen and resident of the State of Georgia.

14.    Plaintiff Patricia Thaxton is a citizen and resident of the State of Georgia.

15.    Defendant Collins Asset Group, LLC ("Collins Asset Group") is a limited liability company organized and existing under the laws of the State of

[2] On January 27, 2020, Plaintiffs filed the original class action complaint in the Superior Court of Gwinnett County, Georgia.  Plaintiffs have a good faith basis to allege damages in excess of $5 million because subsequent to Plaintiffs' filing of the original class complaint, Defendant Collins Asset Group, LLC filed an interpleader complaint in the Southern District of New York alleging that more than $5 million is at issue and that there are more than 100 members of the class.

Delaware, is registered to do business in Georgia, and its registered agent's name and address is URS Agents, LLC, 3675 Crestwood Parkway, Suite 350, Duluth, Georgia 30096 in Gwinnett County, Georgia.  Therefore, this Court has personal jurisdiction over Defendant Collins Asset Group, LLC.

16.     Defendant Collins & Hilton Asset Group, LLC ("Collins & Hilton") is a limited liability company organized and existing under the laws of the State of Delaware and its principal place of business is located at 5725 W. Highway 290, Suite 103, Austin, Texas, 78735-8722. Collins & Hilton is not registered to do business in Georgia, and its registered agent's name is URS Agents, LLC, 28 Old Rudnick Lane, Dover, Delaware 19901.  At all times material,  Collins & Hilton acted as an agent for each and every other Defendant.  Collins & Hilton operated, conducted, engaged in or carried on a business or business venture in this State or had an agency in this State.  Collins & Hilton shared commissions and/or other forms of revenue with Mark Miller and ALT Money that were derived from the sale of the promissory notes in the State of Georgia.  Furthermore, Collins & Hilton committed tortious acts within this State.  In addition, Collins & Hilton engaged in solicitation or service activities within the State of Georgia that caused injury to Plaintiffs and Class Members.  The injury occurred within this State and/or arose out of an act or omission by Collins & Hilton inside and/or outside of this State.  Finally, Collins & Hilton engaged in substantial and not isolated activity within this State and could

reasonably have anticipated being haled into court in Georgia. Therefore, this Court has personal jurisdiction over Defendant Collins & Hilton.

17.     Defendant Diversified Financing, LLC is a limited liability company organized and created under the laws of the State of Florida on or about July 7, 2014, and was administratively dissolved on or about September 28, 2018 (without winding down), and its registered agent's name and address is/was Main Sail Financial LLC, 1391 NW St. Lucie West Boulevard, # 105, Port St. Lucie, Florida 34986. At all times material, Daryl Bank was the managing member of Diversified Financing. At all times material, Diversified Financing was the issuer of the promissory notes that were sold to Plaintiffs and/or Class Members in the State of Georgia. At all times material, Diversified Financing acted as an agent for each and every other Defendant. Defendant Diversified Financing operated, conducted, engaged in or carried on a business or business venture in this State or had an agency in this state. Diversified Financing shared commissions and/or other forms of revenue with Mark Miller and ALT Money Investments that were derived from the sale of the promissory notes in the State of Georgia. Furthermore, Diversified Financing committed tortious acts within this State. In addition, Diversified Financing engaged in solicitation or service activities within the State of Georgia that caused injury to Plaintiffs and Class Members. The injury occurred within this State and arose out of an act or omission by Diversified Financing inside and outside

of this State.  Finally, Diversified Financing engaged in substantial and not isolated activity within this State and could reasonably have anticipated being haled into court in Georgia.  Therefore, this Court has personal jurisdiction over Defendant Diversified Financing.

18.     Defendant Mark W. Miller is a citizen and/or resident of the State of Georgia.  This Court has personal jurisdiction over Defendant Mark W. Miller.

19.     At all times material, Defendants ALT Money Investments, LLC, ALT Money Investments II, LLC, ALT Money Investments III, LLC, and ALT Money Investments IV, LLC are limited liability companies that were organized between May 22, 2013 and June 9, 2014 and existing under the laws of the State of Texas and its registered agent's name and address is Asset Exchange Strategies, LLC, 13581 Pond Springs Road, Suite 450, Austin, Texas 78729.  The ALT Money entities ceased being registered to do business in Texas in 2016 but upon information and belief have not been winded down.  According to the State of Texas Comptroller of Public Accounts' website, ALT Money's principal place of business is 410 Peachtree Parkway, Suite 4245, Cumming, Georgia 30041-7407. In addition, the marketing materials provided to Plaintiffs by ALT Money state that at all times material, ALT Money entities maintained and engaged in continuous and systematic business activities at Five Concourse Parkway, Suite 2850, Atlanta, Georgia 30328.  According to the Georgia's Secretary of State's website, none of the ALT Money

entities are registered to do business in this State even though their principal place of business is currently in Georgia and it is continuously and systematically engaged in business activities in this State, which by itself establishes that this Court has personal jurisdiction over Defendants ALT Money.

This Court also has personal jurisdiction over Defendants ALT Money pursuant to O.C.G.A §9-10-91, Georgia's long-arm statute.  At all times material, Mark Miller, a Georgia resident and/or citizen, was the managing member of ALT Money Entities that have used or possessed real property within this State.   In addition, ALT Money issued and/or sold the promissory notes at issue to Plaintiffs and Class Members in the State of Georgia.  At all times material, ALT Money acted as an agent for each and every other Defendant in furtherance of their fraudulent scheme.  ALT Money operated, conducted, engaged in or carried on a business or business venture in this State or had an agency in this State.  ALT Money shared commissions and/or other forms of revenue with Mark Miller and the other ALT Money Investments entities that were derived from the sale of the promissory notes in the State of Georgia.  Furthermore, ALT Money committed tortious acts within this State.  ALT Money engaged in solicitation or service activities within the State of Georgia that caused injury to Plaintiffs and Class Members.  The injury occurred within this State and/or arose out of an act or omission by ALT Money inside and/or outside of this State.  Finally, ALT Money engaged in substantial and not isolated

activity within this State and could reasonably have anticipated being haled into court in Georgia.  Therefore, this Court has personal jurisdiction over Defendants ALT Money.

20.    Defendant Sonoqui, LLC is a limited liability company, which was originally formed as a Texas limited liability company, converted to a Florida limited liability company about two months prior to the arrest of its principals Daryl Bank and Raeann Gibson, and that has been administratively dissolved. Upon information and belief, Defendant Sonoqui, LLC is another shell company and the alter ego of Diversified Financing, LLC that Daryl Bank and/or Raeann Gibson used to illegally raise investor funds for one or more of the other Defendants. Like Defendant Diversified Financing, LLC, Defendant Sonoqui's registered office was located at 1391 NW St. Lucie West Boulevard, # 105, Port St. Lucie, Florida 34986. The company did not properly wind down and is currently administratively dissolved.  The company can be served via its registered agent at Registered Agents, Inc., 7901 4th Street North, Suite 300, St. Petersburg, Florida 33702.

At all times material, Sonoqui acted as an agent for each and every other Defendant.  Defendant Sonoqui operated, conducted, engaged in or carried on a business or business venture in this State or had an agency in this state.  Sonoqui shared commissions and/or other forms of revenue with the other Defendants that were derived from the sale of the promissory notes in the State of Georgia.

Furthermore, Sonoqui committed tortious acts within this State.   In addition, Sonoqui engaged in solicitation or service activities within the State of Georgia that caused injury to Plaintiffs and/or Class Members.  The injury occurred within this State and arose out of an act or omission by Sonoqui inside and outside of this State. Finally, Sonoqui engaged in substantial and not isolated activity within this State and could reasonably have anticipated being haled into court in Georgia.  Therefore, this Court has personal jurisdiction over Defendant Sonoqui.

21.    Venue is proper within this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events, acts, and omissions giving rise to Plaintiffs' and Class Members' claims occurred in this District.

## STATEMENT OF FACTS

**A.    Collins Asset Group, LLC and Collins & Hilton Asset Group, LLC hold themselves out as a premier debt collections organization with specialized expertise in collecting on accounts receivables.**

22.    Defendants Collins Asset Group, LLC and Collins & Hilton Asset Group, LLC were formed in Delaware on or about October 27, 2011.

23.    To cultivate a trust relationship with Plaintiffs and Class Members, Defendants created and disseminated glossy uniform marketing materials that were presented to Plaintiffs and Class Members prior to investing which stated in pertinent part:

Collins & Hilton Asset Group, LLC was founded in 2011 on a

foundation of trust and integrity; the management team has more than 90 years of industry leadership experience.  The company leverages its wealth of experience and the science of analytics to access and liquidate distressed debt portfolios.  No name is more well-known or more respected in the distressed debt industry than that of Walt Collins.  Walt was present at the creation of the modern technology-driven collection industry and of the Debt Buyers Association International ("DBA"), reaching back to the mid-1990's.  He was the founding member of the Board of Directors of the DBA, and the second president of the Association.  As such, Walt has been instrumental in the evolution of the industry from one characterized by "uncontrolled gun-slingers" to one in which the DBA Code of Ethics fosters honesty and integrity among industry participants.

24.    To further garner the trust of Plaintiffs and Class Members, CAG tapped into the brand recognition of the Hilton Hotels by including Brad Hilton's last name in the name of Collins & Hilton Asset Group, LLC. The same glossy marketing material discussed above also states in pertinent part:

## HISTORY OF THE HILTON NAME

Conrad Hilton, founder of Hilton Hotels is known for bringing quality and integrity to the hospitality industry.  Brad Hilton, grandson of Conrad, has dedicated his professional career to continuing the rich tradition started by his grandfather.  Brad has joined forced with Walt Collins to extend the reach and impact of Collins & Hilton Asset Group within the Accounts Receivable industry.  As President of Collins & Hilton Asset Group, Brad brings over 12 years of being a successful entrepreneur, including 3 years focused on the Accounts Receivable industry.

## MISSION STATEMENT

Collins & Hilton Asset Group's mission to provide the benefits of the distressed debt market to our investors.  This will be accomplished by using our expertise and years of experience to purchase liquidate service and resell portfolios of charged-off consumer debt.

Our mission further requires us to accomplish the goals above while maintaining the ethical behavior, trust and dignity that the Collins reputation was built upon.

25.    Despite Collins & Hilton Asset Group's claimed expertise and its ability to "provide the benefits of the distressed debt market to our investors," at no time during the relevant time period was Collins & Hilton Asset Group, LLC or Collins Asset Group, LLC licensed in any capacity under federal law or in any State, including Georgia, to issue securities, sell securities, act as a broker-dealer, investment adviser or associated person of a broker-dealer or investment adviser, or to manage investments in any capacity.

26.    In addition, upon information and belief, Defendant Collins & Hilton Asset Group, LLC was nothing more than a shell company created by Walt Collins and Collins Asset Group, LLC to use the Hilton name to entice investors to raise money for Defendant Collins Asset Group, LLC to purchase distress accounts receivable debts for its business operations.

**B.    From at least 2013-2018 Defendants Collins Asset Group, LLC and Collins & Hilton Asset Group, LLC used Diversified Financing, the ALT Money entities, Sonoqui, Mark Miller and Daryl Bank and their network of shell-company fundraising entities to embark on a nationwide campaign to illegally raise capital through the sale and issuance of unregistered promissory notes.**

27.    Defendant ALT Money Investments, LLC was formed in Texas on May 22, 2013. Defendant ALT Money Investments II, LLC was formed in Texas on June

18, 2013.  Defendant ALT Money Investments III, LLC was formed in Texas on September 30, 2013.  Defendant ALT Money Investments IV was formed in Texas on June 9, 2014.

28.    At all times material, Defendant Mark W. Miller was the managing member of the ALT Money entities and operated those businesses from their principal place of business in Georgia.  At no time during the relevant time period was Mark W. Miller or any of the ALT Money entities licensed in any capacity under federal law or in any State, including Georgia, to issue securities, sell securities, act as a broker-dealer, investment adviser or associated person of a broker-dealer or investment adviser, or to manage investments in any capacity. In fact, in 2010, the Kansas Securities Commission barred Miller from associating with any broker-dealer or investment adviser registered in Kansas for a period of three years.  The Consent Order also barred Miller from registrations as an investment adviser for a period of three years.  Miller was also fined $10,000 by the Kansas Securities Commission.

29.    Defendant Diversified Financing, LLC was formed in Florida on July 7, 2014.  At all times material, Diversified Financing's managing member was Daryl Gene Bank. At no time during the relevant time period was Bank or Diversified Financing licensed in any capacity in any State, including Georgia, to issue securities, sell securities, act as a broker-dealer, investment adviser or associated

person of a broker-dealer or investment adviser, or to manage investments in any capacity.

30.     According to publicly available sources, Daryl Bank has a long history of defrauding investors by: (1) offering private equity offerings to investors through unregistered sales agents based on misrepresentations and omissions; (2) issuing illegal unregistered promissory notes to investors through a complex web of shell companies, and (3) then diverting investors' funds to enrich Banks and other unregistered persons or entities involved in the scheme.

31.     Bank  is currently being criminally prosecuted by the U.S. Attorney's Office in the Eastern District of Virginia for defrauding at least 300 investors out of at least $20 million.  As alleged in the indictment, Bank created, owned, and operated dozens of limited liability companies to defraud investors through the issuance of unregistered promissory notes.

32.     The United States Securities and Exchange Commission ("SEC") also filed an enforcement action in the United States District Court, District of Arizona, Case No. 2:15-cv-0609-SMM, alleging that Bank used dozens of shell entities to defraud investors through the issuance of unregistered securities, i.e. promissory notes, that resulted in a Final Judgment dated February 8, 2018 finding Bank liable for disgorgement of approximately $5 million.  See Dkt. 256, 2:15-cv-00609-SMM.

33.     In March 2016, after obtaining a temporary restraining order against

Bank in 2015, the Commonwealth of Virginia brought an action against Bank for engaging in the same type of unlawful conduct described above.  See SEC-2015-00020, Rule to Show Cause. According to the Commonwealth of Virginia's Show Cause Complaint, Bank was a former Bank of Commonwealth employee and in 2010, Financial Industry Regulatory Authority ("FINRA") barred him from the securities industry for allegedly misappropriating approximately $160,000 in commissions and other payments from his firm. See *Id*. at ¶11; see also FINRA Disciplinary Proceeding No. 2008012955302.  Shortly thereafter, Bank created the scheme described above that used numerous Virginia shell companies that were headquartered in Virginia to perpetrate his fraud.

34.     Importantly, according to the Virginia Show Cause Complaint:

> After the Division filed its Motion for Temporary Injunction on June 29, 2015 challenging the legitimacy of the Defendants' securities business and practices, the Defendants shuttered their remaining Virginia-based limited liability companies (without notice or distributions to the investors who were members of and investors in those companies), and transferred their headquarters from Virginia Beach, Virginia, to Port St. Lucie, Florida, leaving existing investors with no distributions, assets, or other enforceable investment interests.

Id. at ¶6.

35.     According to the UCC Financing Statements attached as Exhibit A that were filed by Collins Asset Group, LLC in the State of Delaware, Diversified Financing and/or one of more of the ALT Money entities issued illegal promissory notes to hundreds of investor victims between 2013-2018.  In addition, the filings

state that Defendant Collins Asset Group, LLC currently has well over $500,000,000.00 of accounts receivable accounts pledged to Diversified Financing, LLC as collateral to secure the promissory notes issued to Plaintiffs and Class Members. Further, according to the UCC Financing Statements attached as Exhibit A, on or about March 27, 2019, Collins Asset Group, LLC pledged at least $423,737.69 in cash to Diversified Financing as collateral to secure the promissory notes at issue.

**C.    The CAG Defendants acted in concert with the Fundraising Entities, ALT Money and Diversified Financing, Sonoqui, and their managing members, Mark Miller and Daryl Bank, to fraudulent induce Plaintiffs and Class Members to invest in CAG by using uniform marketing materials and sales presentations containing material misrepresentations and omissions to sell them unregistered securities.**

36.   As explained above, the crux of Defendants' investment scheme is that from at least 2013-2018, CAG engaged in an enterprise that raised investment capital from Plaintiffs and Class Members to purchase distressed accounts receivables for its business through the issuance of unregistered securities in the form of promissory notes issued to Plaintiffs and Class Members.

37.   At all times material, Defendants operated in concert to convince Plaintiffs and Class Members that their investments would not only be guaranteed to receive their principal back within five (5) years but that they were entitled to participate in the profits created by CAG's expertise in collecting on the debt. Finally, and importantly, the promissory notes themselves were titled "Secured"

promissory notes and the uniform marketing material and sales presentations stated that Plaintiffs' and Class Members' investments were at all times 100% secured by the assets of Collins Asset Group perfected by UCC Financial Statements.

> **1.    The uniform marketing materials and sales presentations were designed to establish a fiduciary relationship with Plaintiffs and Class Members.**

38.    As part of the fraudulent scheme and enterprise, beginning in 2013, Defendants CAG used the Fundraising Entities, Defendants ALT Money and Diversified Financing, Sonoqui, and their managing members, Mark Miller and/or Daryl Bank to create a fiduciary relationship with Plaintiffs and Class Members to fraudulent induce them into investing with Defendants CAG.

39.    The marketing materials were designed to sell the investment opportunity to investors based on trust in all Defendants and based on the expertise of the CAG Defendants in generating profits from buying portfolios of distressed accounts receivable debt and collecting on it.

40.    For example, Defendant Miller and the ALT Money entities presented and/or provided Plaintiffs and Class Members with a glossy brochure discussing Defendant Mark Miller's credentials, which stated pertinent part:

- QUALIFIED REGISTERED FINANCIAL CONSULTANT ADVISOR- RFC: The Gold Standard in Advice;

- Introducing Mark Miller…Best Selling Author & Registered

Financial Consultant;

- He is known nationally as America's Safe Money Expert and counsels clients on secure ways to preserve and grow investment assets in good times and bad;

- "Miller provides practical and creative ways to plan for the future."- **Associated Press**

- "Some consider Miller their money guru."- **Money Magazine**

- "Mark, I commend you on your efforts to help Americans achieve their financial dreams. The hallmark of a great American is sacrificing for those in need." - **President George W. Bush**

41.     Another brochure that Mark Miller provided to Plaintiffs prior to investing related to his credential as qualified registered financial consultant advisor and represented that Miller owed Plaintiffs a fiduciary duty.  For example, the brochure purported created by the *International Association of Registered Financial Consultants* stated in pertinent part:

RFC Code of Ethics

- I will at all times put my client's interests above my own.
- I will maintain proficiency in my work through continuing education.
- When fee-based services are involved, I will charge a fair and reasonable   fee based on the amount of time and skill required.
- I will abide by both the spirit and the letter of the laws and regulations   applicable to financial planning services.
- I will give my clients the same service that I would give to myself in the same circumstances.

42.     In truth, neither Defendant Miller nor the ALT Money Entities were

registered or licensed in any capacity under federal law or in any State, including Georgia, to issue securities, sell securities, act as a broker-dealer, investment adviser or associated person of a broker-dealer or investment adviser, or to manage investments in any capacity.

43.    The CAG Defendants were intimately involved in the sales process to help close the sale to Plaintiffs and Class Members.  For example, the CAG Defendants, including Walt Collins, participated on conference calls before and after the sale to tout how good of an investment opportunity it was and in fact, invited Plaintiffs to fly to Texas to meet him person.

44.    Also, in addition to the glossy brochure discussed above touting Collins & Hilton's credentials and Hilton Hotel pedigree, the CAG Defendants jointly created a sales brochure with Defendants Mark Miller and his ALT Money entities, which also was designed to establish a  fiduciary relationship and that pitched the investment opportunity to Plaintiffs and Class Members as a legitimate, exclusive and safe.  For example, the glossy marketing materials that Defendant Mark Miller, the managing member of ALT Money Investments, LLC, provided to Plaintiffs at or around the time that they invested in April 2015 stated in pertinent part:

ABOUT ALT MONEY INVESTMENTS, LLC

ALT Money Investments, LLC (ALT Money) is a member-owned Limited Liability Company committed to providing the benefits of the commercial and consumer accounts receivable market (ARM) to select members.  It is a premier and elite alternative financial offering. ALT

Money provides individuals with a unique opportunity to participate in commercial and consumer accounts receivable portfolios purchased at a deep discount and then collected using a multifaceted recovery approach.  ALT Money has aligned with Collins & Hilton Asset Group, LLC (Collins and Hilton), a pioneer and recognized market leader in the ARM industry.   This relationship creates an unprecedented opportunity for our members to experience well above average financial gains.

\*\*\*

IF IT'S SO GOOD WHY HAVEN'T I HEARD IF THIS OPPORTUNITY

BEFORE?

Traditionally this asset class has been the purview of large institutional investors and publicly traded companies.  The large institutions have been benefiting from this asset class for decades, so few individuals have had any access.  What's new is the opportunity for individuals just like you to reap the rewards from this well proven marketplace.  Now, you can benefit from this unique asset class via the relationships ALT Money has cultivated.

> **2.   The uniform marketing materials and sales presentations contained material misrepresentations.**

45.   Defendants acting in concert with one another made, among others, the

misrepresentations in the uniform marketing materials and sales presentations.

46.   For example, in a uniform brochure presented to the Plaintiffs and Class

Members, Defendants falsely represented:

• That Miller was registered to sell securities when, in fact, Miller had not been registered in any capacity since 2008, according to his CRD, and had been barred by the Kansas   Securities Commissioner from 12/31/2008 through 12/30/2011.

• That ALT Money "deployed capital" when no investor money flowed through ALT   Money; rather, investors' money flowed to Collins Asset Group, LLC.

- That investor money would be used by CAG Defendants to purchase, sell and collect debts and return income to investors when, in fact, some or all of the investors' money was subject to undisclosed fees and charges.

- That Collins & Hilton was the entity that would use investor money to purchase, sell and collect debts and return income to investors when, in fact, the entity was Collins Asset Group, LLC.

- That Collins & Hilton would utilize "decades" of experience to purchase, sell and collect debts and return income to investors when, in fact, Collins & Hilton was only created on 10/27/2011.

- That holding the investors' money in the self-directed IRA accounts used by Defendants would provide protection and "redundant" protection when, in fact, such accounts are not protected at all and Defendants in fact used the self-directed IRA accounts to divert some or all of Plaintiffs' and Class Members' investment principal to themselves.

- That the purported investment opportunity described in the brochure was lawful and legitimate when, in fact, it was part of a fraudulent scheme organized and managed by CAG, pursuant to which Defendants obtained investor financing in violation of applicable securities laws.

- That Plaintiffs and Class Members were or would share ownership as members of ALT Money Investments, LLC as a result of their investment when in fact that all Plaintiffs received were the promissory notes at issue.

47. With regard to Plaintiffs' and Class Members' investments being safe and <u>secured</u> by CAG, the same brochure contained the following material misrepresentation:

<u>HOW AM I PROTECTED?</u>

The ALT Money structure is designed to minimize risk while maximizing the opportunity to recover the value from the purchased assets, thereby generating well above average returns. ALT Money has

chosen Collins & Hilton to analyze and recover the value of the assets purchased, a company whose executives have a combined 100+ years of experience in the accounts receivable asset market. <u>Collins & Hilton provides security to ALT members in the form of a promissory note of funds placed and supporting documentation of ownership including security agreements and UCC filings.</u> To provide ALT Money members with additional protection and redundancy, all members accounts are held at Provident Trust Group, an independent $4 billion custodian.  All account funds and transactions are also reviewed regularly by an independent accounting firm. (Emphasis added).

48.    In truth, the CAG Defendants provided the shell companies ALT Money and Diversified Financing with a security interest in the assets of Defendant Collins Asset Group, LLC.

49.    Under the heading "Value Chain Life Cycle" in the same brochure, Defendants falsely represented:

• That the investments were safe and valuable.

• That a process would be used to grow the value of Plaintiffs' and Class Members investments.

• That clients would execute an agreement with ALT Money when in fact, Plaintiffs were provided and signed a promissory note listing Defendant Diversified Financial as the maker, not ALT Money.

• That there was a "Method for Deploying Capital into the Accounts Receivable," when, in     fact, some or all of the investors' capital was diverted to one or more of the Defendants.

• That "recovered dollars" would be "reinvested to grow value" when, in fact, nothing of the sort occurred.

• That "[a] position in the Accounts Receivable marketplace through ALT Money Investments LLC may be the growth/capital preservation strategy you seek

to help balance your portfolio," when, in fact, there was no such growth/capital preservation strategy, only a fraudulent scheme.

• That Plaintiffs and Class Members would be "members" of ALT Money Investments LLC, when, in fact, they were not.

50. In a separate chart presented to Plaintiffs and Class Members,

Defendants falsely represented:

• That Plaintiffs' and/or Class Members' portfolio would have a Beta Risk Mitigation of -.38%, meaning that it would be 138% less risky that the 1.0% beta of the stock market, when, in fact, Plaintiff's and Class Members' portfolios were substantially riskier than the stock market.

• That money invested in Collins and Hilton would consistently increase in value with return on investment in the range of a "Low End Estimate" of 13.46% and an "Actual" return of 18.03%, when, in fact, there was no legitimate basis for such projections.

### 3. The uniform marketing materials and sales presentations contained material omissions.

51. Defendants acting in concert with one another made material omissions

as well. For example, they failed to disclose, among other things:

• That holding the investors' money at a self-directed IRA custodian allowed the Defendants to provide false valuations of the current values of the investments.

• That the investors' proceeds were not actually held in the self-directed IRA accounts. In reality, Defendants used the self-directed IRA accounts to funnel Plaintiffs' and Class Members' money to themselves and replace the money in the accounts with a virtually worthless illiquid promissory note.

• That there was no additional protection in holding the investors' money in Provident Trust accounts and that such accounts were even more risky.

• That Miller was not registered or licensed as an investment adviser or an associated person of a broker dealer since 2008.

• That Defendants pocketed substantial sums of the Plaintiffs' and Class Members' money for their own undisclosed uses rather than purchasing accounts receivables as promised.

• That Defendants commingled investor funds with funds from other business ventures.

• That Defendants used a layered structure to funnel investor funds from the fundraising entities (e.g., Diversified Financial) to Collins Asset Group, LLC and themselves.

• That, in furtherance of their scheme, Defendants provided Plaintiffs and Class Members with uniform marketing materials that concealed the use of investor funds for referral fees, commissions and payments to Defendants, and that Defendants controlled how much of these funds they paid to themselves.

• That Defendants did not use standard private placement memoranda, but instead used marketing materials containing false and misleading representations to describe the purported investment opportunity.

• That Plaintiffs' and Class Members' money was pooled with other investors.

• That Plaintiffs and Class Members did not share ownership in an LLC or private membership association.

52. Defendants' knew or were reckless or negligent in not knowing that the representations and omissions were false and misleading.

53. Defendants made the misrepresentations and omissions with the intent to deceive Plaintiffs and Class Members into investing in Defendants' fraudulent scheme.

54.     Defendants' misrepresentations and omissions were material because it was important to Plaintiffs' and Class Members, and it would be important to any reasonable investor to know the truth about what Defendants misrepresented and failed to disclose to them in deciding whether or not to invest their money in Defendants' purported investment opportunity – i.e., the promissory note investments.

**D.     The marketing materials and promissory notes purport to give Plaintiffs and Class   Members a secured interest in the assets of Defendant Collins Asset Group, LLC.**

55.     As pointed out above, the uniform marketing materials clearly state that CAG would provide security to ALT Members, i.e. Plaintiffs and Class Members, _not_ the shell companies, Defendants Diversified Financing, LLC and the ALT Money entities.

HOW AM I PROTECTED?

The ALT Money structure is designed to minimize risk while maximizing the opportunity to recover the value from the purchased assets, thereby generating well above average returns.  ALT Money has chosen Collins & Hilton to analyze and recover the value of the assets purchased, a company whose executives have a combined 100+ years of experience in the accounts receivable asset market.  **Collins & Hilton provides security to ALT members** in the form of a promissory note of funds placed and supporting documentation of ownership including security agreements and UCC filings. To provide ALT Money members with additional protection and redundancy, all members accounts are held at Provident Trust Group, an independent $4 billion custodian.  All account funds and transactions are also reviewed regularly by an independent accounting firm. (Emphasis added).

56.     Furthermore, the promissory notes are entitled, *15% Targeted **Secured***

*Promissory Notes*. The promissory notes state that the repayment obligations to

Plaintiffs and Class Members are secured by "UCC liens obtained by the Master

Servicer, [i.e. Collins Asset Group, LLC], during their Collection Efforts."

**E.     As part of the scheme, Collins Asset Group, LLC listed the shell-companies  Diversified Financing, LLC and ALT Money as the maker on the promissory notes,          not Collins Asset Group, LLC, and gave the shell companies a secured interest in its   assets, not Plaintiffs and Class Members.**

57.     As alleged above, as part of the fraudulent scheme, Defendants CAG

named the shell-company Fundraising Entities, Diversified Financing and ALT

Money, as the maker or obligor on the promissory notes.  In addition, as explained

above, instead of filing UCC Financing Statements naming Plaintiffs and Class

Members as secured creditors, Defendant Collins Asset Group, LLC named

Diversified Financing and/or ALT Money as secured creditors, which gives those

entities a secured interest in the collateral, not Plaintiffs and Class Members.

**F.     Defendants subsequently acted in concert and used the layered structure of the scheme to funnel investor funds to themselves and to avoid repaying Plaintiffs and Class Members.**

58.     The promissory notes state "[a]ll unpaid principal, interest, and other

amounts, other than any amounts due pursuant to Payee's Right of Participation,

owing under this note shall be due and payable in full on the date that is five (5)

years from the Effective Date," i.e. the date of issuance. Defendant Collins Asset

Group, LLC is identified as the "Master Servicer" in the promissory notes and is responsible to engage in collections efforts to generate revenue to repay Plaintiffs and Class Members.

59.    Once Plaintiffs and Class Members made their investment though, Collins Asset Group, LLC controlled how much of these funds they paid to themselves as well as referral fees, commissions, and fees to the other Defendants. Defendant Collins Asset Group, LLC also had total control over setting the current values of the promissory notes as listed on account statements sent to Plaintiffs and Class Members as well as valuing the collateral used to secure the promissory notes. Furthermore, even though the marketing materials stated that 100% of investor funds would be used by Collins Asset Group, LLC to purchase the accounts receivable assets, Defendants did not disclose to investors how much of their investment, if any, went toward the cost to purchase the promised accounts receivable assets and Defendant Collins Asset Group, LLC.  In short, once Plaintiffs and Class Members made their investments, Defendant Collins Asset Group, LLC had complete control of the scheme and used the layered entities to engage in a shell game for the purpose of attempting to not repay Plaintiffs and Class Members for their investments at all.

    **1.**    **On or about July 11, 2018 and again on March 27, 2019, Collins Asset Group, LLC attempted to wipe away the collateral of Class Members, who had promissory notes issued by ALT Money by fully assigning the collateral to Diversified Financing.**

60.     For example, on or about September 6, 2013, Collins Asset Group, LLC filed a UCC Financing Statement naming itself as the debtor and Defendant ALT Money Investments II, LLC as the Secured Creditor. See Exhibit A at Thaxton Class Complaint 00002.  Presumably, Collins Asset Group, LLC filed the UCC Financing Statement to provide collateral to secure the total face value of the promissory notes issued prior to September 6, 2013 by ALT Money Investments II, LLC to Class Members.

61.     According to the UCC filing, the total face value of the collateral used to secure the promissory notes was in the amount of $108,924,018.04 in Collins Asset Group's accounts receivables. See Id.  Upon information and belief, these promissory notes sold to Class Members constituted the first tranche of investments sold in this fraudulent scheme.  At the time that the promissory notes to Class Members in 2013, Diversified Financing, LLC was not yet in existence.

62.     Since Defendants ALT Money Investments, LLC and ALT Money Investments II, LLC were incorporated on or about May 22, 2013 and June 18, 2013, it logically follows that the first investors invested and were issued promissory notes between May 22, 2013 and September 13, 2013, the date that Defendant Collins Asset Group, LLC filed the above described UCC Financing Statement.

63.     The secured promissory notes at issue state in substance that "[a]ll unpaid principal, interest, and other amounts, other than any amounts due pursuant

to Payee's Right of Participation, owing under this note shall be due and payable in full on the date that is five (5) years from the Effective Date," i.e. the date of issuance.

64.     As result, for those Class Members who were issued promissory notes by ALT Money Investments I or II, LLC, their secured promissory notes were set to mature between May 22, 2018 and September 6, 2018.

65.     On July 11, 2018, Collins Asset Group, LLC filed a UCC Financing Statement Amendment that fully assigned all of the collateral that protected investors with those notes issued by ALT Money Investments I and II, LLC to Diversified Financing, LLC, wiping away the assets that were meant to protect Class Members with promissory notes issued by ALT Money Investments II, LLC.  See Exhibit A at Thaxton Class Complaint 00006.

66.     On the same date, Collins Asset Group filed another UCC Financing Statement Amendment fully assigning the collateral securing for a separate tranche of promissory notes issued by ALT Money Investments IV, LLC to Diversified Financing, which was mean to attempt to wipe away collateral meant to protect Class Members with promissory notes issued by ALT Money Investments IV.  See Exhibit A at Thaxton Class Complaint 00007-00014.

67.     Given that ALT Money Investments II, LLC was already dissolved by July 11, 2018 and Diversified Financing, LLC was not in existence in 2013 when

the ALT Money II promissory notes were issued, there is no other plausible explanation for the full assignment other than that Defendant Collins Asset Group, LLC fully assigned its collateral to Diversified Financing, LLC to avoid repaying the Class Members with promissory notes issued by ALT Money Investments II, LLC on or before September 6, 2013.

> **2.    On June 28, 2018, approximately two weeks before the assignment of collateral occurred, Defendant Mark Miller attempted to actively conceal Collin Asset Group, LLC's fraudulent transfer from ALT Money II to Diversified Financing by sending a blast email to Plaintiffs and Class Members containing misrepresentations and omissions.**

68.    On June 28, 2018, Defendant Mark Miller, the managing member of the ALT Money entities, sent a blast email to Plaintiffs and Class Members that contained material misrepresentations and omissions that were designed to appease concerns and conceal the fraudulent scheme.  The full email is attached as Exhibit B. The June 28, 2018 email stated:

> RE:  Disposition of Collins Asset Group portfolios
>
> As previously stated in emails, letters and verbal communications with many clients, I want to provide some updates on the Collins Asset Group situation regarding Diversified Financing.  Please know that we have been in continual contact with Collins as to the disposition of assets in the portfolios and if and when they are expecting to resume distributions.
>
> As discussed with many clients, due to the ongoing situation with Diversified Financing, Collins has put on hold the distributions until such time they are instructed by their attorneys to release assets.

Collins continues to uphold their end by collecting on portfolio assets and feel they are very much on schedule, collecting what they should be on all of the portfolio assets.  To that end, they continue to put distributions into escrow and of course they will make those available as soon as they are able to resolve the issue.  We have been given no date as to when this may occur.  It is our opinion, to be speculative and conservative, we may in fact have to wait until sometime near or around portfolio maturity dates to expect the majority return of our principal and also portfolio returns.  This is not far off what has been expected from the beginning of these portfolios as the largest chunk of principal and returns is to come toward the maturity dates, anyway.

We would not expect this development to change your custodial IRA Trust Services positions with Collins Asset Group.  You may refer back to your most recent portfolio asset valuation reports provided by Collins.  You received those in two separate quarters, both quarter 3 of 2016 and quarter 1 of 2017.

We will keep you informed as we get more information relating to the portfolios.

Sincerely,

Mark Miller

69.    Defendant Miller, among other things, misrepresented that repayment to Class Members with promissory notes issued by ALT Money was dependent on Diversified Financing.  After all, Diversified Financing, LLC was not incorporated in Florida until July 7, 2014.  Furthermore, Defendant Miller deceptively instructed Plaintiffs and Class Members to refer back to their most recent portfolio asset valuation reports provided by Collins, both of which stated that the current values of Plaintiffs' and Class Members' investments had not declined in value when the

actual fair value of their investments were worth nothing given that there was no secondary market to sell the promissory notes.

70.     Defendant Miller also made material omissions in the email, including but not limited to the fact that Miller had already dissolved (but had not winded down) all four ALT Money entities in 2016, which among other things, breached the terms of the secured promissory notes issued by the ALT Money entities.  The email was clearly drafted to assure investors that everything was fine when it was not.

71.     Defendant Miller also defrauded investors in the blast email when he said that "due to the ongoing situation with Diversified Financing, Collins has put on hold the distributions until such time they are instructed by their attorneys to release assets," given that at the same time, behind the scenes Miller and Collins Asset Group were assigning collateral to Diversified to attempt to wipe away investors' collateral.  The July 18, 2018 assignments, among other things, breached the promissory notes with Class Members and were fraudulent transfers.

72.     On or about January 9, 2019, Defendant Mark Miller sent another blast email to Plaintiffs and Class Members that was nearly identical to the email described above.  Like the June 28, 2018 email, the January 9 email contained the same material misrepresentations and omissions that were designed to appease concerns and conceal the fraudulent scheme.   On March 27, 2019, Collins Asset Group, LLC filed another UCC Financing Statement giving Diversified Financing a

secured interest in the account receivables on Collins Asset Group's books and records "as of December 31, 2013," which appears to be assets that ALT Money originally had a secured interest in.  Upon information and belief, the March 27, 2019 assignments, among other things, breached the promissory notes with Class Members and were fraudulent transfers.

73.    Upon information and belief, Class Members with promissory notes issued by ALT Money as described above, have not been repaid anything for their investments.  The same is true for Plaintiffs and the rest of the Class.

**G.    Defendant Collins Asset Group, LLC continued to collect capital from Diversified Financing and Sonoqui even after the SEC filed a regulatory enforcement action and the United States DOJ filed criminal charges against Daryl Bank, the managing member of Diversified Financing.**

74.    As alleged above, in 2015, the United States Securities and Exchange Commission ("SEC") also filed an enforcement action in the United States District Court, District of Arizona, Case No. 2:15-cv-0609-SMM, alleging that Bank used dozens of shell entities to defraud investors through the issuance of unregistered securities, i.e. promissory notes, that resulted in a Final Judgment dated February 8, 2018 finding Bank liable for disgorgement of approximately $5 million.  See Dkt. 256, 2:15-cv-00609-SMM.

75.    In addition, Bank is currently being criminally prosecuted by the U.S. Attorney's Office in the Eastern District of Virginia for defrauding at least 300 investors out of at least $20 million. That criminal indictment was filed in 2016.

76.     Despite knowing that Bank was in trouble with regulators and criminal prosecutors,  the CAG Defendants continued to raise money from Plaintiffs and Class Members through the issuance of promissory notes issued by Diversified Financing and Sonoqui, which underscored Defendants' intent to defraud Plaintiffs and Class Members.  See Exhibit A at Thaxton Class Complaint 00015-00070.

**H.     Defendants CAG used fundraising entities and unregistered salespersons other than ALT Money and Mark Miller to illegally solicit investment capital on CAG's behalf and those investors were also issued promissory notes by Diversified Financing and Sonoqui.**

77.     Upon information and belief, CAG used other unregistered salesperson to illegally solicit investment proceeds from Class Members. For example, according to the interpleader complaint recently filed Defendant Collins Asset Group, CAG solicited investments from Class Members through non-party, Aghee William Smith II, an individual from California that has been charged in a criminal action filed in the United States District Court for the Eastern District of Virginia, case no. 2:19-cr-00047-RAJ-LRL (the "Smith Criminal Case"), for allegedly conspiring to commit mail fraud, wire fraud, money laundering, and other criminal acts related to purported sales of securities.

78.     Upon information and belief the investments sold by CAG through Mr. Smith were also issued by Defendants Diversified Financing and/or Sonoqui.

**H.     The secured promissory notes are all in default.**

79.     The promissory notes states that the notes are in default "upon the

occurrence and during the continuance of (a) a default in the Maker's obligations under this note, which default has not been cured within sixty (60) days following written notice of such default from Payee to the Maker, or (b) an Event of Default shall occur under the Loan Agreement, but after the passage of any cure period provided in any such Loan Agreement (each, an "Event of Default").

80.    The Makers under the promissory are in default pursuant to both (a) and upon information and belief, (b) above.

81.    Therefore, all secured promissory notes are in default and Plaintiffs and Class Members "declare the entire unpaid principal of and unpaid interest on this Note immediately payable, without notice, demand, or presentment, all of which are hereby waived, foreclose any liens or security interests securing all or any part hereof [...] or exercise any other right or remedy to which Payee [Plaintiffs and Class Members] may be entitled by agreement, at law, or in equity.  All of the Rights of the holder hereof provided for in this Note are cumulative of each other and of any and all other Rights at law or in equity."

## PLAINTIFFS' EXPERIENCE

82.    The Thaxton's met Mark Miller in September or October 2014 after being invited by Miller to attend a free steak dinner at an investment seminar held at Longhorn Restaurant in Peachtree City, Georgia.  The Thaxton's were conservative

investors who wanted a safe and stable stream of investment income for their retirement.

83.     Miller assured the Thaxton's that they had come to the right person and that he was the money guru they had been looking for and would place them in such investments.  In order to gain their trust and confidence, Miller held himself out to the Thaxton's as a "registered financial consultant," "qualified advisor," and "best-selling author" who is "known nationally as America's Safe Money Expert™." Miller further represented that he would abide by the International Association of Registered Financial Consultants ("IARFC") Code of Ethics, which provides in part: "I will at all times put my client's interest above my own."

84.     Miller familiarized Stephen Thaxton with his investment management skills and with Miller's company, ALT Money Investments, LLC, of which Miller was the managing member.  Miller advised the Thaxton's to invest part of their investment portfolio in an alternative investment with Defendants CAG.  Miller explained that he had other clients who had invested in CAG and that such an investment would generate a high return that was more stable and safer than the stock market.

85.     To further convince the Thaxton's to invest, Miller offered to pay Stephen's air fare and expenses to go to Texas and meet with Walt Collins, the principal and manager of Collins & Hilton.

86.     Defendants made the misrepresentations and omissions outlined above to the Thaxton's that were material because it was important to them, as it would be important to any reasonable investor, to know the truth about what Defendants misrepresented and omitted to disclose to them in deciding whether or not to invest their money in Defendants' purported investment opportunity – i.e., the promissory note investments.

87.     As part of his effort to gain their trust and confidence, Miller, in concert with the other Defendants, provided the Thaxton's with the marketing materials described above that contained numerous material misrepresentations and omissions.  In reliance on the above false and misleading representations and omissions,  the Thaxton were convinced to invest and declined to make the trip to Texas to meet with Collins and were ready to take Miller's advice and invest in Collins & Hilton through a series of promissory notes.

88.     On or about April 1-2, 2015, Defendants, acting in concert, sold the Thaxton three Promissory Note investments with principal amounts totaling approximately $222,000 as follows:

    a.  15% Targeted Secured Promissory Note dated 4/2/15 in the principal amount of $52,000.00 with Patricia Thaxton IRA as the payee, attached as Exhibit C;

    b.  15% Targeted Secured Promissory Note dated 4/2/15 in the principal

amount of $55,000.00 with Patricia Thaxton IRA as the payee, attached as

Exhibit D; and

c.  15% Targeted Secured Promissory Note dated 4/1/15 in the principal

amount of approximately $115,000.00 with Stephen S. Thaxton Roth IRA as

the payee (Mark Miller has the copy of Stephen Thaxton's note).

89.    Each of the Promissory Notes states that it is secured by the assets of

Collins Asset Group, LLC and further states that it is being executed and delivered

pursuant to a certain Loan Agreement between the Maker and Defendant Collins

Asset Group, LLC.

90.    The maker and promisor of each of the Promissory Notes was

Defendant Diversified Financing LLC ("Diversified Financing").

91.    Each of the Promissory Notes was signed by an individual named Daryl

Bank as Managing Member and authorized signatory of Diversified Financing.

92.    The secured promissory note investments at issue were sold to Plaintiffs

in April 2015.   Defendants actively concealed the fraudulent nature of the

investments from Plaintiffs by providing valuation information to Plaintiffs through

self-directed IRA custodians purporting to show that the notes were worth more than

they paid for them and that their investments were in good shape.  For example, in

2015, Defendants, through account statements sent to Plaintiffs by Summit Trust

Company, represented that their promissory note investments were earning interest

which was being invested in money market funds and the principal values were intact.

93.     In 2016, Defendants provided Plaintiffs and Class Members with a document captioned Collins & Hilton Asset Group Trust Company Pro Forma Analysis projecting an annualized return on investment of 15.0% over the next five years.

94.     In 2017, even though ALT Money Investments had been dissolved by Defendant Mark Miller in 2016, Plaintiffs and Class Members received statements from ALT Money Investments, LLC for the period ending June 2017 showing that Plaintiffs owned a certain percentage of ALT III, LLC as a result of their promissory note investments, which had generated substantial distributions, and that the notes had a "current projected value at maturity" far greater than the amounts invested. For instance, Stephen Thaxton's note was projected to be worth precisely $200,654.84 at maturity.

95.     In August 2017, Plaintiffs and Class Members received correspondence from Mark Miller informing them that they had received substantial second quarter distributions on their note investments that were deposited into in their Provident Trust accounts.   In December 2017, Plaintiffs received Provident Trust Group account statements showing their secured notes were generating interest and had market values exceeding what they paid for them.

96.    At various times between 2016 and 2018, Miller arranged conference calls with Walt Collins and Stephen Thaxton wherein Collins assured Mr. Thaxton that all was well with his investment in Collins & Hilton.

97.    In June 2018, Plaintiffs' and Class Members received the blast email from Mark Miller described above and captioned as Collins Asset Group Update, which essentially assured them that their money was safe, and that although Collins had put distributions on hold pending their attorney's instruction to release assets due to the indictment of Bank, Collins was continuing to uphold their obligation by collecting on portfolio assets and putting distributions into escrow.    95.    In January 9, 2019, Plaintiffs and Class Members received the other blast email described above from Miller again assuring Plaintiffs and Class Members that their money was safe, and that Collins was continuing to collect on portfolio assets and was escrowing the distributions.

98.    Consistent with the allegations described above, Plaintiffs were defrauded  into investing into this fraudulent scheme.  Even though their promissory notes do not mature until April 2020, the maker, Diversified Financing, is out of business and, as a result, is in anticipatory breach of the promissory notes since its performance is impossible.  As a result, Plaintiffs respectfully request that this Court award them and Class Members the relief described below and any other relief the Court deems appropriate.

## CLASS ACTION ALLEGATIONS

99.     Plaintiffs bring this lawsuit as a class action on behalf of themselves and all others similarly situated as members of the proposed Class described as follows:

### Nationwide Class

All persons and/or entities who are citizens of the United States that invested with Defendants Collins Asset Group, LLC and/or Collins & Hilton Asset Group, LLC and received secured promissory notes in exchange for their investments issued by Defendants Diversified Financing, LLC, Sonoqui, LLC, or any of the ALT Money entities.

100.   Excluded from the Class are Plaintiffs' counsel and family members, Defendants' employees, officers, directors; Defendants' legal representatives, successors, and assigns; any entity in which Defendants have a controlling interest; any Judge to whom the litigation is assigned and all of members of the Judge's immediate family; and all persons who timely and validly request exclusion from the Class.

101.   This action had been brought as a class action, and may properly be maintained, pursuant to the provisions of O.C.G.A. §9-11-23 of the Georgia Civil Practices Act and case law thereunder.

## A.       Plaintiffs Meet the Prerequisites of O.C.G.A. §9-11 23(b)(3)

### 1.      Numerosity of the Class

102.   The Class is so numerous that individual joinder of class members is impracticable.

As explained above, the UCC Financing Statements attached as Exhibit A hereto, reflect that hundreds of promissory notes were issued to Class Members between 2013 and 2018.   The precise number of class members and their identities and addresses are unknown to Plaintiffs at this time, but such number, identity and address of each class member, can be readily ascertained from Defendants' records. Class members may be notified of the pendency of this action by mail, supplemented (if deemed necessary or appropriate by the Court) by published notice.

## 2.   **Existence and Predominance of Common Questions of Fact and Law**

103.   There is a well-defined community of interest in common questions of law and fact that exists as to all members of the Class.   These questions predominate over the questions affecting only individual Class members.   These common legal and factual questions include:

a.   Whether the promissory notes that were sold to all members of the Class provided them a security interest in the assets of Defendant Collins Asset Group, LLC.

b.   Whether Defendants made uniform material misrepresentations and omissions in pre-sale marketing materials to members of the Class.

c.      Whether Defendants made uniform material misrepresentations and omissions in promissory notes presented to members of the Class.

d.      Whether Defendants provided false investment valuations on account statements to all members of the Class.

e.      Whether Defendants received substantial sums of undisclosed fees or other compensation from Plaintiffs' and Class Members' money.

f.      Whether Defendants commingled the funds of all members of the Class with funds from other business ventures.

g.      Whether Defendants used a uniform layered structure to funnel all Class Members' funds from the fundraising entities (e.g., Diversified Financial) to Defendant Collins Asset Group, LLC and themselves.

h.      Whether Defendants provided all members of the Class with uniform marketing materials that concealed the use of investor funds for referral fees, commissions and payments to Defendants.

i.      Whether Defendants used uniform marketing materials containing false and misleading representations to describe the purported investment opportunity to all members of the Class in lieu of standard private placement memoranda.

j.      Whether the money of all members of the Class was pooled with other investors.

k.     Whether all members of the Class did not share ownership in an LLC or private membership association.

l.     Whether Defendants actively concealed the fraudulent nature of the investments from all member of Plaintiffs and Class Members.

m.     Whether Defendants actively concealed the fraudulent nature of the investments from all member of the Class by sending them emails and other correspondence providing false assurances that their money was safe and that they should not be concerned.

n.     Whether Plaintiffs' and Class Members promissory notes are in default and/or whether one or more of the Defendants breached the contracts with Plaintiffs and Class Members.

o.     Whether Defendants engaged in an enterprise and a pattern of racketeering activities in violation of Georgia' RICO statutes.

p.     Whether Defendants established a fiduciary or confidential relationship with Plaintiffs and Class Members.

q.     Whether Plaintiffs and Class Members are entitled to injunctive relief.

r.     Whether the promissory notes issued are securities under Georgia's Uniform Securities Act of 2008.

**3.     Typicality of Claims**

104.   Plaintiffs' claims are typical of the Class.  Plaintiffs, like other class members, were fraudulently induced to invest in unregistered securities unlawfully sold to them by Defendants as a result of uniform misrepresentations and omissions made by Defendants in pre-sale marketing materials.  Plaintiffs' and other class members' claims therefore arise from a common course of conduct by Defendants and are based on the same legal theories.

105.   In addition, Plaintiffs breach of contract claim is typical of the Class. Plaintiffs and Class Members all invested in promissory notes that provided them a security interest in assets of Collins Asset Group, and said notes are all in default.

### 4.   **Adequacy of Representation**

106.   Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interest of the Class, and they have retained counsel competent and experienced in complex class action litigation.  The interests of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

### 5.   **Superiority of the Class Action**

107.   A class action is superior to other available means for the fair and efficient adjudication of this dispute.  The damages suffered by class members are likely to exceed millions of dollars. However, while the damages suffered by each individual class member are significant, they are small in comparison to the burden and expense of individual prosecution.  Without the class action device, it would be

virtually impossible for class members individually to obtain effective redress for the wrongs done to them.

108.   Furthermore, even if the class members themselves could afford such individual litigation of class members' claims, the court system could not. Individualized litigation presents a potential for inconsistent and contradictory judgments.  Individualized litigation would involve thousands of separate actions, increasing the delay and expense to all parties and to the court system.   By contrast, the class action device presents fewer management difficulties, requiring only a single adjudication of the complex legal and factual issues in this dispute, thereby providing the benefits of economy of scale, and comprehensive supervision by a single court.

109.   Plaintiffs and their counsel know of no difficulties which will be encountered in the management of this case which would preclude it being maintained as a class action.

**B.        Plaintiffs Meet the Prerequisites of O.C.G.A. §9-11-23(b)(2)**

110.   The injunctive relief is dispositive of the interests of other Class Members and avoids the risk of inconsistent adjudication.  Plaintiffs ask this Court to impose the equitable relief of setting aside transfers made by Defendants in violation of Georgia's Uniform Fraudulent Transfer Act, and ordering Defendants

to refrain from any action that would impair the right of Plaintiffs and Class Members in the assets of Collins Asset Group.

111.   This is dispositive of the interests of all Class Members, not Plaintiffs alone.  And if this claim for injunctive relief is not adjudicated in a class action and Defendants face a different lawsuit from another investor, Defendants would face varying, incompatible standards of conduct.

## CAUSES OF ACTION

## COUNT I

## BREACH OF CONTRACT AGAINST ALL DEFENDANTS

112.   Plaintiffs restate and reallege Paragraphs 1 through 111 as if fully set forth herein.

113.   Defendants Diversified Financing, LLC, Sonoqui and the ALT Money entities have contractual relationships with Plaintiffs and/or Class Members, which is embodied in the promissory notes sold to Plaintiffs and Class Members.

114.   In addition, Diversified Financing has contractual relationships with Collins Asset Group, LLC and/or Collins & Hilton Asset Group, LLC, identified as a Loan Agreement in the promissory notes attached as Exhibits C and D.  Upon information and belief, the ALT Money entities and Sonoqui have contractual relationships with Defendants Collins Asset Group, LLC and/or Collins & Hilton

Asset Group, LLC, i.e. one or more Master Servicer Agreement(s) referenced in the marketing materials described above.

115.   Defendants Diversified, Sonoqui, and ALT Money breached their contract with Plaintiffs and Class Members by failing to pay principal and interest in accordance with the terms of its promissory notes sold to Plaintiffs and Class Members.

116.   Defendants Diversified and ALT Money are also in default under the terms of the promissory notes.

117.   Upon information and belief, one or more of the Defendants is in default under the terms of the Loan Agreement and/or Master Servicer Agreement referenced above and/or breached such agreements.

118.   All Defendants further breached the contracts described above by failing to provide the security and/or collateral and in impairing such security and/or collateral in contravention with the terms of their promissory notes sold to Plaintiffs and/or Class Members.  In addition, Defendants breached the contracts by assigning the assets secured by ALT Money to Diversified Financing in July 2018 and March 2019.

119.   Plaintiffs and Class Members have been and will be damaged by the conduct of all Defendants.

### **COUNT II**

## BREACH OF THE COVENANT OF
## GOOD FAITH AND FAIR DEALING AGAINST ALL DEFENDANTS

120.     Plaintiffs restate and reallege Paragraphs 1 through 109 as if fully set forth herein.

121.   In the event that Defendants somehow did not breach the contract referenced in Count I, they breached their implied contracts with those same Plaintiffs and proposed Class Members.

122.   A covenant of good faith and fair dealing is implied in every contract, including those contracts referenced above.

123.   Where a contract vests one party with discretion, the duty of good faith and fair dealing applies, and the party exercising the discretion must do so in a manner that satisfies the objectively reasonable expectations of the other party. A party may not perform an agreement in a manner that would frustrate the basic purpose of the agreement or deprive the other party of its rights and benefits under the agreement.

124.   Defendants' conduct alleged herein is inconsistent with the reasonable expectations of Plaintiffs and Class Members and is inconsistent with what an objectively reasonably consumer would have expected under the circumstances.

125.   Defendants have acted in a manner that frustrates the basic purpose of their contracts with Plaintiffs and/or Class Members and have deprived Plaintiffs

and Class Members of the benefits and rights to which they are entitled under the contracts identified in Count I.

126.   As a result of Defendants' misconduct, Plaintiffs and Class Members have been damaged in an amount to be determined at trial.

## COUNT III
## FRAUDULENT MISREPRESENTATION AGAINST ALL DEFENDANTS

127.   Plaintiffs restate and reallege Paragraphs 1 through 109 as if fully set forth herein.

128.   Defendants, acting in concert with one another, made material representations and/or material omissions to Plaintiffs and Class Members in connection with the sale of the promissory notes sold to them.

129.   Defendants knew their misrepresentations and omissions made to Plaintiffs and Class Members were false and/or they were reckless with respect to the same.

130.   Defendants intended for Plaintiffs and Class Members to rely on their misrepresentations and/or omissions.

131.   Plaintiffs and Class Members were unaware of the inaccuracies in Defendants' misrepresentations at the time they invested in said promissory notes.

132.   Plaintiffs and Class Members justifiably relied on Defendants' misrepresentations and omissions and had they known the truth; they would not have invested in said promissory notes.

133.   As a direct and proximate result of Defendants' misconduct, Plaintiffs and Class Members have been damaged in an amount to be proven at trial.

## COUNT IV
## FRAUDULENT CONCEALMENT AGAINST ALL DEFENDANTS

134.   Plaintiffs restate and reallege Paragraphs 1 through 109 as if fully set forth herein.

135.   Defendants knowingly failed to disclose to Plaintiffs and Class Members material facts (and affirmatively concealed those facts), as set forth herein.

136.   Defendants were under a duty to disclose all material facts in connection with selling investments in promissory notes to Plaintiffs and Class Members.

137.   Defendants' omissions were material to Plaintiffs' and Class Members' decision to invest in the promissory notes.

138.   Plaintiffs and Class Members justifiably relied on Defendants' omission of material facts.  Had Plaintiffs and Class Members known the truth they would not have invested in the promissory notes.

139.   As a direct and proximate result of Defendants' misconduct, Plaintiffs and Class Members have been damaged in an amount to be proven at trial.

## COUNT V
## CONSPIRACY TO DEFRAUD AGAINST ALL DEFENDANTS

140.     Plaintiffs restate and reallege Paragraphs 1 through 109 as if fully set forth herein.

141.   Defendants had an agreement between each other to do an unlawful act or to do a lawful act by unlawful means, which amounted to fraud upon Plaintiffs and Class Members.

142.   Defendants separately and collectively performed overt acts in the pursuit of the conspiracy.

143.   Plaintiffs suffered damages as a result of the acts done under the conspiracy.

## COUNT VI
## AIDING AND ABETTING FRAUD AGAINST ALL DEFENDANTS

144.     Plaintiffs restate and reallege Paragraphs 1 through 109 as if fully set forth herein.

145.   Each Defendant knew that the other Defendants were defrauding Plaintiffs.

146.   Each Defendant provided substantial assistance to the other Defendants to advance the commission of the fraud and caused Plaintiffs to suffer damages.

## COUNT VII
## BREACH OF FIDUCIARY DUTY AGAINST ALL DEFENDANTS

147.     Plaintiffs restate and reallege Paragraphs 1 through 109 as if fully set forth herein.

148.   Defendants owed Plaintiffs a fiduciary duty.

149.   Defendants breached their fiduciary duties to Plaintiffs.

150.   Defendants' breach of their fiduciary duties proximately caused Plaintiffs to suffer damages.

## COUNT VIII
## CONSPIRACY TO COMMIT BREACH OF FIDUCIARY DUTY AGAINST ALL DEFENDANTS

151.    Plaintiffs restate and reallege Paragraphs 1 through 109 as if fully set forth herein.

152.   Defendants had an agreement between each other to do an unlawful act or to do a lawful act by unlawful means, which amounted to a breach of fiduciary duty owed to Plaintiffs and Class Members.

153.   Defendants separately and collectively performed overt acts in the pursuit of the conspiracy.

154.   Plaintiffs suffered damages as a result of the acts done under the conspiracy.

## COUNT IX
## AIDING AND ABETTING BREACH OF FIDUCIARY DUTY AGAINST ALL DEFENDANTS

155.    Plaintiffs restate and reallege Paragraphs 1 through 109 as if fully set forth herein.

156.   The Defendants separately and collectively owed Plaintiffs a fiduciary duty.

157.   The Defendants separately and collectively breached their fiduciary duties to Plaintiffs.

158.   Each Defendant knew that the other Defendants breached a fiduciary duty to Plaintiffs.

159.   Each Defendant provided the other Defendants substantial assistance and/or encouragement of the wrongdoing.

160.   Each Defendant caused Plaintiffs to suffer damages.

## COUNT X
## CONSTRUCTIVE FRAUD

161.    Plaintiffs restate and reallege Paragraphs 1 through 109 as if fully set forth herein.

162.   Defendants acted or failed to act contrary to a legal or equitable duty, trust or confidence justly reposed, which was contrary to good conscience and operated to the injury of Plaintiffs and Class Members.

## COUNT XI
## CONVERSION

163.    Plaintiffs restate and reallege Paragraphs 1 through 109 as if fully set forth herein.

164.     Plaintiffs and Class Members have title or the right to possession to the security and/or collateral promised in the promissory notes sold to Plaintiffs and/or Class Members.

165.     One or more of the Defendants have actual possession of to the security and/or collateral promised in the promissory notes sold to Plaintiffs and/or Class Members.

166.     Defendants are withholding said security and/or collateral from Plaintiffs and/or Class Members.

167.     Plaintiffs have demanded and/or hereby demand possession of said security and/or collateral and Defendants have refused.

## COUNT XII
## VIOLATIONS OF O.C.G.A. §16-14-4 (GEORGIA'S RICO STATUTE)

168.     Plaintiffs restate and reallege Paragraphs 1 through 109 as if fully set forth herein.

169.    Defendants violated O.C.G.A. §16-14-4(a) by acquiring or maintaining, directly or indirectly, an interest in or control of Plaintiffs' personal property or proceeds therefrom through a pattern of racketeering activity.

170.     Defendants violated O.C.G.A. §16-4-14(b) by being employed by or associated with any enterprise to conduct, participate in, directly or indirectly, such enterprise through a pattern of racketeering activity.

171.     Defendants violated O.C.G.A. §16-14-4(c) by conspiring or endeavoring to violate §16-14-4(a) and (b).

172.     Defendants engaged in an enterprise as defined by O.C.G.A. §16-14-3(3) that spanned from at least 2013 and continued through at least 2019 and involved the issuance of hundreds of promissory notes to Plaintiffs and Class Members.

173.     Defendants engaged in a pattern of racketing activity as defined by O.C.G.A. §16-14-3(4) and engaged in at least two acts of racketeering activity in furtherance of one or more incidents, schemes, or transactions that have the same or similar intents, results, accomplices, victims, or methods of commission or otherwise interrelated by distinguishing characteristics and are not isolated incidents that occurred after July 1, 1980 and the last such acts occurred within four years, after the commission of a prior racketeering activity.

174.   Defendants engaged in a pattern of racketeering activity as defined by O.C.G.A. §16-14-3(5) that includes but is not limited to the following:

a.   Pursuant to O.C.G.A. §16-14-3(5)(A)(iii), every promissory note issued and sold by Defendants to Plaintiffs and Class Members constitutes a separate violation of the Georgia Uniform Securities Act of 2008 in violation of Chapter 5 of Title 10, including but not limited to selling unregistered securities by unregistered broker-dealers, investment advisers and associated persons of broker-dealers and

investment advisers.   In addition, every promissory note sold by Defendants to Plaintiffs and Class Members violates the anti-fraud provisions of the Georgia Uniform Securities Act of 2008.

b.  Pursuant to O.C.G.A. §16-14-3(5)(A)(xii), every promissory note issued and sold by Defendants to Plaintiffs and Class Members constitutes a separate violation of theft by deception in violation of Article 1 of Chapter 8 of this title.

c.  Pursuant to O.C.G.A. §16-14-3(5)(A)(xlii), every promissory note issued and sold by Defendants to Plaintiffs and Class Members who are 65 years of age or older constitutes a separate violation of Article 8 of Chapter 5 of Title 16 related to elder persons.

d.  Pursuant to O.C.G.A. §16-14-3(5)(C), every promissory note issued and sold by Defendants to Plaintiffs and Class Members and every wire transfer of Plaintiffs and Class Members' investment proceeds to and from Defendants constitutes a separate violation of 18 USC Section 1961 related to wire fraud.

e.  Pursuant to O.C.G.A. §16-14-3(5)(C), every promissory note issued and sold by Defendants to Plaintiffs and Class Members and every correspondence mailed or emailed from Defendants to Plaintiffs and Class Members containing material misrepresentations and omissions designed to defraud Plaintiffs and Class Members to obtain or keep their money constitutes a separate violation of 18 USC Section 1961 related to mail fraud.

175.     These offenses were not committed as an occasional practice but were a part of a systematic and ongoing pattern over a number of years concealed by a scheme of deception and concealment.

176.     Defendants criminally operated the enterprise using fraud and misrepresentation, conversion of funds provided by the Plaintiffs and Class Members and the acquisition of accounts receivable and other debt obligations with the proceeds in an interrelated pattern of criminal activity the motive and/or effect of which was and is to derive pecuniary gain.

177.     Defendants violated or conspired to violate the RICO statute as a direct and proximate result of which Plaintiffs and Class Members have suffered injury.

178.     Plaintiffs and Class Members injuries flowed directly from at least one of the predicate acts.

179.     There is a *direct nexus* between at least one of the alleged predicate acts and the injuries Plaintiffs and Class Members sustained.

180.     The alleged predicate acts were aimed at the Plaintiffs and Class Members and were not aimed primarily at a third party.

## COUNT XIII
## UNJUST ENRICHMENT

181.    Plaintiffs restate and reallege Paragraphs 1 through 109 as if fully set forth herein.

182.   Plaintiffs and Class Members conferred payments to Defendants for their investments in the promissory notes.

183.   Defendants were benefitted from payments made by Plaintiffs and Class Members.

184.   As a result of Defendants' wrongful conduct as alleged in this Complaint, Defendants have been unjustly enriched at the expense of, and to the detriment of, Plaintiffs and Class Members.

185.   Defendants' unjust enrichment is traceable to and resulted directly and proximately from the conduct alleged herein.

186.   Under the common law doctrine of unjust enrichment, it is inequitable for Defendants to be permitted to retain the benefits they received, and are still receiving without justification, from Plaintiffs and Class Members in an unfair and unconscionable manner.  Defendants' retention of such benefits under circumstances making it inequitable to do so constitutes unjust enrichment.

187.   The benefit conferred upon, received, and enjoyed by Defendants was not conferred officiously or gratuitously, and it would be equitable and unjust for Defendants to retain the benefit.

188.   Defendants are therefore liable to Plaintiffs and Class Members for restitution in the amount of the benefit conferred on Defendants as a result of their wrongful conduct.

## COUNT XIV
## INJUNCTIVE RELIEF

189.   Plaintiffs restate and reallege Paragraphs 1 through 109 as if fully set forth herein.

190.   This Court has broad authority to restrain acts, such as here, that are tortious.

191.   Plaintiffs and Class Members continue to suffer injury as a result of the conduct alleged herein and remain at imminent risk that further damages will occur in the future.

192.   This Court should enter a judgment enjoining Defendants from encumbering and/or impairing the rights of Plaintiffs and Class Members in the security and/or collateral referenced in the promissory notes sold to them, including but not limited to enjoining Defendants from transferring, assigning or otherwise disposing of the proceeds of any sale of the collateral identified in Exhibit A.  In addition, this Court should enter a judgment enjoining Defendants from continuing to engage in the unlawful conduct described herein.

193.   If an injunction is not issued, Plaintiffs will suffer irreparable injury, and lack an adequate legal remedy.

194.   The hardship to Plaintiffs if an injunction does not issue exceeds the hardship to Defendants if an injunction is issued.

195.   Issuance of the requested injunction will not disserve the public interest. To the contrary, such an injunction would benefit the public by preventing the misconduct alleged above.

## COUNT XV
## CONSTRUCTIVE TRUST

196.   Plaintiffs restate and reallege Paragraphs 1 through 109 as if fully set forth herein.

197.   A constructive trust is a trust implied whenever the circumstances are such that the person holding legal title to property, either from fraud or otherwise, cannot enjoy the beneficial interest in the property without violating some established principle of equity.  O.C.G.A. § 53-12-132(a).

198.   To the extent that Plaintiffs or Class Members purchased promissory notes that were purportedly secured by collateral and UCC liens, as were the promissory notes sold to Plaintiffs, it would be inequitable for Defendants to enjoy the beneficial interest in said purchase money and/or security, collateral and/or UCC liens.

199.    Therefore, Plaintiffs and Class Members are entitled to an order impressing a constructive trust upon all payments made by Plaintiffs and Class Members to any Defendant, and all property securing the promissory notes sold to Plaintiffs and Class Members as reflected in UCC-1 financing statements filed by any Defendant and/or assigned by any Defendant to any other Defendant.

### COUNT XVI
### ATTORNEY'S FEES AND EXPENSES

200.    Plaintiffs restate and reallege Paragraphs 1 through 109 as if fully set forth herein.

201.   Pursuant to O.C.G.A. §13-6-11 and other provisions of Georgia law, Plaintiffs and Class Members are entitled to recover reasonable attorney's fees and expenses of litigation by reasons of Defendants' bad faith and stubborn litigiousness which has caused Plaintiffs to incur unnecessary trouble and expense.

### COUNT XVII
### ATTORNEY'S FEES AND EXPENSES PURSUANT TO THE
### PROMISSORY NOTES

202.    Plaintiffs restate and reallege Paragraphs 1 through 109 as if fully set forth herein.

203.   The promissory notes attached as Exhibits C and D hereto state that "if this note is placed in the hands of an attorney for collection, or if it is collected through any legal proceedings, the Maker, Diversified Financing, agrees to pay court

costs, reasonable attorney's fees, and other reasonable costs of collection of the Payee." Upon information and belief, the promissory notes issued by ALT Money contain a similar provision.

204. As a result, Plaintiffs and Class Members are entitled to recover attorney's fees and expenses described above in this proceeding against Defendants Diversified Financing and/or ALT Money.

## COUNT XVIII
## VIOLATIONS OF THE UNIFORM FRAUDULENT TRANSFERS ACT

205. Plaintiffs restate and reallege Paragraphs 1 through 109 as if fully set forth herein.

206. Every transfer or payment of Plaintiffs' and Class Members' investment amounts made by and between Defendants were made in furtherance of the fraudulent scheme, not for value, and with the intent to hinder, delay, and defraud Plaintiffs and Class Members, who are all creditors of one or more the Defendants.

207. Defendants ALT Money, Diversified Financing and Sonoqui were insolvent from their inception and the direct and/or indirect transfers or payments from those insolvent entities to Defendants Collins Asset Group, LLC and/or Collins & Hilton Asset Group, LLC and any other individual or entity including but not limited to Defendant Mark Miller and or non-party Daryl Bank occurred after ALT Money's, Sonoqui's and Diversified Financing's obligations to Plaintiffs and Class Members were incurred.

208.   By making those transfers or payments described above, Defendants ALT Money, Sonoqui and Diversified Financing intended to incur, or reasonably should have known that it would incur debts to Plaintiffs and Class Members beyond their ability to pay the debts as they became due.

209.   Every direct or indirect transfer or payment by Defendants ALT Money, Sonoqui and Diversified Financing to Defendants Collins Asset Group, LLC and Collins & Hilton Asset Group, LLC and/or any other individual or entity including but not limited to Defendant Mark Miller or Daryl Bank, are fraudulent transfers that must be returned to Plaintiffs and Class Members.

210.   In addition, every assignment of secured collateral between ALT Money, Diversified Financing, and Sonoqui is a fraudulent transfer that must be reversed.

211.   As a direct and proximate result of the transfers or payments, Plaintiffs and Class Members suffered damages.

212.   Plaintiffs and Class Members are entitled to an award of prejudgment interest based upon the amounts demanded and owed.

## COUNT XIX
## PUNITIVE DAMAGES

213.    Plaintiffs restate and reallege Paragraphs 1 through 109 as if fully set forth herein.

214.   Pursuant to O.C.G.A. §51-12-5.1, Plaintiffs and Class Members are entitled to recover punitive damages from Defendants on the basis that Defendants' actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that the court grant Plaintiffs and all Class Members the following relief against the Defendants:

A.   An order certifying the proposed plaintiff class herein pursuant to O.C.G.A. § 9-11-23, and appointing Plaintiffs and their counsel of record to represent the Class;

B.   An order that Defendants be permanently enjoined from its improper activities and practices described above in Count XIV;

C.   An award of the maximum amount of damages to Plaintiffs and Class Members resulting from Defendants' wrongful conduct, including but not limited to treble damages under the Georgia RICO Act;

D.   Restitution of all moneys, fees and interest paid by Plaintiffs and Class Members because of Defendants' unfair, unlawful or fraudulent business practices complained of herein;

E.      Disgorgement by Defendants of all profits and compensation emanating from the unfair, unlawful or fraudulent business practices complained of herein;

F.      An award of any additional damages, consequential and incidental damages and costs suffered by Plaintiffs and Class Members of the class because of Defendants' wrongful conduct;

G.      An order impressing a constructive trust upon all payments made by Plaintiffs and Class Members to any Defendant, and upon all property securing the promissory notes sold to Plaintiffs and Class Members as reflected in UCC-1 financing statements filed by any Defendant and/or assigned by any Defendant to any other Defendant;

H.      An order appointing a Receiver over Defendants Collins Asset Group, LLC and Collins and Hilton Asset Group, LLC for the purpose of collecting, itemizing and valuing the collateral identified in the UCC filings attached as Exhibit A;

I.      Prejudgment interest;

J.      Attorney's fees, costs of suit, including expert witness fees; and

K.      Such other and further legal and equitable relief, including exemplary damages, as his Court may deem proper.

This 29th day of February 2020.

By:       <u>s/ Jason R. Doss</u>

         JASON R. DOSS
         Georgia Bar No. 227117
         The Doss Firm, LLC
         The Brumby Building, Suite 220
         127 Church Street
         Marietta, Georgia 30060
         770-578-1314 – Tel
         770-578-1302 – Fax
         jasondoss@dossfirm.com

         *Attorney for Plaintiffs and Putative Class Members*

# EXHIBIT A

# INITIAL FILING #
# 2013 3479202

Exhibit A- Thaxton Class Complaint 00001

# UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

Charles E Natkins                                    5128654162

B. SEND ACKNOWLEDGMENT TO:  (Name and Address)

COLLINS ASSET GROUP, LLC

5725 HIGHWAY 290 WEST #103

5725 HWY 290 WEST

AUSTIN

AUSTIN TX 78735

*DELAWARE DEPARTMENT OF STATE*
*U.C.C. FILING SECTION*
*FILED 12:44 PM 09/06/2013*
*INITIAL FILING # 2013 3479202*

*SRV: 131061700*

---

**1. DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| | |
|---|---|
| 1a. ORGANIZATION'S NAME COLLINS ASSET GROUP, LLC | |

OR

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 1c. MAILING ADDRESS 5725 HIGHWAY 290 WEST #103 | CITY AUSTIN | STATE TX | POSTAL CODE 78735 | COUNTRY US |
|---|---|---|---|---|

| | 1e. TYPE OF ORGANIZATION LTD LIABILITY COMPANY | 1f. JURISDICTION OF ORGANIZATION DE | |
|---|---|---|---|

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| | |
|---|---|
| 2a. ORGANIZATION'S NAME | |

OR

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | |
|---|---|---|---|

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| | |
|---|---|
| 3a. ORGANIZATION'S NAME ALT MONEY INVESTMENTS II, LLC | |

OR

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 3c. MAILING ADDRESS FIVE CONCOURSE PARKWAY #2850 | CITY ATLANTA | STATE GA | POSTAL CODE 30328 | COUNTRY US |
|---|---|---|---|---|

**4. This FINANCING STATEMENT covers the following collateral:**

Accounts Receivable identified in the Books and Records of Collins Asset Group, LLC  on September 5, 2013 as follows:

```
Package Code 482 Portfolio No. 13084 # of Accounts 110 Face Value    $885,926.12
Package Code 484 Portfolio No. 13086 # of Accounts 49  Face Value $2,517,835.10
Package Code 486 Portfolio No. 13088 # of Accounts 4   Face Value   $212,351.87
Package Code 488 Portfolio No. 13090 # of Accounts 1   Face Value    $24,131.40
Package Code 490 Portfolio No. 13092 # of Accounts 763 Face Value$105,283,773.55
```

Total Face Value of One Hundred Eight Million, Nine Hundred Twenty Four Thousand Eighteen Dollars and four cents ($108,924,018.04) and total account number of 927.

---

| 6. This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.    Attach Addendum       [if applicable] | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]       [optional] | All Debtors | Debtor 1 | Debtor 2 |
|---|---|---|---|---|

8. OPTIONAL FILER REFERENCE DATA

ALT MONEYII

████████████
████████████
████████████
████████████

# UCC FINANCING STATEMENT AMENDMENT
**FOLLOW INSTRUCTIONS**

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
(512) 865-4162

**B. E-MAIL CONTACT AT FILER (optional)**
CHATKINS@COLLINSASSETGROUP.COM

**C. SEND ACKNOWLEDGMENT TO:  (Name and Address)**

COLLINS ASSET GROUP, LLC

5725 HIGHWAY 290 WEST #103

5725 HWY 290 WEST

AUSTIN, TX 78735

**Delaware Department of State**
**U.C.C. Filing Section**
**Filed: 05:34 PM 07/11/2018**
**U.C.C. Initial Filing No: 2013 3479202**
**Amendment No: 2018 4762247**
**Service Request No:   20185617937**

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

| 1a. INITIAL FINANCING STATEMENT FILE NUMBER | 1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] |
| --- | --- |
| 20133479202 | (or recorded) in the REAL ESTATE RECORDS<br>Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13 |

**2. ☐ TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

**3. ☐ ASSIGNMENT (full or partial):** Provide name of Assignee in item 7a or 7b, **and** address of Assignee in item 7c **and** name of Assignor in item 9
For partial assignment, complete items 7 and 9 **and** also indicate affected collateral in item 8

**4. ☑ CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

**5. ☐ PARTY INFORMATION CHANGE:**

Check **one** of these two boxes                 **AND** Check **one** of these three boxes to

This Change affects ☐ Debtor **or** ☐ Secured Party of record | ☐ CHANGE name and/or address: Complete item 6a or 6b; **and** item 7a or 7b **and** item 7c | ☐ ADD name: Complete item 7a or 7b, **and** item 7c | ☐ DELETE name: Give record name to be deleted in item 6a or 6b

**6. CURRENT RECORD INFORMATION:** Complete for Party Information Change - provide only **one** name (6a or 6b)

| 6a ORGANIZATION'S NAME | | | |
| --- | --- | --- | --- |
| OR | | | |
| 6b INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

**7. CHANGED OR ADDED INFORMATION:** Complete for Assignment or Party Information Change - provide only **one** name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 7a ORGANIZATION'S NAME | | | |
| --- | --- | --- | --- |
| OR 7b INDIVIDUAL'S SURNAME | | | |
| INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |

| 7c MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| --- | --- | --- | --- | --- |

**8. ☐ COLLATERAL CHANGE:** Also check **one** of these four boxes    ☐ ADD collateral   ☐ DELETE collateral   ☐ RESTATE covered collateral   ☐ ASSIGN collateral

Indicate collateral:

**9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:** Provide only **one** name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| 9a ORGANIZATION'S NAME | | | |
| --- | --- | --- | --- |
| OR COLLINS ASSET GROUP, LLC | | | |
| 9b INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

**10. OPTIONAL FILER REFERENCE DATA:**

**International Association of Commercial Administrato**

**FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)**

Exhibit A- Thaxton Class Complaint 00003

# UCC FINANCING STATEMENT AMENDMENT ADDENDUM

**FOLLOW INSTRUCTIONS**

| 11. INITIAL FINANCING STATEMENT FILE NUMBER: Same as item 1a on Amendment form |
|---|
| 20133479202 |

**12. NAME OF PARTY AUTHORIZING THIS AMENDMENT:** Same as item 9 on Amendment form

| | 12a ORGANIZATION'S NAME |
|---|---|
| | COLLINS ASSET GROUP, LLC |
| OR | 12b INDIVIDUAL'S SURNAME |
| | FIRST PERSONAL NAME |
| | ADDITIONAL NAME(S)/INITIAL(S) |  | SUFFIX |

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

**13. Name of DEBTOR on related financing statement** (Name of a current Debtor of record required for indexing purposes only in some filing offices - see Instruction item 13)  Provide only **one** Debtor name (13a or 13b) (use exact, full name, do not omit, modify, or abbreviate any part of the Debtor's name), see Instructions if name does not fit

| | 13a ORGANIZATION'S NAME |
|---|---|
| | COLLINS ASSET GROUP, LLC |

| OR | 13b INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|---|

**14. ADDITIONAL SPACE FOR ITEM 8 (Collateral)**

| 15. This FINANCING STATEMENT AMENDMENT | 17. Description of real estate |
|---|---|
| ☐ covers timber to be cut   ☐ covers as-extracted collateral   ☐ is filed as a fixture filing | |
| 16. Name and address of a RECORD OWNER of real estate described in item 17 (if Debtor does not have a record interest) | |

**18. MISCELLANEOUS:**

International Association of Commercial Administrators
**FILING OFFICE COPY** — UCC FINANCING STATEMENT AMENDMENT ADDENDUM (Form UCC3Ad) (Rev. 04/20/11)

# UCC FINANCING STATEMENT AMENDMENT ADDENDUM
**FOLLOW INSTRUCTIONS**

**11. INITIAL FINANCING STATEMENT FILE NUMBER:** Same as item 1a on Amendment form
**20133479202**

**12. NAME OF PARTY AUTHORIZING THIS AMENDMENT:** Same as item 9 on Amendment form

| | |
|---|---|
| **12a ORGANIZATION'S NAME** **DEBTOR** | |
| OR | **12b INDIVIDUAL'S SURNAME** |
| | **FIRST PERSONAL NAME** |
| | **ADDITIONAL NAME(S)/INITIAL(S)** ____ **SUFFIX** |

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

**13. Name of DEBTOR on related financing statement** (Name of a current Debtor of record required for indexing purposes only in some filing offices - see Instruction Item 13)  Provide only **one** Debtor name (13a or 13b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); see Instructions if name does not fit

| | | | |
|---|---|---|---|
| **13a ORGANIZATION'S NAME** **COLLINS ASSET GROUP, LLC** | | | |
| OR **13b INDIVIDUAL'S SURNAME** | **FIRST PERSONAL NAME** | **ADDITIONAL NAME(S)/INITIAL(S)** | **SUFFIX** |

**14. ADDITIONAL SPACE FOR ITEM 8 (Collateral)**

**15.** This FINANCING STATEMENT AMENDMENT
☐ covers timber to be cut   ☐ covers as-extracted collateral   ☐ is filed as a fixture filing

**17.** Description of real estate

**16.** Name and address of a RECORD OWNER of real estate described in item 17
(if Debtor does not have a record interest)

**18. MISCELLANEOUS:**

International Association of Commercial Administrators
**FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT ADDENDUM (Form UCC3Ad) (Rev. 04/20/11)**

# UCC FINANCING STATEMENT AMENDMENT
**FOLLOW INSTRUCTIONS**

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
(512)865-4162

**B. E-MAIL CONTACT AT FILER (optional)**
CWATKINS@COLLINSASSETGROUP.COM

**C. SEND ACKNOWLEDGMENT TO:  (Name and Address)**

COLLINS ASSET GROUP, LLC

5725 HIGHWAY 290 WEST #103

5725 HWY 290 WEST

AUSTIN, TX 78735

**Delaware Department of State**
**U.C.C. Filing Section**
Filed: 05:36 PM 07/11/2018
U.C.C. Initial Filing No: 2013 3479202
Amendment No: 2018 4762296
Service Request No:  20185617984

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

**1a. INITIAL FINANCING STATEMENT FILE NUMBER**
20133479202

**1b.** ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record]
(or recorded) in the REAL ESTATE RECORDS
Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13

**2.** ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

**3.** ☑ **ASSIGNMENT (full or partial)**  Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

**4.** ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

**5.** ☐ **PARTY INFORMATION CHANGE:**

Check one of these two boxes       **AND** Check one of these three boxes to

This Change affects ☐ Debtor or ☐ Secured Party of record

☐ CHANGE name and/or address  Complete item 6a or 6b, and item 7a or 7b and item 7c

☐ ADD name  Complete item 7a or 7b, and item 7c

☐ DELETE name  Give record name to be deleted in item 6a or 6b

**6. CURRENT RECORD INFORMATION:** Complete for Party Information Change - provide only one name (6a or 6b)

| 6a ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 6b INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

OR

**7. CHANGED OR ADDED INFORMATION:** Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 7a ORGANIZATION'S NAME | | | |
|---|---|---|---|
| DIVERSIFIED FINANCING, LLC | | | |
| 7b INDIVIDUAL'S SURNAME | | | |
| | | | |
| INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |

OR

| 7c MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 2710 SW PORT SAINT LUCIE BLVD | PORT SAINT LUCIE | FL | 34953 | US |

**8.** ☐ **COLLATERAL CHANGE:** Also check one of these four boxes   ☐ ADD collateral   ☐ DELETE collateral   ☐ RESTATE covered collateral   ☐ ASSIGN collateral
Indicate collateral

**9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:** Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| 9a ORGANIZATION'S NAME | | | |
|---|---|---|---|
| DEBTOR | | | |
| 9b INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

OR

**10. OPTIONAL FILER REFERENCE DATA:**

International Association of Commercial Administrators
**FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/18)**

# INITIAL FILING #
# 2014 3024403

Exhibit A- Thaxton Class Complaint 00007

# UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

| A. NAME & PHONE OF CONTACT AT FILER [optional] | |
|---|---|
| Charles Natkins | 5128654162 |

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

COLLINS ASSET GROUP, LLC

5725 HIGHWAY 290 WEST #103

5725 HWY 290 WEST

AUSTIN

AUSTIN TX 78735

**DELAWARE DEPARTMENT OF STATE**
**U.C.C. FILING SECTION**
**FILED 05:59 PM 07/29/2014**
**INITIAL FILING # 2014 3024403**

**SRV: 141011628**

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| COLLINS ASSET GROUP, LLC | | | | |
| OR 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| | | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 5725 HIGHWAY 290 WEST #103 | AUSTIN | TX | 78735 | US |

| | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | |
|---|---|---|---|
| | LTD LIABILITY COMPANY | DE | |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| | | | | |
| OR 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| | | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | |
|---|---|---|---|
| | | | |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| ALT MONEY INVESTMENTS IV, LLC | | | | |
| OR 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| | | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| FIVE CONCOURSE PARKWAY SUITE 2850 | ATLANTA | GA | 30328 | US |

**4. This FINANCING STATEMENT covers the following collateral:**

Collateral Description - please see attachment

---

| 6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Attach Addendum [if applicable] | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] | ☐ All Debtors | ☐ Debtor 1 | ☐ Debtor 2 |
|---|---|---|---|---|

8. OPTIONAL FILER REFERENCE DATA

## COLLATERAL

### Accounts Receivable Identified in the Books and Records of Collins Asset Group, LLC on July 1, 2014 for ALT Money Investments IV, LLC:

| | Portfolio No. | Face Value | Number of Accounts |
|---|---|---|---|
| | 14041_INV5 | $ 9,065,734.62 | 1182 |
| | 14049_INV4 | $ 972,841.57 | 1,972 |
| | 14032_INV4 | $ 1,070,203.65 | 2,212 |
| | xxx | xxx | xxx |
| | xxx | xxx | xxx |
| | xxx | xxx | xxx |
| | xxx | xxx | xxx |
| | xxx | xxx | xxx |
| | xxx | xxx | xxx |
| | xxx | xxx | xxx |
| | xxx | xxx | xxx |
| | xxx | xxx | xxx |
| | | $ 11,108,779.84 | 5366 |

Additional collateral of One Million Thirty Thousand, Three Hundred Thirty Eight Dollars and ninety two cents ($1,030,338.92) in cash deposited by Secured Party (subject to use for Approved Purposes pursuant to Loan Documents) in CAG Trust Account at Wells Fargo Bank, NA, Austin, TX Account Number 6301388895

Exhibit A- Thaxton Class Complaint 00009

# UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

Charles E. Natkins      5128654162

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

COLLINS ASSET GROUP, LLC

5725 HIGHWAY 290 WEST #103

5725 HWY 290 WEST

AUSTIN

AUSTIN TX 78735

DELAWARE DEPARTMENT OF STATE
U.C.C. FILING SECTION
FILED 06:22 PM 08/18/2014
INITIAL FILING # 2014 3024403
AMENDMENT   # 2014 3314390
SRV: 141083469

1a. INITIAL FINANCING STATEMENT FILE #

2014 3024403

1b.  This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.

2. ☐ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

3. ☐ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

4. ☐ ASSIGNMENT (full or partial): Give name of assignee in item 7a or 7b and address of assignee in item 7c; and also give name of assignor in item 9.

5. AMENDMENT (PARTY INFORMATION): This Amendment affects ☐ Debtor or ☐ Secured Party of record. Check only one of these two boxes.

Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.

☐ CHANGE name and/or address: Give current record name in item 6a or 6b; also give new name (if name change) in item 7a or 7b and/or new address (if address change) in item 7c.  ☐ DELETE name: Give record name to be deleted in item 6a or 6b.  ☐ ADD name: Complete item 7a or 7b, and also item 7c; also complete items 7d-7g (if applicable).

6. CURRENT RECORD INFORMATION:

6a. ORGANIZATION'S NAME

OR

| 6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

7. CHANGED (NEW) OR ADDED INFORMATION:

7a. ORGANIZATION'S NAME

OR

| 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| 7e. TYPE OF ORGANIZATION | 7f. JURISDICTION OF ORGANIZATION | |
|---|---|---|
| | | |

8. AMENDMENT (COLLATERAL CHANGE): check only one box.

Describe collateral ☐ deleted  or ☐ added, or give entire ☒ restated collateral description, or describe collateral ☐ assigned.

Collateral Description  - please see attachment

9. NAME of SECURED PARTY of RECORD AUTHORIZING THIS AMENDMENT

Collins Asset Group, LLC

The party authorizing this amendment is a DEBTOR

10. OPTIONAL FILER REFERENCE DATA

Exhibit A- Thaxton Class Complaint 00010

## COLLATERAL

### Accounts Receivable Identified in the Books and Records of Collins Asset Group, LLC on July 1, 2014 for ALT Money Investments IV, LLC:

|  | Portfolio No. | Face Value | Number of Accounts |
|---|---|---|---|
|  | 14041_INV5 | $ 9,065,734.62 | 1182 |
|  | 14049_INV4 | $ 972,841.57 | 1,972 |
|  | 14032_INV4 | $ 1,070,203.65 | 2,212 |
|  | 14076_INV2 | $83,858,770.57 | 1,201 |
|  | xxx | xxx | xxx |
|  | xxx | xxx | xxx |
|  | xxx | xxx | xxx |
|  | xxx | xxx | xxx |
|  | xxx | xxx | xxx |
|  | xxx | xxx | xxx |
|  | xxx | xxx | xxx |
|  | xxx | xxx | xxx |
|  |  | $ 94,967,550.41 | 6,567 |

Additional collateral of One Million Thirty Thousand, Three Hundred Thirty Eight Dollars and ninety two cents ($1,030,338.92) in cash deposited by Secured Party (subject to use for Approved Purposes pursuant to Loan Documents) in CAG Trust Account at Wells Fargo Bank, NA, Austin, TX Account Number 6301388895

Exhibit A- Thaxton Class Complaint 00011

████████████
████████████
████████████
████████████

# UCC FINANCING STATEMENT AMENDMENT

**FOLLOW INSTRUCTIONS**

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
(512) 865-4162

**B. E-MAIL CONTACT AT FILER (optional)**
CHATKINS@COLLINSASSETGROUP.COM

**C. SEND ACKNOWLEDGMENT TO:   (Name and Address)**

COLLINS ASSET GROUP, LLC
5725 HIGHWAY 290 WEST #103
5725 HWY 290 WEST
AUSTIN, TX 78735

**Delaware Department of State**
**U.C.C. Filing Section**
**Filed: 05:11 PM 03/21/2016**
**U.C.C. Initial Filing No: 2014 3024403**
**Amendment No: 20161688389**
**Service Request No:   20161774520**

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

**1a. INITIAL FINANCING STATEMENT FILE NUMBER**
20143024403

**1b.** ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record]
(or recorded) in the REAL ESTATE RECORDS
Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13

**2.** ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

**3.** ☐ **ASSIGNMENT (full or partial)**  Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

**4.** ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

**5.** ☐ **PARTY INFORMATION CHANGE:**

Check one of these two boxes: **AND** Check one of these three boxes to
This Change effects ☐ Debtor or ☐ Secured Party of record
☐ CHANGE name and/or address: Complete item 6a or 6b, and item 7a or 7b and item 7c
☐ ADD name. Complete item 7a or 7b, and item 7c
☐ DELETE name: Give record name to be deleted in item 6a or 6b

**6. CURRENT RECORD INFORMATION:** Complete for Party Information Change - provide only one name (6a or 6b)

| 6a ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 6b INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

**7. CHANGED OR ADDED INFORMATION:** Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 7a ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 7b INDIVIDUAL'S SURNAME | | | |
| INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |
| 7c MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

**8.** ☑ **COLLATERAL CHANGE: Also check one of these four boxes** ☐ ADD collateral  ☐ DELETE collateral  ☑ RESTATE covered collateral  ☐ ASSIGN collateral
Indicate collateral:
**Accounts Receivable identified in the Books and Records of Collins Asset Group, LLC on February 3, 2016 for ALT Money Investments IV, LLC  Portfolio Number 16000_MTG_INV9 with a face value of $86,065,025.93 consisting of 1,599 accounts.**

**9. NAME of SECURED PARTY of RECORD AUTHORIZING THIS AMENDMENT:** Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☑ and provide name of authorizing Debtor

| 9a ORGANIZATION'S NAME | | | |
|---|---|---|---|
| COLLINS ASSET GROUP, LLC | | | |
| 9b INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

**10. OPTIONAL FILER REFERENCE DATA:**

**International Association of Commercial Administrators**
**FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)**

Exhibit A- Thaxton Class Complaint 00012

# UCC FINANCING STATEMENT AMENDMENT ADDITIONAL PARTY

FOLLOW INSTRUCTIONS

**19. INITIAL FINANCING STATEMENT FILE NUMBER:** Same as item 1a on Amendment form
20143024403

**20. NAME of PARTY AUTHORIZING THIS AMENDMENT:** Same as item 9 on Amendment form

20a ORGANIZATION'S NAME
COLLINS ASSET GROUP, LLC

OR

20b INDIVIDUAL'S SURNAME

FIRST PERSONAL NAME

ADDITIONAL NAME(S)/INITIAL(S)     SUFFIX

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

**21. ADDITIONAL DEBTOR'S NAME** Provide only one Debtor name (21a or 21b) (use exact, full name, do not omit, modify, or abbreviate any part of the Debtor's name)

| 21a ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 21b INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 21c MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |

**22. ADDITIONAL DEBTOR'S NAME** Provide only one Debtor name (22a or 22b) (use exact, full name, do not omit, modify, or abbreviate any part of the Debtor's name)

| 22a ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 22b INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 22c MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |

**23. ADDITIONAL DEBTOR'S NAME** Provide only one Debtor name (23a or 23b) (use exact, full name, do not omit, modify, or abbreviate any part of the Debtor's name)

| 23a ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 23b INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 23c MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |

**24.** ☐ **ADDITIONAL SECURED PARTY'S NAME** or ☐ **ASSIGNOR SECURED PARTY'S NAME:** Provide only one name (24a or 24b)

| 24a ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 24b INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 24c MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |

**25.** ☐ **ADDITIONAL SECURED PARTY'S NAME** or ☐ **ASSIGNOR SECURED PARTY'S NAME:** Provide only one name (25a or 25b)

| 25a ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 25b INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 25c MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |

**26. MISCELLANEOUS:**

International Association of Commercial Administrators

**FILING OFFICE COPY** — UCC FINANCING STATEMENT AMENDMENT ADDITIONAL PARTY (Form UCC3AP) (Rev. 08/22/11)

███████████
███████████
███████████
███████████

# UCC FINANCING STATEMENT **AMENDMENT**
**FOLLOW INSTRUCTIONS**

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
(512) 865-4162

**B. E-MAIL CONTACT AT FILER (optional)**
CHATKINS@COLLINSASSETGROUP.COM

**C. SEND ACKNOWLEDGMENT TO:  (Name and Address)**

⌐ COLLINS ASSET GROUP, LLC
5725 HIGHWAY 290 WEST #103
5725 HWY 290 WEST
AUSTIN, TX 78735 ⌐

**Delaware Department of State**
**U.C.C. Filing Section**
**Filed: 05:32 PM 07/11/2018**
**U.C.C. Initial Filing No: 2014 3024403**
**Amendment No: 2018 4762015**
**Service Request No:  20185617818**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| **1a. INITIAL FINANCING STATEMENT FILE NUMBER** | **1b.** ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] |
|---|---|
| 20143024403 | (or recorded) in the REAL ESTATE RECORDS |
| | Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13 |

**2.** ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

**3.** ☑ **ASSIGNMENT (full or partial)**  Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

**4.** ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

**5.** ☐ **PARTY INFORMATION CHANGE:**

Check one of these two boxes        **AND** Check one of these three boxes to
This Change affects ☐ Debtor or ☐ Secured Party of record | ☐ CHANGE name and/or address: Complete item 6a or 6b, and item 7a or 7b and item 7c | ☐ ADD name. Complete item 7a or 7b, and item 7c | ☐ DELETE name: Give record name to be deleted in item 6a or 6b

**6. CURRENT RECORD INFORMATION:** Complete for Party Information Change - provide only one name (6a or 6b)

| 6a ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR | | | |
| 6b INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

**7. CHANGED OR ADDED INFORMATION:** Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 7a ORGANIZATION'S NAME | | | |
|---|---|---|---|
| DIVERSIFIED FINANCING, LLC | | | |
| OR 7b INDIVIDUAL'S SURNAME | | | |
| | | | |
| INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |

| 7c MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 2710 SW PORT SAINT LUCIE BLVD | PORT SAINT LUCIE | FL | 34953 | US |

**8.** ☐ **COLLATERAL CHANGE:** Also check one of these four boxes: ☐ ADD collateral  ☐ DELETE collateral  ☐ RESTATE covered collateral  ☐ ASSIGN collateral
Indicate collateral:

**9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:** Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| 9a ORGANIZATION'S NAME | | | |
|---|---|---|---|
| DEBTOR | | | |
| OR 9b INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

**10. OPTIONAL FILER REFERENCE DATA:**

International Association of Commercial Administrators

Exhibit A- Thaxton Class Complaint 00014

# UCC FINANCING STATEMENT AMENDMENT ADDENDUM
**FOLLOW INSTRUCTIONS**

**11. INITIAL FINANCING STATEMENT FILE NUMBER:** Same as item 1a on Amendment form
20143024403

**12. NAME OF PARTY AUTHORIZING THIS AMENDMENT:** Same as item 9 on Amendment form

| | |
|---|---|
| | 12a ORGANIZATION'S NAME |
| | DEBTOR |
| OR | 12b INDIVIDUAL'S SURNAME |
| | FIRST PERSONAL NAME |
| | ADDITIONAL NAME(S)/INITIAL(S) — SUFFIX |

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

**13. Name of DEBTOR on related financing statement** (Name of a current Debtor of record required for indexing purposes only in some filing offices - see Instruction item 13)  Provide only one Debtor name (13a or 13b) (use exact, full name, do not omit, modify, or abbreviate any part of the Debtor's name), see Instructions if name does not fit

| | |
|---|---|
| | 13a ORGANIZATION'S NAME |
| | COLLINS ASSET GROUP, LLC |
| OR | 13b INDIVIDUAL'S SURNAME — FIRST PERSONAL NAME — ADDITIONAL NAME(S)/INITIAL(S) — SUFFIX |

**14. ADDITIONAL SPACE FOR ITEM 8 (Collateral)**

**15. This FINANCING STATEMENT AMENDMENT**
☐ covers timber to be cut   ☐ covers as-extracted collateral   ☐ is filed as a fixture filing

**16. Name and address of a RECORD OWNER of real estate described in item 17**
    (if Debtor does not have a record interest)

**17. Description of real estate**

**18. MISCELLANEOUS:**

International Association of Commercial Administrato
**FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT ADDENDUM (Form UCC3Ad) (Rev. 04/20/11)**

Exhibit A- Thaxton Class Complaint 00015

███████████
███████████
███████████
███████████

## UCC FINANCING STATEMENT AMENDMENT
**FOLLOW INSTRUCTIONS**

| | |
|---|---|
| **A. NAME & PHONE OF CONTACT AT FILER (optional)**<br>(512) 865-4160 | |
| **B. E-MAIL CONTACT AT FILER (optional)**<br>SLARRABEE@COLLINSASSETGROUP.COM | |
| **C. SEND ACKNOWLEDGMENT TO:** (Name and Address)<br><br>⌐ COLLINS ASSET GROUP, LLC<br>5725 HWY. 290 W., SUITE 103<br>AUSTIN, TX 78735<br>└ US ┘ | **Delaware Department of State**<br>**U.C.C. Filing Section**<br>Filed: 01:53 PM 07/26/2019<br>U.C.C. Initial Filing No: 2014 3024403<br>Amendment No: 2019 5184226<br>Service Request No: 20196179806 |

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE NUMBER<br>20143024403 | 1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record]<br>(or recorded) in the REAL ESTATE RECORDS<br>Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13 |
|---|---|

**2.** ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

**3.** ☐ **ASSIGNMENT (full or partial):** Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

**4.** ☑ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

**5.** ☐ **PARTY INFORMATION CHANGE:**

Check one of these two boxes:                    AND Check one of these three boxes to:

This Change affects ☐ Debtor or ☐ Secured Party of record | ☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c | ☐ ADD name: Complete item 7a or 7b, and item 7c | ☐ DELETE name: Give record name to be deleted in item 6a or 6b

**6. CURRENT RECORD INFORMATION:** Complete for Party Information Change - provide only one name (6a or 6b)

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

**7. CHANGED OR ADDED INFORMATION:** Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 7b. INDIVIDUAL'S SURNAME | | | |
| INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

**8.** ☐ **COLLATERAL CHANGE:** Also check one of these four boxes: ☐ ADD collateral ☐ DELETE collateral ☐ RESTATE covered collateral ☐ ASSIGN collateral

Indicate collateral:

**9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:** Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)

If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| 9a. ORGANIZATION'S NAME<br>COLLINS ASSET GROUP, LLC | | | |
|---|---|---|---|
| OR 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

**10. OPTIONAL FILER REFERENCE DATA:**

International Association of Commercial Administrators

Exhibit A- Thaxton Class Complaint 00016

# UCC FINANCING STATEMENT AMENDMENT ADDENDUM

**FOLLOW INSTRUCTIONS**

| 11. INITIAL FINANCING STATEMENT FILE NUMBER:  Same as item 1a on Amendment form |
|---|
| 20143024403 |

**12. NAME OF PARTY AUTHORIZING THIS AMENDMENT:** Same as item 9 on Amendment form

| | 12a ORGANIZATION'S NAME |
|---|---|
| | COLLINS ASSET GROUP, LLC |
| **OR** | 12b INDIVIDUAL'S SURNAME |
| | FIRST PERSONAL NAME |
| | ADDITIONAL NAME(S)/INITIAL(S)  SUFFIX |

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

**13. Name of DEBTOR on related financing statement** (Name of a current Debtor of record required for indexing purposes only in some filing offices - see Instruction Item 13)  Provide only **one** Debtor name (13a or 13b) (use exact, full name, do not omit, modify, or abbreviate any part of the Debtor's name), see Instructions if name does not fit

| | 13a ORGANIZATION'S NAME |  |  |  |
|---|---|---|---|---|
| | COLLINS ASSET GROUP, LLC |  |  |  |
| **OR** | 13b INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

**14. ADDITIONAL SPACE FOR ITEM 8 (Collateral)**

| 15. This FINANCING STATEMENT AMENDMENT | 17. Description of real estate |
|---|---|
| ☐ covers timber to be cut   ☐ covers as-extracted collateral   ☐ is filed as a fixture filing | |
| 16. Name and address of a RECORD OWNER of real estate described in item 17 (if Debtor does not have a record interest) | |

| 18. MISCELLANEOUS: |
|---|

International Association of Commercial Administrators

**FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT ADDENDUM (Form UCC3Ad) (Rev. 04/20/11)**

# INITIAL FILING #
# 2016 1874864

# UCC FINANCING STATEMENT
**FOLLOW INSTRUCTIONS**

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
(512) 865-4162

**B. E-MAIL CONTACT AT FILER (optional)**
CHATKINS@COLLINSASSETGROUP.COM

**C. SEND ACKNOWLEDGMENT TO:  (Name and Address)**

COLLINS ASSET GROUP, LLC

5725 HIGHWAY 290 WEST #103

5725 HWY 290 WEST

AUSTIN, TX 78735

**Delaware Department of State**
**U.C.C. Filing Section**
**Filed: 11:39 AM 03/30/2016**
**U.C.C. Initial Filing No: 2016 1874864**

**Service Request No:  20161963908**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S NAME:** Provide only <u>one</u> Debtor name (1a or 1b) (use exact, full name, do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| OR | COLLINS ASSET GROUP, LLC | | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | | COUNTRY |
| 5725 HIGHWAY 290 WEST, #103 | AUSTIN | TX | 78735 | | US |

**2. DEBTOR'S NAME:** Provide only <u>one</u> Debtor name (2a or 2b) (use exact, full name, do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| OR | | | | | |
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | | COUNTRY |

**3. SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only <u>one</u> Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| OR | DIVERSIFIED FINANCING, LLC | | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | | COUNTRY |
| 2710 SW PORT SAINT LUCIE BLVD | PORT SAINT LUCIE | FL | 34953 | | US |

**4. COLLATERAL:** This financing statement covers the following collateral:
See attached documents and the collateral descriptions therein which are incorporated herein as if fully rewritten.
Collateral Description - please see attached

5. Check <u>only</u> if applicable and check <u>only</u> one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions)  ☐ being administered by a Decedent's Personal Representative

6a. Check <u>only</u> if applicable and check <u>only</u> one box  6b. Check <u>only</u> if applicable and check <u>only</u> one box
☐ Public-Finance Transaction  ☐ Manufactured-Home Transaction  ☐ A Debtor is a Transmitting Utility  ☐ Agricultural Lien  ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable):  ☐ Lessee/Lessor  ☐ Consignee/Consignor  ☐ Seller/Buyer  ☐ Bailee/Bailor  ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

International Association of Commercial Administrators

**EXHIBIT A TO UCC LIEN-DIVERSIFIED FINANCING, LLC**

The following collateral of Collins Asset Group, LLC secures the subsequently listed loans only pursuant to the terms of the Loan Documents and originated by the Secured Party, Diversified Financing, LLC and the obligor, Collins Asset Group, LLC.

Accounts Receivable in the Books and Records of Collins Asset Group, LLC as of February 3, 2016 notated as 16000_MTG_INV11 with a face value of $67,867,808.89 and an account total of 1,294.

Accounts Receivable in the Books and Records of Collins Asset Group, LLC as of February 3, 2016 notated as 14071_INV2 with a face value of $618,120.37 and an account total of 1,179.

Accounts Receivable in the Books and Records of Collins Asset Group, LLC as of February 3, 2016 notated as 14077_INV2 with a face value of $611,928.54 and an account total of 1,299.

22.88% of the Note Receivable/Line of Credit between Collins Assets Group, LLC and Llano Financing Group, LLC in the sum of $2,000,000 dated XXXXXX as amended XXXXXXXX

| Amt of Loan | Date of Loan |
|-------------|--------------|
| 160,000     | 12/5/14      |
| 476,200     | 12/8/14      |
| 270,120     | 12/11/14     |
| 160,000     | 1/13/15      |
| 200,000     | 1/14/15      |

**Page 1 of 12**

Exhibit A- Thaxton Class Complaint 00020

The following collateral of Collins Asset Group, LLC secures the subsequently listed loans only pursuant to the terms of the Loan Documents and originated by the Secured Party, Diversified Financing, LLC and the obligor, Collins Asset Group, LLC.

Accounts Receivable in the Books and Records of Collins Asset Group, LLC as of February 3, 2016 notated as 16000_MTG_INV12 with a face value of $ 39,023,784.31  and an account total of 745.

Accounts Receivable in the Books and Records of Collins Asset Group, LLC as of February 3, 2016 notated as 14071_INV3 with a face value of $ 353,810.96 and an account total of 673.

Accounts Receivable in the Books and Records of Collins Asset Group, LLC as of February 3, 2016 notated as 14077_INV3 with a face value of $349,487.84 and an account total of 742.

13.12% of the Note Receivable/Line of Credit between Collins Assets Group, LLC and Llano Financing Group, LLC in the sum of $2,000,000 dated XXXXXX as amended XXXXXXXX

| Amt of Loan | Date of Loan |
| --- | --- |
| 303,500 | 4/6/15 |
| 100,000 | 4/23/15 |
| 50,000 | 5/19/15 |
| 107,500 | 6/9/15 |
| 162,500 | 6/15/15 |

**Page 2 of 12**

Exhibit A- Thaxton Class Complaint 00021

The following collateral of Collins Asset Group, LLC secures the subsequently listed loans only pursuant to the terms of the Loan Documents and originated by the Secured Party, Diversified Financing, LLC and the obligor, Collins Asset Group, LLC.

Accounts Receivable in the Books and Records of Collins Asset Group, LLC as of February 3, 2016 notated as 16000_MTG_INV13 with a face value of $62,720,106.43 and an account total of 1,187.

Accounts Receivable in the Books and Records of Collins Asset Group, LLC as of February 3, 2016 notated as 14071_INV4 with a face value of $570,191.34 and an account total of 1084.

Accounts Receivable in the Books and Records of Collins Asset Group, LLC as of February 3, 2016 notated as 14077_INV4 with a face value of $563,759.24 and an account total of 1,196.

20.2% of the Note Receivable/Line of Credit between Collins Assets Group, LLC and Llano Financing Group, LLC in the sum of $2,000,000 dated XXXXXX as amended XXXXXXXX

| Amt of Loan | Date of Loan |
|---|---|
| 180,000.00 | 8/11/15 |
| 25,500.00 | 9/2/15 |
| 445,000.00 | 9/16/15 |
| 144,000.00 | 9/21/15 |
| 351,500.00 | 9/28/15 |
| 36,500.00 | 9/30/15 |

Exhibit A- Thaxton Class Complaint 00022

The following collateral of Collins Asset Group, LLC secures the subsequently listed loans only pursuant to the terms of the Loan Documents and originated by the Secured Party, Diversified Financing, LLC and the obligor, Collins Asset Group, LLC.

Accounts Receivable in the Books and Records of Collins Asset Group, LLC as of February 3, 2016 notated as 16000_MTG_INV14 with a face value of $20,265,483.72 and an account total of 379.

Accounts Receivable in the Books and Records of Collins Asset Group, LLC as of February 3, 2016 notated as 14071_INV5 with a face value of $177,644.77 and an account total of 337.

Accounts Receivable in the Books and Records of Collins Asset Group, LLC as of February 3, 2016 notated as 14077_INV5 with a face value of $174,868.41 and an account total of 371.

6.63% of the Note Receivable/Line of Credit between Collins Assets Group, LLC and Llano Financing Group, LLC in the sum of $2,000,000 dated XXXXXX as amended XXXXXXXX

| Loan Amount | Date of Loan |
| --- | --- |
| 28,000 | 10/13/15 |
| 39,500 | 11/06/15 |
| 295,250 | 12/02/15 |

Exhibit A- Thaxton Class Complaint 00023

The following collateral of Collins Asset Group, LLC secures the subsequently listed loans only pursuant to the terms of the Loan Documents and originated by the Secured Party, Diversified Financing, LLC and the obligor, Collins Asset Group, LLC.

Note Receivable between Collins Assets Group, LLC and C3 Processing, LLC in the sum of $2,125,000 dated September 23, 2014

| Amt of Loan | Date of Loan | Amt of Loan | Date of Loan | Amt of Loan | Date of Loan |
|---|---|---|---|---|---|
| 25,000.00 | 8/6/2014 | 100,000.00 | 8/6/2014 | 400,000.00 | 6/11/2015 |
| 25,000.00 | 9/29/2014 | 30,000.00 | 9/2/2014 | 196,000.00 | 5/5/2015 |
| 50,000.00 | 12/11/2014 | 130,000.00 | 9/18/2014 | 59,500.00 | 6/8/2015 |
| 59,500.00 | 6/22/2015 | 30,000.00 | 10/20/2014 | 146,359.00 | 8/24/2015 |
| 31,000.00 | 6/24/2015 | 23,500.00 | 11/7/2014 | 75,000.00 | 9/11/2015 |
| 219,500.00 | 6/26/2015 | 30,000.00 | 11/25/2014 | 76,500.00 | 9/14/2015 |
| 9,000.00 | 8/11/2015 | 50,000.00 | 12/11/2014 | 129,000.00 | 9/24/2015 |
| 50,000.00 | 8/14/2015 | 18,000.00 | 5/19/2015 | 74,900.00 | 12/23/2015 |
| 60,000.00 | 10/22/2015 | 53,000.00 | 6/8/2015 | 140,000.00 | 1/11/2016 |
| 100,000.00 | 10/26/2015 | 12,000.00 | 6/8/2015 | 99,900.00 | 10/22/2015 |
| 50,000.00 | 10/27/2015 | 50,000.00 | 6/15/2015 | 267,500.00 | 10/26/2015 |
| 100,000.00 | 11/6/2015 | 25,000.00 | 6/18/2015 | 250,000.00 | 12/3/2015 |
| 72,000.00 | 12/3/2015 | 50,000.00 | 7/7/2015 | 48,000.00 | 12/3/2015 |
| 101,500.00 | 12/10/2015 | 500.00 | 7/27/2015 | 101,500.00 | 12/10/2015 |
| 100,000.00 | 12/22/2015 | 29,000.00 | 7/27/2015 | 192,300.00 | 12/30/2015 |
| 40,000.00 | 1/6/2016 | 201,000.00 | 8/28/2015 | 66,000.00 | 1/11/2016 |
| 50,000.00 | 1/13/2016 | 100,000.00 | 9/29/2015 | 50,000.00 | 1/25/2016 |
| 9,900.00 | 2/8/2016 | 100,000.00 | 9/30/2015 | | |
| | | 120,000.00 | 10/9/2015 | | |

**Page 5 of 12**

Exhibit A- Thaxton Class Complaint 00024

The following collateral of Collins Asset Group, LLC secures the subsequently listed loans only pursuant to the terms of the Loan Documents and originated by the Secured Party, Diversified Financing, LLC and the obligor, Collins Asset Group, LLC.

Accounts Receivable in the Books and Records of Collins Asset Group, LLC as of February 3, 2016 notated as 16000_MTG_INV15 with a face value of $3,590,037.12 and an account total of 70.

1.19% of the Note Receivable/Line of Credit between Collins Assets Group, LLC and Llano Financing Group, LLC in the sum of $2,000,000 dated XXXXXX as amended XXXXXXXX

| Amt of Loan | Date of Loan |
| --- | --- |
| 48,500 | 6/15/15 |

**Page 6 of 12**

Exhibit A- Thaxton Class Complaint 00025

The following collateral of Collins Asset Group, LLC secures the subsequently listed loans only pursuant to the terms of the Loan Documents and originated by the Secured Party, Diversified Financing, LLC and the obligor, Collins Asset Group, LLC.

Accounts Receivable in the Books and Records of Collins Asset Group, LLC as of February 3, 2016 notated as 16000_MTG_INV16 with a face value of $7,381780.30 and an account total of 137.

2.79% of the Note Receivable/Line of Credit between Collins Assets Group, LLC and Llano Financing Group, LLC in the sum of $2,000,000 dated XXXXXX as amended XXXXXXXX

| Amt of Loan | Date of Loan |
| --- | --- |
| 119,500 | 8/18/15 |

Exhibit A- Thaxton Class Complaint 00026

The following collateral of Collins Asset Group, LLC secures the subsequently listed loans only pursuant to the terms of the Loan Documents and originated by the Secured Party, Diversified Financing, LLC and the obligor, Collins Asset Group, LLC.

Accounts Receivable in the Books and Records of Collins Asset Group, LLC as of February 3, 2016 notated as 16000_MTG_INV17 with a face value of $11,301,029.80 and an account total of 214.

4.61% of the Note Receivable/Line of Credit between Collins Assets Group, LLC and Llano Financing Group, LLC in the sum of $2,000,000 dated XXXXXX as amended XXXXXXXX

| Amt of Loan | Date of Loan |
|---|---|
| 199,500 | 12/14/15 |

Exhibit A- Thaxton Class Complaint 00027

The following collateral of Collins Asset Group, LLC secures the subsequently listed loans only pursuant to the terms of the Loan Documents and originated by the Secured Party, Diversified Financing, LLC and the obligor, Collins Asset Group, LLC.

Accounts Receivable in the Books and Records of Collins Asset Group, LLC as of February 3, 2016 notated as 16000_MTG_INV18 with a face value of $20,351,441.55 and an account total of 392.

8.63% of the Note Receivable/Line of Credit between Collins Assets Group, LLC and Llano Financing Group, LLC in the sum of $2,000,000 dated XXXXXX as amended XXXXXXXX

| Amt of Loan | Date of Loan |
|---|---|
| 208,800 | 4/13/15 |
| 120,000 | 5/5/15 |
| 50,000 | 5/12/15 |

Exhibit A- Thaxton Class Complaint 00028

The following collateral of Collins Asset Group, LLC secures the subsequently listed loans only pursuant to the terms of the Loan Documents and originated by the Secured Party, Diversified Financing, LLC and the obligor, Collins Asset Group, LLC.

Accounts Receivable in the Books and Records of Collins Asset Group, LLC as of February 3, 2016 notated as 16000_MTG_INV19 with a face value of $31,591,200.55 and an account total of 569.

12.70% of the Note Receivable/Line of Credit between Collins Assets Group, LLC and Llano Financing Group, LLC in the sum of $2,000,000 dated XXXXXX as amended XXXXXXXX

| Amt of Loan | Date of Loan |
| --- | --- |
| 116,000 | 8/24/15 |
| 289,000 | 9/2/15 |
| 41,000 | 9/11/15 |
| 113,000 | 9/29/15 |

Exhibit A- Thaxton Class Complaint 00029

The following collateral of Collins Asset Group, LLC secures the subsequently listed loans only pursuant to the terms of the Loan Documents and originated by the Secured Party, Diversified Financing, LLC and the obligor, Collins Asset Group, LLC.

Accounts Receivable in the Books and Records of Collins Asset Group, LLC as of February 3, 2016 notated as 16000_MTG_INV20 with a face value of $10,068,109.41 and an account total of 183.

3.87% of the Note Receivable/Line of Credit between Collins Assets Group, LLC and Llano Financing Group, LLC in the sum of $2,000,000 dated XXXXXX as amended XXXXXXXX

| Amt of Loan | Date of Loan |
|---|---|
| 141,900 | 12/22/15 |
| 29,800 | 12/23/15 |

Exhibit A- Thaxton Class Complaint 00030

The following collateral of Collins Asset Group, LLC secures the subsequently listed loans only pursuant to the terms of the Loan Documents and originated by the Secured Party, Diversified Financing, LLC and the obligor, Collins Asset Group, LLC.

Accounts Receivable in the Books and Records of Collins Asset Group, LLC as of February 3, 2016 notated as 16000_MTG_INV21 with a face value of $7,433,339.91 and an account total of 162.

3.38% of the Note Receivable/Line of Credit between Collins Assets Group, LLC and Llano Financing Group, LLC in the sum of $2,000,000 dated XXXXXX as amended XXXXXXXX

| Amt of Loan | Date of Loan |
| --- | --- |
| 125,000 | 1/11/16 |
| 24,900 | 1/13/16 |

Exhibit A- Thaxton Class Complaint 00031

▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮

## UCC FINANCING STATEMENT AMENDMENT
FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
(512) 865-4162

B. E-MAIL CONTACT AT FILER (optional)
CWATKINS@COLLINSASSETGROUP.COM

C. SEND ACKNOWLEDGMENT TO:  (Name and Address)

⌐ COLLINS ASSET GROUP, LLC

5725 HIGHWAY 290 WEST #103

5725 HWY 290 WEST

AUSTIN, TX 78735 ⌐

Delaware Department of State
U.C.C. Filing Section
Filed: 04:24 PM 05/25/2016
U.C.C. Initial Filing No: 2016 1874864
Amendment No: 20163135652
Service Request No:  20163756123

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1a. INITIAL FINANCING STATEMENT FILE NUMBER
20161874864

1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record]
(or recorded) in the REAL ESTATE RECORDS
Filer: _attach_ Amendment Addendum (Form UCC3Ad) _and_ provide Debtor's name in item 13

2. ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

3. ☐ **ASSIGNMENT** (full or partial):  Provide name of Assignee in item 7a or 7b, _and_ address of Assignee in item 7c _and_ name of Assignor in item 9
For partial assignment, complete items 7 and 9 _and_ also indicate affected collateral in item 8

4. ☐ **CONTINUATION:**  Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. ☐ **PARTY INFORMATION CHANGE:**

Check _one_ of these two boxes:                                    **AND** Check _one_ of these three boxes to:

This Change affects ☐ Debtor _or_ ☐ Secured Party of record | ☐ CHANGE name and/or address: Complete item 6a or 6b; _and_ item 7a or 7b _and_ item 7c | ☐ ADD name: Complete item 7a or 7b, _and_ item 7c | ☐ DELETE name: Give record name to be deleted in item 6a or 6b

6. CURRENT RECORD INFORMATION: Complete for Party Information Change - provide only _one_ name (6a or 6b)

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

7. CHANGED OR ADDED INFORMATION: Complete for Assignment or Party Information Change - provide only _one_ name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 7b. INDIVIDUAL'S SURNAME | | | |
| INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

8. ☑ **COLLATERAL CHANGE:** _Also_ check _one_ of these four boxes:  ☐ ADD collateral   ☐ DELETE collateral   ☑ RESTATE covered collateral   ☐ ASSIGN collateral

Indicate collateral:
See attached document and the collateral description therein which are incorporated herein as if fully rewritten
Collateral Description - please see attached

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT: Provide only _one_ name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☑ and provide name of authorizing Debtor

| 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| DEBTOR | | | |
| OR 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

10. OPTIONAL FILER REFERENCE DATA:

International Association of Commercial Administrators

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)

# UCC FINANCING STATEMENT **AMENDMENT ADDENDUM**

FOLLOW INSTRUCTIONS

**11. INITIAL FINANCING STATEMENT FILE NUMBER:** Same as item 1a on Amendment form
**20161874864**

**12. NAME OF PARTY AUTHORIZING THIS AMENDMENT:** Same as item 9 on Amendment form

| | |
|---|---|
| | 12a. ORGANIZATION'S NAME |
| | **DEBTOR** |
| OR | 12b. INDIVIDUAL'S SURNAME |
| | FIRST PERSONAL NAME |
| | ADDITIONAL NAME(S)/INITIAL(S) — SUFFIX |

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

**13. Name of DEBTOR on related financing statement** (Name of a current Debtor of record required for indexing purposes only in some filing offices - see Instruction item 13). Provide only **one** Debtor name (13a or 13b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); see Instructions if name does not fit

| | 13a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| | **COLLINS ASSET GROUP, LLC** | | | |
| OR | 13b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

**14. ADDITIONAL SPACE FOR ITEM 8 (Collateral)**

**15.** This FINANCING STATEMENT AMENDMENT:
☐ covers timber to be cut   ☐ covers as-extracted collateral   ☐ is filed as a fixture filing

**16.** Name and address of a RECORD OWNER of real estate described in item 17 (if Debtor does not have a record interest)

**17.** Description of real estate

**18. MISCELLANEOUS:**

International Association of Commercial Administrators

**FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT ADDENDUM (Form UCC3Ad) (Rev. 04/20/11)**

Exhibit A- Thaxton Class Complaint 00033

## UCC FINANCING STATEMENT AMENDMENT ADDITIONAL PARTY
FOLLOW INSTRUCTIONS

| 19. INITIAL FINANCING STATEMENT FILE NUMBER: Same as item 1a on Amendment form |
|---|
| **20161874864** |

**20. NAME OF PARTY AUTHORIZING THIS AMENDMENT:** Same as item 9 on Amendment form

| 20a ORGANIZATION'S NAME |
|---|
| **DEBTOR** |

OR

| 20b INDIVIDUAL'S SURNAME | | |
|---|---|---|
| FIRST PERSONAL NAME | | |
| ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

**21. ADDITIONAL DEBTOR'S NAME:** Provide only <u>one</u> Debtor name (21a or 21b) (use exact, full name, do not omit, modify, or abbreviate any part of the Debtor's name)

| 21a ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR 21b INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 21c MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

**22. ADDITIONAL DEBTOR'S NAME:** Provide only <u>one</u> Debtor name (22a or 22b) (use exact, full name, do not omit, modify, or abbreviate any part of the Debtor's name)

| 22a ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR 22b INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 22c MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

**23. ADDITIONAL DEBTOR'S NAME:** Provide only <u>one</u> Debtor name (23a or 23b) (use exact, full name, do not omit, modify, or abbreviate any part of the Debtor's name)

| 23a ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR 23b INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 23c MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

**24. ☐ ADDITIONAL SECURED PARTY'S NAME <u>or</u> ☐ ASSIGNOR SECURED PARTY'S NAME:** Provide only <u>one</u> name (24a or 24b)

| 24a ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR 24b INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 24c MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

**25. ☐ ADDITIONAL SECURED PARTY'S NAME <u>or</u> ☐ ASSIGNOR SECURED PARTY'S NAME:** Provide only <u>one</u> name (25a or 25b)

| 25a ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR 25b INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 25c MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

**26. MISCELLANEOUS:**

Exhibit A  Thaxton Class Complaint 00034

COLLATERAL SCHEDULE
EXHIBIT 1

EXHIBIT A TO SECURITY AGREEMENT AND UCC LIEN-DIVERSIFIED FINANCING, LLC

The following collateral of Collins Asset Group, LLC secures the subsequently listed loans only pursuant to the terms of the Loan Documents and originated by the Secured Party, Diversified Financing, LLC and the obligor, Collins Asset Group, LLC.

Accounts Receivable in the Books and Records of Collins Asset Group, LLC as of February 3, 2016 notated as 16000_MTG_INV11 with a face value of $67,867,808.89 and an account total of 1,294.

Accounts Receivable in the Books and Records of Collins Asset Group, LLC as of February 3, 2016 notated as 14071_INV2 with a face value of $618,120.37 and an account total of 1,179.

Accounts Receivable in the Books and Records of Collins Asset Group, LLC as of February 3, 2016 notated as 14077_INV2 with a face value of $611,928.54 and an account total of 1,299.

22.88% of the Note Receivable/Line of Credit between Collins Assets Group, LLC and Llano Financing Group, LLC in the sum of $500,000 dated 10/10/2014 as thereafter amended, supplemented and/or modified.

| Amt of Loan | Date of Loan |
|---|---|
| 160,000 | 12/5/14 |
| 476,200 | 12/8/14 |
| 270,120 | 12/11/14 |
| 160,000 | 1/13/15 |
| 200,000 | 1/14/15 |

Exhibit A- Thaxton Class Complaint 00035

COLLATERAL SCHEDULE
EXHIBIT 1

The following collateral of Collins Asset Group, LLC secures the subsequently listed loans only pursuant to the terms of the Loan Documents and originated by the Secured Party, Diversified Financing, LLC and the obligor, Collins Asset Group, LLC.

Accounts Receivable in the Books and Records of Collins Asset Group, LLC as of February 3, 2016 notated as 16000_MTG_INV12 with a face value of $ 39,023,784.31  and an account total of 745.

Accounts Receivable in the Books and Records of Collins Asset Group, LLC as of February 3, 2016 notated as 14071_INV3 with a face value of $ 353,810.96 and an account total of 673.

Accounts Receivable in the Books and Records of Collins Asset Group, LLC as of February 3, 2016 notated as 14077_INV3 with a face value of $349,487.84 and an account total of 742.

13.12% of the Note Receivable/Line of Credit between Collins Assets Group, LLC and Llano Financing Group, LLC in the sum of $500,000 dated 10/10/2014 as thereafter amended, supplemented and/or modified.

| Amt of Loan | Date of Loan |
|---|---|
| 303,500 | 4/6/15 |
| 100,000 | 4/23/15 |
| 50,000 | 5/19/15 |
| 107,500 | 6/9/15 |
| 162,500 | 6/15/15 |

Exhibit A- Thaxton Class Complaint 00036

COLLATERAL SCHEDULE
EXHIBIT 1

The following collateral of Collins Asset Group, LLC secures the subsequently listed loans only pursuant to the terms of the Loan Documents and originated by the Secured Party, Diversified Financing, LLC and the obligor, Collins Asset Group, LLC.

Accounts Receivable in the Books and Records of Collins Asset Group, LLC as of February 3, 2016 notated as 16000_MTG_INV13 with a face value of $62,720,106.43 and an account total of 1,187.

Accounts Receivable in the Books and Records of Collins Asset Group, LLC as of February 3, 2016 notated as 14071_INV4 with a face value of $570,191.34 and an account total of 1084.

Accounts Receivable in the Books and Records of Collins Asset Group, LLC as of February 3, 2016 notated as 14077_INV4 with a face value of $563,759.24 and an account total of 1,196.

20.2% of the Note Receivable/Line of Credit between Collins Assets Group, LLC and Llano Financing Group, LLC in the sum of $500,000 dated 10/10/2014 as thereafter amended, supplemented and/or modified.

| Amt of Loan | Date of Loan |
|---|---|
| 180,000.00 | 8/11/15 |
| 25,500.00 | 9/2/15 |
| 445,000.00 | 9/16/15 |
| 144,000.00 | 9/21/15 |
| 351,500.00 | 9/28/15 |
| 36,500.00 | 9/30/15 |

Exhibit A- Thaxton Class Complaint 00037

**COLLATERAL SCHEDULE**
**EXHIBIT 1**

The following collateral of Collins Asset Group, LLC secures the subsequently listed loans only pursuant to the terms of the Loan Documents and originated by the Secured Party, Diversified Financing, LLC and the obligor, Collins Asset Group, LLC.

Accounts Receivable in the Books and Records of Collins Asset Group, LLC as of February 3, 2016 notated as 16000_MTG_INV14 with a face value of $20,265,483.72 and an account total of 379.

Accounts Receivable in the Books and Records of Collins Asset Group, LLC as of February 3, 2016 notated as 14071_INV5 with a face value of $177,644.77 and an account total of 337.

Accounts Receivable in the Books and Records of Collins Asset Group, LLC as of February 3, 2016 notated as 14077_INV5 with a face value of $174,868.41 and an account total of 371.

6.63% of the Note Receivable/Line of Credit between Collins Assets Group, LLC and Llano Financing Group, LLC in the sum of $500,000 dated 10/10/2014 as thereafter amended, supplemented and/or modified.

| Loan Amount | Date of Loan |
| --- | --- |
| 28,000 | 10/13/15 |
| 39,500 | 11/06/15 |
| 295,250 | 12/02/15 |

Exhibit A- Thaxton Class Complaint 00038

COLLATERAL SCHEDULE
EXHIBIT 1

The following collateral of Collins Asset Group, LLC secures the subsequently listed loans only pursuant to the terms of the Loan Documents and originated by the Secured Party, Diversified Financing, LLC and the obligor, Collins Asset Group, LLC.

Note Receivable between Collins Assets Group, LLC and C3 Processing, LLC in the sum of $2,125,000 dated September 23, 2014

| Amt of Loan | Date of Loan | Amt of Loan | Date of Loan | Amt of Loan | Date of Loan |
|---|---|---|---|---|---|
| 25,000.00 | 8/6/2014 | 100,000.00 | 8/6/2014 | 400,000.00 | 2/24/15 |
| 25,000.00 | 9/29/2014 | 30,000.00 | 9/2/2014 | 196,000.00 | 5/5/2015 |
| 50,000.00 | 12/11/2014 | 130,000.00 | 9/18/2014 | 59,500.00 | 6/8/2015 |
| 59,500.00 | 6/22/2015 | 30,000.00 | 10/20/2014 | 146,359.00 | 8/24/2015 |
| 31,000.00 | 6/24/2015 | 23,500.00 | 11/7/2014 | 75,000.00 | 9/11/2015 |
| 219,500.00 | 6/26/2015 | 30,000.00 | 11/25/2014 | 76,500.00 | 9/14/2015 |
| 9,000.00 | 8/11/2015 | 50,000.00 | 12/11/2014 | 129,000.00 | 9/24/2015 |
| 50,000.00 | 8/14/2015 | 18,000.00 | 5/19/2015 | 74,900.00 | 12/23/2015 |
| 60,000.00 | 10/22/2015 | 53,000.00 | 6/8/2015 | 140,000.00 | 1/11/2016 |
| 100,000.00 | 10/26/2015 | 12,000.00 | 6/8/2015 | 99,900.00 | 10/22/2015 |
| 50,000.00 | 10/27/2015 | 50,000.00 | 6/15/2015 | 267,500.00 | 10/26/2015 |
| 100,000.00 | 11/6/2015 | 25,000.00 | 6/18/2015 | 250,000.00 | 12/3/2015 |
| 72,000.00 | 12/3/2015 | 50,000.00 | 7/7/2015 | 48,000.00 | 12/3/2015 |
| 101,500.00 | 12/10/2015 | 500.00 | 7/27/2015 | 101,500.00 | 12/10/2015 |
| 100,000.00 | 12/22/2015 | 29,000.00 | 7/27/2015 | 192,300.00 | 12/30/2015 |
| 40,000.00 | 1/6/2016 | 201,000.00 | 8/28/2015 | 66,000.00 | 1/11/2016 |
| 50,000.00 | 1/13/2016 | 100,000.00 | 9/29/2015 | 50,000.00 | 1/25/2016 |
| 9,900.00 | 2/8/2016 | 100,000.00 | 9/30/2015 | | |
| | | 120,000.00 | 10/9/2015 | | |

Page 5 of 12

**COLLATERAL SCHEDULE**
**EXHIBIT 1**

The following collateral of Collins Asset Group, LLC secures the subsequently listed loan(s )only pursuant to the terms of the Loan Documents and originated by the Secured Party, Diversified Financing, LLC and the obligor, Collins Asset Group, LLC.

Accounts Receivable in the Books and Records of Collins Asset Group, LLC as of February 3, 2016 notated as 16000_MTG_INV15 with a face value of $3,590,037.12 and an account total of 70.

1.19% of the Note Receivable/Line of Credit between Collins Assets Group, LLC and Llano Financing Group, LLC in the sum of $500,000 dated 10/10/2014 as thereafter amended, supplemented and/or modified.

| Amt of Loan | Date of Loan |
| --- | --- |
| 48,500 | 6/15/15 |

Exhibit A- Thaxton Class Complaint 00040

COLLATERAL SCHEDULE
EXHIBIT 1

The following collateral of Collins Asset Group, LLC secures the subsequently listed loans only pursuant to the terms of the Loan Documents and originated by the Secured Party, Diversified Financing, LLC and the obligor, Collins Asset Group, LLC.

Accounts Receivable in the Books and Records of Collins Asset Group, LLC as of February 3, 2016 notated as 16000_MTG_INV16 with a face value of $7,381780.30 and an account total of 137.

2.79% of the Note Receivable/Line of Credit between Collins Assets Group, LLC and Llano Financing Group, LLC in the sum of $500,000 dated 10/10/2014 as thereafter amended, supplemented and/or modified.

Amt of Loan        Date of Loan

119,500            8/18/15

Exhibit A- Thaxton Class Complaint 00041

COLLATERAL SCHEDULE
EXHIBIT 1

The following collateral of Collins Asset Group, LLC secures the subsequently listed loans only pursuant to the terms of the Loan Documents and originated by the Secured Party, Diversified Financing, LLC and the obligor, Collins Asset Group, LLC.

Accounts Receivable in the Books and Records of Collins Asset Group, LLC as of February 3, 2016 notated as 16000_MTG_INV17 with a face value of $11,301,029.80 and an account total of 214.

4.61% of the Note Receivable/Line of Credit between Collins Assets Group, LLC and Llano Financing Group, LLC in the sum of $500,000 dated 10/10/2014 as thereafter amended, supplemented and/or modified.

| Amt of Loan | Date of Loan |
|-------------|--------------|
| 199,900     | 12/14/15     |

**COLLATERAL SCHEDULE**
**EXHIBIT 1**

The following collateral of Collins Asset Group, LLC secures the subsequently listed loans only pursuant to the terms of the Loan Documents and originated by the Secured Party, Diversified Financing, LLC and the obligor, Collins Asset Group, LLC.

Accounts Receivable in the Books and Records of Collins Asset Group, LLC as of February 3, 2016 notated as 16000_MTG_INV18 with a face value of $20,351,441.55 and an account total of 392.

8.63% of the Note Receivable/Line of Credit between Collins Assets Group, LLC and Llano Financing Group, LLC in the sum of $500,000 dated 10/10/2014 as thereafter amended, supplemented and/or modified.

| Amt of Loan | Date of Loan |
| --- | --- |
| 208,800 | 4/13/15 |
| 120,000 | 5/5/15 |
| 50,000 | 5/12/15 |

Exhibit A- Thaxton Class Complaint 00043

COLLATERAL SCHEDULE
EXHIBIT 1

The following collateral of Collins Asset Group, LLC secures the subsequently listed loans only pursuant to the terms of the Loan Documents and originated by the Secured Party, Diversified Financing, LLC and the obligor, Collins Asset Group, LLC.

Accounts Receivable in the Books and Records of Collins Asset Group, LLC as of February 3, 2016 notated as 16000_MTG_INV19 with a face value of $31,591,200.55 and an account total of 569.

12.70% of the Note Receivable/Line of Credit between Collins Assets Group, LLC and Llano Financing Group, LLC in the sum of $500,000 dated 10/10/2014 as thereafter amended, supplemented and/or modified.

| Amt of Loan | Date of Loan |
|-------------|--------------|
| 116,000 | 8/24/15 |
| 289,000 | 9/2/15 |
| 41,000 | 9/11/15 |
| 113,000 | 9/29/15 |

-

Exhibit A- Thaxton Class Complaint 00044

COLLATERAL SCHEDULE
EXHIBIT 1

The following collateral of Collins Asset Group, LLC secures the subsequently listed loans only pursuant to the terms of the Loan Documents and originated by the Secured Party, Diversified Financing, LLC and the obligor, Collins Asset Group, LLC.

Accounts Receivable in the Books and Records of Collins Asset Group, LLC as of February 3, 2016 notated as 16000_MTG_INV20 with a face value of $10,068,109.41 and an account total of 183.

3.87% of the Note Receivable/Line of Credit between Collins Assets Group, LLC and Llano Financing Group, LLC in the sum of $500,000 dated 10/10/2014 as thereafter amended, supplemented and/or modified.

| Amt of Loan | Date of Loan |
|-------------|--------------|
| 141,900     | 12/22/15     |
| 29,800      | 12/23/15     |

Page 11 of 12

**COLLATERAL SCHEDULE**
**EXHIBIT 1**

The following collateral of Collins Asset Group, LLC secures the subsequently listed loans only pursuant to the terms of the Loan Documents and originated by the Secured Party, Diversified Financing, LLC and the obligor, Collins Asset Group, LLC.

Accounts Receivable in the Books and Records of Collins Asset Group, LLC as of February 3, 2016 notated as 16000_MTG_INV21 with a face value of $7,433,339.91 and an account total of 162.

3.38% of the Note Receivable/Line of Credit between Collins Assets Group, LLC and Llano Financing Group, LLC in the sum of $500,000 dated 10/10/2014 as thereafter amended, supplemented and/or modified.

| Amt of Loan | Date of Loan |
|---|---|
| 125,000 | 1/11/16 |
| 24,900 | 1/13/16 |

Exhibit A- Thaxton Class Complaint 00046

# INITIAL FILING #
# 2016 3136049

Exhibit A- Thaxton Class Complaint 00047

# UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
(512) 865-4162

**B. E-MAIL CONTACT AT FILER (optional)**
CWATKINS@COLLINSASSETGROUP.COM

**C. SEND ACKNOWLEDGMENT TO:   (Name and Address)**

> COLLINS ASSET GROUP, LLC
> 5725 HIGHWAY 290 WEST #103
> 5725 HWY 290 WEST
> AUSTIN, TX 78735

Delaware Department of State
U.C.C. Filing Section
Filed: 04:30 PM 05/25/2016
U.C.C. Initial Filing No: 2016 3136049

Service Request No:   20163757559

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

**1. DEBTOR'S NAME**: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| COLLINS ASSET GROUP, LLC | | | |

| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 5725 HIGHWAY 290 WEST, SUITE #103 | AUSTIN | TX | 78735 | US |

**2. DEBTOR'S NAME**   Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| | | | |

| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

**3. SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY)   Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| DIVERSIFIED FINANCING, LLC | | | |

| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 2710 SW PORT SAINT LUCIE BLVD | PORT SAINT LUCIE | FL | 34953 | US |

**4. COLLATERAL:** This financing statement covers the following collateral:
SEE ATTACHED DOCUMENT AND THE COLLATERAL DESCRIPTIONS THEREIN WHICH ARE INCORPORATED HEREIN BY REFERENCE AS IF FULLY REWRITTEN.
Collateral Description - please see attached

**5.** Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

**6a.** Check only if applicable and check only one box
☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

**6b.** Check only if applicable and check only one box:
☐ Agricultural Lien ☐ Non-UCC Filing

**7. ALTERNATIVE DESIGNATION** (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

**8. OPTIONAL FILER REFERENCE DATA:**

**FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)**

International Association of Commercial Administrators

Exhibit A- Thaxton Class Complaint 00048

**ADDITIONAL COLLATERAL SCHEDULE**

**EXHIBIT 1**

**Diversified Funding, LLC**

**UCC Lien attachment 5 25 2016**

The following collateral of Collins Asset Group, LLC secures the subsequently listed loan(s )only pursuant to the terms of the Loan Documents and originated by the Secured Party, Diversified Financing, LLC and the obligor, Collins Asset Group, LLC.

Accounts Receivable in the Books and Records of Collins Asset Group, LLC as of May 25, 2016 notated as Pool 16024.1.1 with a face value of $21,108,143.46 and an account total of 6,065.

Accounts Receivable in the Books and Records of Collins Asset Group, LLC as of May 25, 2016 notated as Pool 13104.2.1 with a face value of $1,361,695.45 and an account total of 151.

| Amt of Loan | Date of Loan |
|-------------|--------------|
| 60,000      | 2/10/2016    |
| 50,000      | 2/22/2016    |
| 49,000      | 3/9/2016     |
| 200,000     | 5/2/2016     |

Exhibit A- Thaxton Class Complaint 00049

ADDITIONAL COLLATERAL SCHEDULE

EXHIBIT 1

Diversified Funding, LLC

UCC Lien attachment 5 25 2016

The following collateral of Collins Asset Group, LLC secures the subsequently listed loan(s )only pursuant to the terms of the Loan Documents and originated by the Secured Party, Diversified Financing, LLC and the obligor, Collins Asset Group, LLC.

Accounts Receivable in the Books and Records of Collins Asset Group, LLC as of May 25, 2016 notated as Pool 16024.1.2 with a face value of $36,042,978.12 and an account total of 10,337.

Accounts Receivable in the Books and Records of Collins Asset Group, LLC as of May 25, 2016 notated as Pool 13104.2.2 with a face value of $2,333,604.62 and an account total of 258.

| Amt of Loan | Date of Loan |
| --- | --- |
| 36,000 | 2/10/2016 |
| 100,000 | 2/26/2016 |
| 40,000 | 3/2/2016 |
| 46,000 | 3/16/2016 |
| 152,000 | 3/17/2016 |
| 100,000 | 4/17/2016 |
| 18,500 | 4/20/2016 |
| 45,462.57 | 4/30/2016 |
| 75,000 | 5/2/2016 |

Page 2 of 7

ADDITIONAL COLLATERAL SCHEDULE

EXHIBIT 1

Diversified Funding, LLC

UCC Lien attachment 5 25 2016

The following collateral of Collins Asset Group, LLC secures the subsequently listed loan(s )only pursuant to the terms of the Loan Documents and originated by the Secured Party, Diversified Financing, LLC and the obligor, Collins Asset Group, LLC.

Accounts Receivable in the Books and Records of Collins Asset Group, LLC as of May 25, 2016 notated as Pool 16024.1.5 with a face value of $193,501.90 and an account total of 55.

Accounts Receivable in the Books and Records of Collins Asset Group, LLC as of May 25, 2016 notated as Pool 13104.2.5 with a face value of $11,959.70 and an account total of 2.

| Amt of Loan | Date of Loan |
|-------------|--------------|
| 3,000 | 2/10/2016 |

Accounts Receivable in the Books and Records of Collins Asset Group, LLC as of May 25, 2016 notated as Pool 16024.1.6 with a face value of $9,152,023.45 and an account total of 2,626.

Accounts Receivable in the Books and Records of Collins Asset Group, LLC as of May 25, 2016 notated as Pool 13104.2.6 with a face value of $593,255.56 and an account total of 65.

| Amt of Loan | Date of Loan |
|-------------|--------------|
| 22,000 | 4/12/2016 |
| 123,500 | 5/2/2016 |

.

Page 3 of 7

**ADDITIONAL COLLATERAL SCHEDULE**

**EXHIBIT 1**

**Diversified Funding, LLC**

**UCC Lien attachment 5 25 2016**

The following collateral of Collins Asset Group, LLC secures the subsequently listed loan(s )only pursuant to the terms of the Loan Documents and originated by the Secured Party, Diversified Financing, LLC and the obligor, Collins Asset Group, LLC.

Accounts Receivable in the Books and Records of Collins Asset Group, LLC as of May 25, 2016 notated as Pool 16024.1.7 with a face value of $6,330,440.63 and an account total of 1,803.

Accounts Receivable in the Books and Records of Collins Asset Group, LLC as of May 25, 2016 notated as Pool 13104.2.7 with a face value of $409,446.92 and an account total of 45.

| Amt of Loan | Date of Loan |
|-------------|--------------|
| 112,350.00  | 4/4/2016     |

Exhibit A- Thaxton Class Complaint 00052

**ADDITIONAL COLLATERAL SCHEDULE**

**EXHIBIT 1**

**Diversified Funding, LLC**

**UCC Lien attachment 5 25 2016**

The following collateral of Collins Asset Group, LLC secures the subsequently listed loan(s )only pursuant to the terms of the Loan Documents and originated by the Secured Party, Diversified Financing, LLC and the obligor, Collins Asset Group, LLC.

Accounts Receivable in the Books and Records of Collins Asset Group, LLC as of May 25, 2016 notated as Pool 16024.1.3 with a face value of $3,076,335.69 and an account total of 882.

Accounts Receivable in the Books and Records of Collins Asset Group, LLC as of May 25, 2016 notated as Pool 13104.2.3 with a face value of $203,224.65 and an account total of 22.

| Amt of Loan | Date of Loan |
|---|---|
| 50,000 | 2/8/2016 |

**Page 5 of 7**

Exhibit A- Thaxton Class Complaint 00053

**ADDITIONAL COLLATERAL SCHEDULE**

**EXHIBIT 1**

**Diversified Funding, LLC**

**UCC Lien attachment 5 25 2016**

The following collateral of Collins Asset Group, LLC secures the subsequently listed loan(s )only pursuant to the terms of the Loan Documents and originated by the Secured Party, Diversified Financing, LLC and the obligor, Collins Asset Group, LLC.

Accounts Receivable in the Books and Records of Collins Asset Group, LLC as of May 25, 2016 notated as Pool 16024.1.4 with a face value of $3,071,756.61 and an account total of 886.

Accounts Receivable in the Books and Records of Collins Asset Group, LLC as of May 25, 2016 notated as Pool 13104.2.4 with a face value of $202,244.32 and an account total of 22.

| Amt of Loan | Date of Loan |
| --- | --- |
| 50,200 | 4/1/2016 |

**Page 6 of 7**

Exhibit A- Thaxton Class Complaint 00054

**ADDITIONAL COLLATERAL SCHEDULE**

**EXHIBIT 1**

**Diversified Funding, LLC**

**UCC Lien attachment 5 25 2016**

The following collateral of Collins Asset Group, LLC secures the subsequently listed loan(s )only pursuant to the terms of the Loan Documents and originated by the Secured Party, Diversified Financing, LLC and the obligor, Collins Asset Group, LLC.

Accounts Receivable in the Books and Records of Collins Asset Group, LLC as of May 25, 2016 notated as Pool 16024.1.8 with a face value of $3,667,398.72 and an account total of 1,036.

Accounts Receivable in the Books and Records of Collins Asset Group, LLC as of May 25, 2016 notated as Pool 13104.2.8 with a face value of $244,688.39 and an account total of 25.

| Amt of Loan | Date of Loan |
|---|---|
| 20,000 6% | 4/20/2016 |
| 20,000 8% | 4/20/2016 |
| 20,000 10% | 4/20/2016 |

**Page 7 of 7**

# INITIAL FILING #
# 2017 2856752

Exhibit A- Thaxton Class Complaint 00056

███████████████
███████████████
███████████████
███████████████

## UCC FINANCING STATEMENT
**FOLLOW INSTRUCTIONS**

| A. NAME & PHONE OF CONTACT AT FILER (optional) |
| --- |
| (512) 865-4162 |

| B. E-MAIL CONTACT AT FILER (optional) |
| --- |
| CWATKINS@COLLINSASSETGROUP.COM |

C. SEND ACKNOWLEDGMENT TO:  (Name and Address)

```
┌                                              ┐
  COLLINS ASSET GROUP, LLC

  5725 HIGHWAY 290 WEST #103

  5725 HWY 290 WEST

  AUSTIN, TX 78735
└                                              ┘
```

**Delaware Department of State**
**U.C.C. Filing Section**
**Filed: 03:00 PM 05/01/2017**
**U.C.C. Initial Filing No: 2017 2856752**

**Service Request No:  20172948517**

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

1. **DEBTOR'S NAME:** Provide only <u>one</u> Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

OR

| 1a. ORGANIZATION'S NAME | | | |
| --- | --- | --- | --- |
| COLLINS ASSET GROUP, LLC | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| --- | --- | --- | --- | --- |
| 5725 HIGHWAY 290 WEST, #103 | AUSTIN | TX | 78735 | US |

2. **DEBTOR'S NAME** Provide only <u>one</u> Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Individual Debtor's name; if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

OR

| 2a. ORGANIZATION'S NAME | | | |
| --- | --- | --- | --- |
| | | | |
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| --- | --- | --- | --- | --- |
| | | | | |

3. **SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY)  Provide only <u>one</u> Secured Party name (3a or 3b)

OR

| 3a. ORGANIZATION'S NAME | | | |
| --- | --- | --- | --- |
| DIVERSIFIED FINANCING, LLC | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| --- | --- | --- | --- | --- |
| 2710 SW PORT SAINT LUCIE BLVD | PORT SAINT LUCIE | FL | 34953 | US |

4. **COLLATERAL:** This financing statement covers the following collateral:
SEE ATTACHED PDF FILE MARKED "EXHIBIT A" AND INCORPORATED HEREIN BY REFERENCE AS IF FULLY REWRITTEN.
Collateral Description - please see attached

| 5. Check <u>only</u> if applicable and check <u>only</u> one box: Collateral is  ☐ held in a Trust (see UCC1Ad, item 17 and instructions) | | ☐ being administered by a Decedent's Personal Representative | |
| --- | --- | --- | --- |
| 6a. Check <u>only</u> if applicable and check <u>only</u> one box | | 6b. Check <u>only</u> if applicable and check <u>only</u> one box: | |
| ☐ Public-Finance Transaction   ☐ Manufactured-Home Transaction   ☐ A Debtor is a Transmitting Utility | | ☐ Agricultural Lien   ☐ Non-UCC Filing | |
| 7. ALTERNATIVE DESIGNATION (if applicable):   ☐ Lessee/Lessor   ☐ Consignee/Consignor   ☐ Seller/Buyer   ☐ Bailee/Bailor   ☐ Licensee/Licensor | | | |
| 8. OPTIONAL FILER REFERENCE DATA: | | | |

**International Association of Commercial Administrators**

**FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)**

**EXHIBIT A UCC-1**
**Diversified Financing, LLC 5/1/2017**

Notes Receivable identified in the books and records of Collins Asset Group, LLC on April 30, 2017
payable to Collins Asset Group, LLC from 1 Global Capital LLC as follows:

| # of Note | Date of Note | Principal ($) of Note | Percent of Principal |
|---|---|---|---|
| 10 | 8/15/16 | 596,001.97 | 4.11% |
| 12 | 9/22/16 | 112,950.00 | 42.50% |
| 13 | 10/26/16 | 80,073.13 | 97.92% |
| 15 | 11/7/16 | 151,832.54 | 20.03% |
| 16 | 11/15/16 | 223,825.89 | 17.16% |
| 17 | 11/18/16 | 48,000.00 | 100.00% |
| 19 | 12/14/16 | 73,183.50 | 71.15% |
| 22 | 1/13/17 | 96,000.00 | 100.00% |
| 23 | 1/18/17 | 24,000.00 | 100.00% |
| 25 | 2/1/17 | 67,200.00 | 100.00% |
| 27 | 3/10/17 | 201,653.50 | 100.00% |
| 28 | 3/10/17 | 75,905.99 | 100.00% |
| 29 | 3/10/17 | 142,560.00 | 100.00% |
| 30 | 3/10/17 | 44,737.50 | 100.00% |
| 31 | 3/23/17 | 118,800.00 | 100.00% |
| 32 | 3/23/17 | 28,512.00 | 100.00% |
| 33 | 4/3/17 | 30,127.68 | 100.00% |
| 35 | 4/7/17 | 89,967.50 | 100.00% |
| 36 | 4/12/17 | 83,635.20 | 100.00% |
| 37 | 4/18/17 | 90,431.00 | 100.00% |
| 38 | 4/18/17 | 447,228.50 | 100.00% |
| 39 | 4/18/17 | 79,845.50 | 100.00% |

Page 1 of 2

**EXHIBIT A UCC-1**
**Diversified Financing, LLC 5/1/2017**

| 40 | 4/21/17 | 23,700.00 | 100.00% |
|---|---|---|---|

**Page 2 of 2**

Exhibit A- Thaxton Class Complaint 00059

# INITIAL FILING #
# 2017 6966102

Exhibit A- Thaxton Class Complaint 00060

# UCC FINANCING STATEMENT
**FOLLOW INSTRUCTIONS**

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
(512) 865-4162

**B. E-MAIL CONTACT AT FILER (optional)**
CHATKINS@COLLINSASSETGROUP.COM

**C. SEND ACKNOWLEDGMENT TO: (Name and Address)**

COLLINS ASSET GROUP, LLC

5725 HIGHWAY 290 WEST #103

5725 HWY 290 WEST

AUSTIN, TX 78735

**Delaware Department of State**
**U.C.C. Filing Section**
**Filed: 12:22 PM 10/19/2017**
**U.C.C. Initial Filing No: 2017 6966102**

**Service Request No:   20176693825**

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

**1. DEBTOR'S NAME** Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| | | | |
|---|---|---|---|
| **1a. ORGANIZATION'S NAME** COLLINS ASSET GROUP, LLC | | | |
| **1b. INDIVIDUAL'S SURNAME** | **FIRST PERSONAL NAME** | **ADDITIONAL NAME(S)/INITIAL(S)** | **SUFFIX** |
| **1c. MAILING ADDRESS** 5725 HIGHWAY 290 WEST, #103 | **CITY** AUSTIN | **STATE** TX | **POSTAL CODE** 78735 | **COUNTRY** US |

**2. DEBTOR'S NAME** Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| | | | |
|---|---|---|---|
| **2a. ORGANIZATION'S NAME** | | | |
| **2b. INDIVIDUAL'S SURNAME** | **FIRST PERSONAL NAME** | **ADDITIONAL NAME(S)/INITIAL(S)** | **SUFFIX** |
| **2c. MAILING ADDRESS** | **CITY** | **STATE** | **POSTAL CODE** | **COUNTRY** |

**3. SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY)  Provide only one Secured Party name (3a or 3b)

| | | | |
|---|---|---|---|
| **3a. ORGANIZATION'S NAME** DIVERSIFIED FINANCING, LLC | | | |
| **3b. INDIVIDUAL'S SURNAME** | **FIRST PERSONAL NAME** | **ADDITIONAL NAME(S)/INITIAL(S)** | **SUFFIX** |
| **3c. MAILING ADDRESS** 1100 SW SAINT LUCIE WEST BLVD, #103 | **CITY** PORT ST. LUCIE | **STATE** FL | **POSTAL CODE** 34986 | **COUNTRY** US |

**4. COLLATERAL:** This financing statement covers the following collateral:
see attached file marked "Exhibit A" incorporated herein by reference as if fully rewritten
Collateral Description - please see attached

**5.** Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative
**6a.** Check only if applicable and check only one box ☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility
**6b.** Check only if applicable and check only one box: ☐ Agricultural Lien ☐ Non-UCC Filing
**7.** ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor
**8. OPTIONAL FILER REFERENCE DATA:**

International Association of Commercial Administrators
Exhibit A- Thaxton Class Complaint 00061

**EXHIBIT A UCC-1**
**Diversified Financing, LLC  8/30/2017**

Notes Receivable identified in the books and records of Collins Asset Group, LLC on August 30, 2017 payable to Collins Asset Group, LLC from 1 Global Capital LLC as follows:

| # of Note | Date of Note | Principal ($) of Note | Percent of Principal |
|-----------|--------------|----------------------|----------------------|
| 43 | 8/15/16 | 514,773.75 | 4.4% |
| 44 | 9/22/16 | 19,000 | 100.0% |
| 45 | 10/26/16 | 105,909.37 | 100.00 |
| 49 | 11/7/16 | 70,077.50 | 100.0% |
| 51 | 11/15/16 | 156,400.00 | 100.0% |
| 54 | 11/18/16 | 40,945.00 | 56.2% |
| 57 | 12/14/16 | 92,000.00 | 100.0% |

Exhibit A- Thaxton Class Complaint 00062

# INITIAL FILING #
# 2018 3517519

Exhibit A- Thaxton Class Complaint 00063

# UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
(512) 865-4162

**B. E-MAIL CONTACT AT FILER (optional)**
CHATKINS@COLLINSASSETGROUP.COM

**C. SEND ACKNOWLEDGMENT TO:  (Name and Address)**

COLLINS ASSET GROUP, LLC
5725 HIGHWAY 290 WEST #103
5725 HWY 290 WEST
AUSTIN, TX 78735

Delaware Department of State
U.C.C. Filing Section
Filed: 05:58 PM 05/23/2018
U.C.C. Initial Filing No: 2018 3517519

Service Request No:   20184252120

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

**1. DEBTOR'S NAME:** Provide only <u>one</u> Debtor name (1a or 1b) (use exact, full name, do not omit, modify, or abbreviate any part of the Debtor's name), if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| COLLINS ASSET GROUP, LLC | | | |
| **OR** 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 5725 HIGHWAY 290 WEST, #103 | AUSTIN | TX | 78735 | US |

**2. DEBTOR'S NAME** Provide only <u>one</u> Debtor name (2a or 2b) (use exact, full name, do not omit, modify, or abbreviate any part of the Debtor's name), if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| | | | |
| **OR** 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| | | | | |

**3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY)**  Provide only <u>one</u> Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| DIVERSIFIED FINANCING, LLC | | | |
| **OR** 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 1100 SW SAINT LUCIE WEST BLVD, #103 | PORT ST. LUCIE | FL | 34986 | US |

**4. COLLATERAL:** This financing statement covers the following collateral:
see attached pdf file incorporated herein as if fully rewritten
Collateral Description - please see attached

**5.** Check <u>only</u> if applicable and check <u>only</u> one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and instructions) ☐ being administered by a Decedent's Personal Representative

**6a.** Check <u>only</u> if applicable and check <u>only</u> one box
☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

**6b.** Check <u>only</u> if applicable and check <u>only</u> one box
☐ Agricultural Lien ☐ Non-UCC Filing

**7.** ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

**8. OPTIONAL FILER REFERENCE DATA:**

**FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)**

International Association of Commercial Administrators

Exhibit A- Thaxton Class Complaint 00064

Exhibit A
Diversified Financing, LLC UCC Lien
May 23, 2018

The following additional collateral of Collins Asset Group, LLC ("CAG") secures the loan(s)made pursuant to Loan Documents between CAG, as obligor and Diversified Financing, LLC, as the secured party.

Accounts Receivable in the Books and Records of Collins Asset Group, LLC as of May 23, 2018 notated as follows

| Company Name | Fund Name | UCC_Pool & Portfolio Name | Accounts | Balance | |
|---|---|---|---|---|---|
| Diversified | Trust 10% 4 year | 18009.1.9 | 28 | $ 1,977,641.64 | |
| Diversified | Trust 8% | 18009.1.8 | 75 | $ 5,158.879.31 | |
| Diversified | Trust 10% 4 year | 18007.19 | 369 | 4,108,820.07 | |
| Diversified | Trust 8% | 18007.1.8 | 984 | $10,923,458.01 | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

Page 1 of 1

Exhibit A- Thaxton Class Complaint 00065

# INITIAL FILING #
# 2018 4762494

Exhibit A- Thaxton Class Complaint 00066

████████████

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

| A. NAME & PHONE OF CONTACT AT FILER (optional) |
|---|
| (512) 865-4162 |

| B. E-MAIL CONTACT AT FILER (optional) |
|---|
| CWATKINS@COLLINSASSETGROUP.COM |

C. SEND ACKNOWLEDGMENT TO:  (Name and Address)

COLLINS ASSET GROUP, LLC

5725 HIGHWAY 290 WEST #103

5725 HWY 290 WEST

AUSTIN, TX 78735

**Delaware Department of State**
**U.C.C. Filing Section**
Filed: 05:44 PM 07/11/2018
**U.C.C. Initial Filing No: 2018 4762494**

**Service Request No:  20185618132**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. **DEBTOR'S NAME:** Provide only one Debtor name (1a or 1b) (use exact, full name, do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| OR | 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| | COLLINS ASSET GROUP, LLC | | | |
| | 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 5725 HIGHWAY 290 WEST, #103 | AUSTIN | TX | 78735 | US |

2. **DEBTOR'S NAME**:  Provide only one Debtor name (2a or 2b) (use exact, full name, do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| OR | 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| | | | | |
| | 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

3. **SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY)  Provide only one Secured Party name (3a or 3b)

| OR | 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| | DIVERSIFIED FINANCING, LLC | | | |
| | 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 2710 SW PORT SAINT LUCIE BLVD, PORT SAINT LUCIE | PORT SAINT LUCIE | FL | 34953 | US |

4. **COLLATERAL:** This financing statement covers the following collateral:
ACCOUNTS RECEIVABLE IDENTIFIED IN THE BOOKS AND RECORDS ON MAY 31, 2013 OF THE DEBTOR, COLLINS ASSET GROUP, LLC AS CAG PKG CODE 13012, PORTFOLIO 13079, WITH A TOTAL NUMBER OF VOLUME OF SAID PORTFOLIO 13079 ACCOUNTS BEING 324,127 WITH A FACE VALUE OF FIVE HUNDRED FIFTY SEVEN MILLION THREE HUNDRED TEN THOUSAND SEVEN HUNDRED FIFTY NINE DOLLARS AND EIGHTY ONE CENTS (557,310,759.81)

| 5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and instructions) | being administered by a Decedent's Personal Representative |
|---|---|

| 6a. Check only if applicable and check only one box. | | 6b. Check only if applicable and check only one box: |
|---|---|---|
| ☐ Public-Finance Transaction | ☐ Manufactured-Home Transaction | ☐ A Debtor is a Transmitting Utility | ☐ Agricultural Lien | ☐ Non-UCC Filing |

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor  ☐ Consignee/Consignor  ☐ Seller/Buyer  ☐ Bailee/Bailor  ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:

**International Association of Commercial Administrators**

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

Exhibit A- Thaxton Class Complaint 00067

# INITIAL FILING # 2019 2107600

Exhibit A- Thaxton Class Complaint 00068

# UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

| A. NAME & PHONE OF CONTACT AT FILER (optional) |
| --- |
| (512) 865-4162 |

| B. E-MAIL CONTACT AT FILER (optional) |
| --- |
| CWATKINS@COLLINSASSETGROUP.COM |

C. SEND ACKNOWLEDGMENT TO:  (Name and Address)

```
COLLINS ASSET GROUP, LLC
5725 HIGHWAY 290 WEST #103
5725 HWY 290 WEST
AUSTIN, TX 78735
```

**Delaware Department of State**
**U.C.C. Filing Section**
**Filed: 11:34 AM 03/27/2019**
**U.C.C. Initial Filing No: 2019 2107600**

**Service Request No:  20192311567**

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

1. **DEBTOR'S NAME:** Provide only one Debtor name (1a or 1b) (use exact, full name, do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | |
| --- | --- | --- | --- |
| COLLINS ASSET GROUP, LLC | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | |
| 1c. MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |
| 5725 HIGHWAY 290 WEST, #103 | AUSTIN | TX / 78735 | US |

2. **DEBTOR'S NAME:** Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
| --- | --- | --- | --- |
| | | | |
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | |
| 2c. MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |
| | | | |

3. **SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY)  Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
| --- | --- | --- | --- |
| DIVERSIFIED FINANCING, LLC | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | |
| 3c. MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |
| 2710 SW PORT SAINT LUCIE BLVD, PORT SAINT LUCIE | PORT SAINT LUCIE | FL / 34953 | US |

4. **COLLATERAL:** This financing statement covers the following collateral:
**See attached Exhibit A and incorporated herein by reference.**
**Collateral Description - please see attached**

| 5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) | ☐ being administered by a Decedent's Personal Representative | |
| --- | --- | --- |
| 6a. Check only if applicable and check only one box: | | 6b. Check only if applicable and check only one box: |
| ☐ Public-Finance Transaction   ☐ Manufactured-Home Transaction   ☐ A Debtor is a Transmitting Utility | | ☐ Agricultural Lien   ☐ Non-UCC Filing |
| 7. ALTERNATIVE DESIGNATION (if applicable)   ☐ Lessee/Lessor   ☐ Consignee/Consignor   ☐ Seller/Buyer   ☐ Bailee/Bailor   ☐ Licensee/Licensor | | |

8. OPTIONAL FILER REFERENCE DATA:

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

International Association of Commercial Administrators
Exhibit A- Thaxton Class Complaint 00069

Accounts Receivable Identified in the Books and Records of Collins Asset Group, LLC on December 31, 2013 as follows:

| Package Code | Portfolio No. | Face Value | Number of Accounts |
|---|---|---|---|
| 540 | 13142 | $ 2,335,875.49 | 38 |
| 543 | 13145 | $ 661,262.09 | 3 |
| 548 | 13150 | $ 2,328,977.97 | 45 |
| 551 | 13153 | $ 4,684,809.82 | 73 |
| 554 | 13156 | $ 26,905,257.26 | 1515 |
| 557 | 13159 | $ 11,013,009.87 | 244 |
| 562 | 13164 | $ 1,235,716.79 | 20 |
| 565 | 13167 | $ 7,389,682.08 | 431 |
| 568 | 13170 | $ 16,943,642.34 | 591 |
| 571 | 13173 | $ 18,781,601.35 | 484 |
| 574 | 13176 | $ 34,442,561.28 | 243 |
| 576 | 13178 | 4,707,148.94 | 646 |
| _ Totals . | | $ 131, 429, 545. 28 | 4333 |

Additional collateral of Four Hundred Twenty Three Thousand Seven Hundred

Thirty Seven Dollars and sixty nine cents ($423,737.69) in cash deposited by

Secured Party (subject to use for Approved Purposes pursuant to Loan Documents)

in CAG Trust Account at Wells Fargo Bank, NA, Austin, TX Account Number

6301388895 Wire Routing Number 121000248.

# Exhibit B

 Gmail

Steve Thaxton <steve.thax@gmail.com>

---

## Collins Asset Group Update
3 messages

---

**Service Service** <service@exclusivebizsolutions.com>     Thu, Jun 28, 2018 at 12:51 PM
To: Service Service <service@exclusivebizsolutions.com>
Cc: Mark Miller <mmiller@exclusivebizsolutions.com>

June 28, 2018

RE: Disposition of Collins Asset Group portfolios

As previously stated in emails, letters and verbal communication with many clients, I want to provide some updates on the Collins Asset Group situation regarding Diversified Financing. Please know we have been in continual contact with Collins as to the disposition of assets in the portfolios and if and when they are expecting to resume distributions.

As discussed with many clients, due to the ongoing situation with Diversified Financing, Collins has put on hold the distributions until such time they are instructed by their attorneys to release assets.

Collins continues to uphold their end by collecting on portfolio assets and feel they are very much on schedule, collecting what they should be on all portfolio assets. To that end, they continue to put distributions into escrow and of course they will make those available as soon as they are able to resolve the issue. We have been given no date as to when this may occur. It is our opinion, to be speculative and conservative, we may in fact have to wait until sometime near or around portfolio maturity dates to expect the majority return of our principal and also portfolio returns. This is not far off what has been expected from the beginning of these portfolios as the largest chunk of principal and returns is to come toward the maturity dates, anyway.

We would not expect this development to change your custodian IRA Trust Services positions with Collins Asset Group. You may refer to your most recent statements from your independent custodian provider. For the latest valuations, you may refer back to the most recent portfolio asset valuation reports provided by Collins. You received those in two separate quarters, both quarter 3 of 2016 and quarter 1 of 2017.

We will keep you informed as we get more information relating to the portfolios.

Sincerely,

Mark Miller

# Exhibit C

15% TARGETED SECURED PROMISORY NOTE                    DIVERSIFIED
                                                        F I N A N C I N G

# PROMISSORY NOTE

Port St. Lucie County, Florida

Principal Sum: $ 52,000°°                 Effective Date: 4/2/15

FOR VALUE RECEIVED, the undersigned, Diversified Financing, LLC, a Florida limited liability company, whose address is 2710 SW Port Saint Lucie Blvd, Port St. Lucie, Florida 34953 (the "Maker"), hereby promises to pay to the order of Patricia Thaxton IRA a client of Summit Trust Company, a Nevada trust company, whose address is 8861 West Sahara Ave. Suite 215, Las Vegas, Nevada 89117 (the "Payee"), the Principal Sum ("Principal Sum"), as provided in this promissory note (this "Note"). This Note is executed and delivered by Maker pursuant to certain Loan Agreement (the "Loan Agreement") between Maker and Collins Asset Group, LLC, a Delaware limited liability company, whose address is 5725 Highway 290 West #103, Suite 103, Austin, Texas, 78735 (the "Master Servicer"), and any capitalized terms used herein that are not otherwise defined herein shall have the meaning given such terms in the Loan Agreement (Payee and Maker together herein, the "Parties").

    1. Interest.   The outstanding average daily principal balance of this Note shall bear simple interest, beginning on the date hereof, payable quarterly, at the rate per annum which is the lesser of (i) the Highest Lawful Rate (as defined below) or (ii) 1.00%. In addition to the foregoing interest, Payee also has the right to participate in the income and revenues derived from the Collateral to the extent provided in Section 2(c) below; provided, however, that this contractual right of participation ("Payee's Right of Participation") depends entirely on the success of collection ("Collection Efforts") and sales efforts of the Master Servicer with respect to the Collateral and does not constitute interest pursuant to Section 306.10l(b)(4) and Section 306.10l(c) of the Texas Finance Code.

    2.    Payments.

    (a)    Maturity Date.   All unpaid principal, interest, and other amounts, other than any amounts due pursuant to Payee's Right of Participation, owing under this Note shall be due and payable in full on the date that is five (5) years from the Effective Date (the "Effective Date") of this Note (the "Maturity Date") and the Parties understand and agree that the Collateral for this Note shall be sold prior to the Maturity Date unless the Parties otherwise mutually agree in writing.

    (b)    Voluntary Prepayments. Maker, at its election, may prepay the Principal Sum of this Note, in whole or in part, at any time and from time to time prior to the Maturity Date without penalty or premium; provided, that all accrued and unpaid interest on the principal balance of this Note, plus all other amounts, if any, owing under this Note, shall be paid at the

COPY

time of any prepayment of principal (the "Voluntary Prepayment"). In the event no Voluntary Prepayment is made by Maker, all accrued interest due to Payee pursuant to Section 1 of this Note shall be paid to Payee by Maker.

(c)     Mandatory Payments.  Maker shall make the following mandatory payments to Payee, which payments will first be applied to pay any outstanding principal amounts and other amounts, other than any amounts due to Payee's Right of Participation, owing under this Note, and second will be paid over to Payee as a contractual Payee's Right of Participation that depends entirely on the success of the Master Servicers Collection Efforts and sales efforts with respect to the Collateral and does not constitute interest pursuant to Section 306.101(b)(4) and Section 306.101(c) of the Texas Finance Code.

(d)     Place and Method of Payment.  All payments by the Maker shall be made to the Payee by deposit of such payments in a demand deposit account as from time to time Payee shall designate to Maker.

3.     Default; Remedies.  Upon the occurrence and during the continuance of (a) a default in the Maker's obligations under this note, which default has not been cured within sixty (60) days following written notice of such default from Payee to the Maker, or (b) an Event of Default shall occur under the Loan Agreement, but after the passage of any cure period provided in any such Loan Agreement (each, an "Event of Default"), the Payee may declare the entire unpaid principal of and unpaid interest on this Note immediately due and payable, without notice, demand, or presentment, all of which are hereby waived, foreclose any liens or security interests securing all or any part hereof, offset against this Note any sum or sums owed by the Payee to the Maker, or exercise any other right or remedy to which the Payee may be entitled by agreement, at law, or in equity.  All of the Rights of the holder hereof provided for in this Note are cumulative of each other and of any and all other Rights at law or in equity.

4.     Costs of Collection.  If this Note is placed in the hands of an attorney for collection, or if it is collected through any legal proceedings, the Maker agrees to pay court costs, reasonable attorneys' fees, and other reasonable costs of collection of the Payee.

5.     Maximum Interest Rate.  Regardless of any provision contained herein, the Payee shall never be entitled to contract for, charge, take, reserve, receive, or apply, as interest on this Note, any amount in excess of the Highest Lawful Rate. If the Payee ever contracts for, charges, takes, reserves, receives, or applies as interest any such excess, it shall be deemed a partial prepayment of principal and treated hereunder as such; and, if the principal hereof is paid in full, any remaining excess shall promptly be paid to the Maker.  In determining whether interest paid or payable exceeds the Highest Lawful Rate, the Maker and the Payee shall, to the maximum extent permitted under applicable law, (a) treat any Term Loan Proceeds as but a single extension of credit, (b) characterize any non- principal payment as an expense, fee, or premium rather than as interest, (c) exclude voluntary prepayments and the effects thereof, and (d)

"spread" the total amount of interest throughout the entire contemplated term hereof; provided that, if the principal hereof is paid in full prior to the end of the full contemplated term hereof, and if the interest received for the actual period of existence exceeds the Highest Lawful Rate, the Payee shall refund the excess, and, in such event, the Payee shall not be subject to any penalties provided by any laws for contracting for, charging, taking, reserving, or receiving interest in excess of the Highest Lawful Rate. As used herein, the term "Highest Lawful Rate" means the maximum rate of interest from time to time permitted under federal or state laws now or hereafter applicable to this Note, including as to Article 5069-1.04, Vernon's Texas Civil Statutes (the "Act"), that rate based upon the "indicated rate ceiling" from time to time in effect as such rate is limited by the Act, in any case after taking into account, to the extent required by applicable law, any and all relevant payments, charges, and calculations.

6.   Certain Waivers. The Maker and each surety, endorser, guarantor, and other party ever liable for payment of any part hereof jointly and severally waive presentment and demand for payment, protest, notice of intention to accelerate, notice of acceleration, and notice of protest and nonpayment, and agree that their liability on this Note shall not be affected by, and hereby consent to, any renewal or extension in the time of payment hereof, any indulgences, or any release or change in any security for the payment of this Note.

7.   ENTIRETY; GOVERNING LAW.   THIS NOTE AND THE OTHER LOAN DOCUMENTS REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS BY THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.  THE VALIDITY, CONSTRUCTION, AND ENFORCEABILITY OF THIS NOTE SHALL BE GOVERNED BY THE LAWS OF THE STATE OF FLORIDA AND THE UNITED STATES OF AMERICA

8.   Parties Bound.  This Note is binding upon and shall inure to the benefit of the Maker, the Payee, and their respective successors and assigns.  The Payee, upon prior written notice to the Maker, shall be entitled to assign its rights and duties hereunder to any subsequent holder of this Note who shall for all purposes hereof thereafter be the "Payee" hereunder the same as if originally named as the "Payee" herein.

9.   Certain Provisions Regarding Payments.  Whenever any payment shall be due under this Note on a day which is not a Business Day, the date on which such payment is due shall be extended to the next succeeding Business Day. "Business Day" means a day other than a Saturday, Sunday or other day on which national banks in Austin, Texas are authorized or required to be closed.   Acceptance by the holder hereof of any payment in an amount less than the amount then due on any indebtedness shall be deemed an acceptance on account only and shall not in any way excuse the existence of a Default.

15% TARGETED SECURED PROMISORY NOTE

DIVERSIFIED
FINANCING

10.    Security (the "Collateral", the "Security"). Payment hereof is secured by UCC liens obtained by the Master Servicer during their Collection Efforts.

11.    Nonrecourse Note.  The indebtedness under this Note shall be satisfied and enforced only against the Collateral, and no recourse of any kind shall be had against Maker or its Affiliates, or against the Master Servicer or any other assets of Maker or its Affiliates, with respect to the amounts owing under this Note, including, without limitation, for money damages of any kind whatsoever or for any deficiency following any sale or other disposition of the Collateral.  Payee will look solely to the Collateral for payment of this Note, and Maker shall have no personal liability for the payment of this Note.

EXECUTED to be effective as of the date set forth above.

MAKER: DIVERSIFIED FINANCING, LLC

BY: _____

Name: Daryl Bank

Title: Managing Member and authorized Signatory for Diversified Financing, LLC.

# Exhibit D

15% TARGETED SECURED PROMISORY NOTE                    DIVERSIFIED
                                                       F I N A N C I N G

# PROMISSORY NOTE

### Port St. Lucie County, Florida

COPY

Principal Sum: $ 55,000 ⁰⁰          Effective Date: 4/2/15

FOR VALUE RECEIVED, the undersigned, Diversified Financing, LLC, a Florida limited liability company, whose address is 2710 SW Port Saint Lucie Blvd, Port St. Lucie, Florida 34953 (the "Maker"), hereby promises to pay to the order of Patricia L Thaxton Roth IRA a client of Summit Trust Company,  a Nevada trust company, whose address is 8861 West Sahara Ave. Suite 215, Las Vegas, Nevada 89117 (the "Payee"), the Principal Sum ("Principal Sum"), as provided in this promissory note (this "Note").  This Note is executed and delivered by Maker pursuant to certain Loan Agreement (the "Loan Agreement") between Maker and Collins Asset Group, LLC, a Delaware limited liability company, whose address is 5725 Highway 290 West #103, Suite 103, Austin, Texas, 78735 (the "Master Servicer"), and any capitalized terms used herein that are not otherwise defined herein shall have the meaning given such terms in the Loan Agreement (Payee and Maker together herein, the "Parties").

1. Interest.   The outstanding average daily principal balance  of  this  Note shall bear simple interest, beginning on the date hereof, payable quarterly, at the rate per annum which is the lesser of (i) the Highest Lawful Rate (as defined below) or (ii) 1.00%. In addition to the foregoing interest, Payee also has the right to participate in the income and revenues derived from the Collateral to the extent provided in Section 2(c) below; provided, however, that this contractual right of participation ("Payee's Right of Participation") depends entirely on the success of collection ("Collection Efforts") and sales efforts of the Master Servicer with respect to the Collateral and does not constitute interest pursuant to Section  306.101(b)(4)  and Section 306.101(c) of the Texas Finance Code.

2.    Payments.

(a)     Maturity Date.  All unpaid principal, interest, and other amounts, other than any amounts due pursuant to Payee's Right of Participation, owing under this Note shall be due and payable in full on the date that is five (5) years from the Effective Date (the "Effective Date") of this Note (the "Maturity Date") and the Parties understand and agree that the Collateral for this Note shall be sold prior to the Maturity Date unless the Parties otherwise mutually agree in writing.

(b)     Voluntary Prepayments. Maker, at its election, may prepay the Principal Sum of this Note, in whole or in part, at any time and from time to time prior to the Maturity Date without penalty or premium; provided, that all accrued and unpaid interest on the principal balance of this Note, plus all other amounts, if any, owing under this Note, shall be paid at the

1 | Page

**DIVERSIFIED**
**F I N A N C I N G**

time of any prepayment of principal (the "Voluntary Prepayment"). In the event no Voluntary Prepayment is made by Maker, all accrued interest due to Payee pursuant to Section 1 of this Note shall be paid to Payee by Maker.

(c)    Mandatory Payments.  Maker shall make the following mandatory payments to Payee, which payments will first be applied to pay any outstanding principal amounts and other amounts, other than any amounts due to Payee's Right of Participation, owing under this Note, and second will be paid over to Payee as a contractual Payee's Right of Participation that depends entirely on the success of the Master Servicers Collection Efforts and sales efforts with respect to the Collateral and does not constitute interest pursuant to Section 306.10l(b)(4) and Section 306.10l(c) of the Texas Finance Code.

(d)    Place and Method of Payment.  All payments by the Maker shall be made to the Payee by deposit of such payments in a demand deposit account as from time to time Payee shall designate to Maker.

3.    Default; Remedies.  Upon the occurrence and during the continuance of (a) a default in the Maker's obligations under this note, which default has not been cured within sixty (60) days following written notice of such default from Payee to the Maker, or (b) an Event of Default shall occur under the Loan Agreement, but after the passage of any cure period provided in any such Loan Agreement (each, an "Event of Default"), the Payee may declare the entire unpaid principal of and unpaid interest on this Note immediately due and payable, without notice, demand, or presentment, all of which are hereby waived, foreclose any liens or security interests securing all or any part hereof, offset against this Note any sum or sums owed by the Payee to the Maker, or exercise any other right or remedy to which the Payee may be entitled by agreement, at law, or in equity.  All of the Rights of the holder hereof provided for in this Note are cumulative of each other and of any and all other Rights at law or in equity.

4.    Costs of Collection.  If this Note is placed in the hands of an attorney for collection, or if it is collected through any legal proceedings, the Maker agrees to pay court costs, reasonable attorneys' fees, and other reasonable costs of collection of the Payee.

5.    Maximum Interest Rate.  Regardless of any provision contained herein, the Payee shall never be entitled to contract for, charge, take, reserve, receive, or apply, as interest on this Note, any amount in excess of the Highest Lawful Rate. If the Payee ever contracts for, charges, takes, reserves, receives, or applies as interest any such excess, it shall be deemed a partial prepayment of principal and treated hereunder as such; and, if the principal hereof is paid in full, any remaining excess shall promptly be paid to the Maker. In determining whether interest paid or payable exceeds the Highest Lawful Rate, the Maker and the Payee shall, to the maximum extent permitted under applicable law, (a) treat any Term Loan Proceeds as but a single extension of credit, (b)  characterize any non- principal payment as an expense, fee, or premium rather than as interest, (c) exclude voluntary prepayments and the effects thereof, and (d)

15% TARGETED SECURED PROMISORY NOTE

DIVERSIFIED
FINANCING

"spread" the total amount of interest throughout the entire contemplated term hereof; provided that, if the principal hereof is paid in full prior to the end of the full contemplated term hereof, and if the interest received for the actual period of existence exceeds the Highest Lawful Rate, the Payee shall refund the excess, and, in such event, the Payee shall not be subject to any penalties provided by any laws for contracting for, charging, taking, reserving, or receiving interest in excess of the Highest Lawful Rate.  As used herein, the term "Highest Lawful Rate" means the maximum rate of interest from time to time permitted under federal or state laws now or hereafter applicable to this Note, including as to Article 5069-1.04, Vernon's Texas Civil Statutes (the "Act"), that rate based upon the "indicated rate ceiling" from time to time in effect as such rate is limited by the Act, in any case after taking into account, to the extent required by applicable law, any and all relevant payments, charges, and calculations.

6.  Certain Waivers. The Maker and each surety, endorser, guarantor, and other party ever liable for payment of any part hereof jointly and severally waive presentment and demand for payment, protest, notice of intention to accelerate, notice of acceleration, and notice of protest and nonpayment, and agree that their liability on this Note shall not be affected by, and hereby consent to, any renewal or extension in the time of payment hereof, any indulgences, or any release or change in any security for the payment of this Note.

7.  ENTIRETY; GOVERNING LAW.  THIS NOTE AND THE OTHER LOAN DOCUMENTS REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS BY THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.  THE VALIDITY, CONSTRUCTION, AND ENFORCEABILITY OF THIS NOTE SHALL BE GOVERNED BY THE LAWS OF THE STATE OF FLORIDA AND THE UNITED STATES OF AMERICA

8.  Parties Bound.  This Note is binding upon and shall inure to the benefit of the Maker, the Payee, and their respective successors and assigns.  The Payee, upon prior written notice to the Maker, shall be entitled to assign its rights and duties hereunder to any subsequent holder of this Note who shall for all purposes hereof thereafter be the "Payee" hereunder the same as if originally named as the "Payee" herein.

9.  Certain Provisions Regarding Payments.  Whenever any payment shall be due under this Note on a day which is not a Business Day, the date on which such payment is due shall be extended to the next succeeding Business Day. "Business Day" means a day other than a Saturday, Sunday or other day on which national banks in Austin, Texas are authorized or required to be closed.   Acceptance by the holder hereof of any payment in an amount less than the amount then due on any indebtedness shall be deemed an acceptance on account only and shall not in any way excuse the existence of a Default.

15% TARGETED SECURED PROMISORY NOTE

**DIVERSIFIED**
**FINANCING**

10.    Security (the "Collateral", the "Security"). Payment hereof is secured by UCC liens obtained by the Master Servicer during their Collection Efforts.

11.    Nonrecourse Note.   The indebtedness under this Note shall be satisfied and enforced only against the Collateral, and no recourse of any kind shall be had against Maker or its Affiliates, or against the Master Servicer or any other assets of Maker or its Affiliates, with respect to the amounts owing under this Note, including, without limitation, for money damages of any kind whatsoever or for any deficiency following any sale or other disposition of the Collateral.  Payee will look solely to the Collateral for payment of this Note, and Maker shall have no personal liability for the payment of this Note.

EXECUTED to be effective as of the date set forth above.

MAKER: DIVERSIFIED FINANCING, LLC

BY: _____

Name: Daryl Bank

Title: Managing Member and authorized Signatory for Diversified Financing, LLC.