## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

STEPHEN THAXTON and PATRICIA
THAXTON, individually and on behalf of
all others similarly situated,

Plaintiffs,

v.

COLLINS ASSET GROUP, LLC,
COLLINS & HILTON ASSET
GROUP, LLC, DIVERSIFIED
FINANCING, LLC, MARK W. MILLER,
ALT MONEY INVESTMENTS, LLC,
ALT MONEY INVESTMENTS II, LLC,
ALT MONEY INVESTMENTS III, LLC,
ALT MONEY INVESTMENTS IV, LLC,
and SONOQUI, LLC,

Defendants.

Case No.: 1:20-CV-00941-ELR

**CLASS ACTION**

**PLAINTIFFS' AMENDED MOTION FOR (I) PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT, (II) CERTIFICATION OF THE CLASS FOR SETTLEMENT PURPOSES, (III) APPROVAL OF NOTICE TO THE CLASS, AND (IV) SCHEDULING OF A FAIRNESS HEARING, WITH INCORPORATED MEMORANDUM OF LAW**

Plaintiffs Stephen Thaxton and Patricia Thaxton, individually and on behalf of all other similarly situated ("Plaintiffs") move without opposition for: (i) preliminary approval of the Settlement of this Action against Defendants Collins

Asset Group, LLC and Collins & Hilton Asset Group, LLC (collectively "Collins Defendants" or "CAG"); (ii) certification of the Settlement Class; (iii) approval of the form and manner of the Settlement Notice; and (iv) the scheduling of a Fairness Hearing on final approval of the Settlement and Class Counsel's forthcoming motion for an award of Attorneys' Fees and Expenses.[1]

## I.    INTRODUCTION

Plaintiffs have negotiated a settlement that will recover nearly $16 million out of approximately $23 million ultimately lent to Collins Asset Group, LLC in a scam that used unregistered salespersons and now-defunct shell companies to trick investors into investing money in exchange for promissory notes.  The scheme fell apart in 2017 when the shell companies' principals were indicted.

The victims may have viewed the situation as hopeless and questioned whether they would ever receive a dime back from the scheme.  But Plaintiffs did not give up.  In mid-2019, they brought the situation to the attention of Class Counsel.  Over the rest of that year, Class Counsel dug deeply into the background

---

[1]    Plaintiffs file this amended motion to clarify some of the statements made in the original unopposed motion and to correct a couple of non-substantive typographical errors that were discovered after the original motion was filed. All exhibits to the original motion remain unchanged and will not be re-filed. In addition, the Collins Defendants want to make clear that their non-opposition to this motion does not constitute any admission related to any factual allegations in the amended complaint or any characterization of facts related to the dispute made by Plaintiffs in this motion.

of the scam, eventually concluding that Plaintiffs possessed valid claims against solvent third parties.  Plaintiffs filed this lawsuit and — within the course of a year and despite jurisdictional wrangling that extended into the Southern District of New York — achieved a settlement on behalf of all investors that recovers a significant amount back from the Collins Defendants.  For the reasons stated below, Plaintiffs now ask this Court to preliminarily approve what Plaintiffs believe to be an extraordinary settlement.  For their part, Class Counsel intend to seek 25% of the settlement amount.

The settlement terms are standard, with the exception of a proposed Bar Order. The Collins Defendants continue to maintain they did nothing wrong and deny all allegations of wrongdoing in the Amended Complaint.  The settlement contains releases and a Bar Order in exchange for the $15,755,000 settlement payment.  The Bar Order would prevent the (albeit unlikely) scenario where the now-defunct, bad-actor shell companies, and any entity or person seeking to bring a claim through them, from making a claim against the Collins Defendants.

## II.    FACTUAL BACKGROUND

### A.    Overview of the Class Action and Interpleader Litigation

Plaintiffs allege that Collins Asset Group, LLC is a debt buyer that purchases debt at a discount and then profits from collecting on that debt. Plaintiffs allege that to fund its business operations, Collins Asset Group orchestrated a fraudulent

scheme that used unregistered salespersons and a network of shell companies (the other named Defendants) to illegally raise money from individual investors. The alleged shell companies — Diversified Financing LLC, Sonoqui LLC and/or any of the ALT Money Investments entities — issued promissory notes and/or provided membership interests to Plaintiffs and Settlement Class Members in exchange for their money. See attached Declaration of Jason R. Doss and Jason K. Kellogg at ¶7.

Relying on these allegations, Plaintiffs filed a class action suit on January 27, 2020, in the Superior Court of Gwinnett County, Georgia. Id. at ¶8, citing [Doc. 7 at 4]. There, Plaintiffs sought to certify a nationwide class. Id. Shortly thereafter, on February 4, 2020, the Collins Defendants filed an interpleader action in the United States District Court for the Southern District of New York ("the Interpleader Action"). Id. at ¶8, citing [Doc. 23 at 12].

On February 29, 2020, after becoming aware of the Interpleader Action, Plaintiffs subsequently dismissed the state case without prejudice and refiled in this Court. Id. at ¶9, citing [Doc. 1]. On December 10, 2020, Plaintiffs filed an amended class action complaint. Id., citing [Doc. 52].

The Collins Defendants vehemently deny the allegations in Plaintiffs' Amended Complaint. According to the Collins Defendants, CAG is a debt buying entity that is funded by third party business entities like ALT Money, Diversified and Sonoqui. Id. at ¶ 10, citing [Doc. 23 at 8-9]. CAG contends that it borrowed

money from Diversified and Sonoqui evidenced by certain promissory notes it issued to those entities. Id. The Collins Defendants' position is that they have no relationship to or affiliation with Diversified or Sonoqui other than an arms-length lender-borrower relationship. Id.

Following the issuance of the promissory notes between CAG and Diversified and/or Sonoqui, Diversified and Sonoqui ceased operations in 2017 and are now defunct. Id. Indeed, in or about 2017, Diversified's and Sonoqui's principals, including Daryl Bank were indicted on an apparent unrelated  fraudulent scheme involving the issuance of illegal promissory notes, i.e. unregistered securities, to investors. Id. at ¶12. Because Sonoqui and Diversified no longer exist, CAG maintain that it has been unable to repay the amounts owed to those entities.

Following ALT Money Investments, Diversified and Sonoqui ceasing operations, CAG was contacted by individuals who lent those entities money and in exchange received promissory note(s) and/or membership interest(s) indicating that their money would thereafter be loaned to CAG. Id. at ¶12. As a result, CAG originally filed the Interpleader Action in New York, which on July 6, 2020 was subsequently transferred to this Court, styled as *Collins Asset Group, LLC v. Diversified Financing, LLC, et al*., No 1:20-cv-02818-ELR (N.D. Georgia) (the "Interpleader Action").  The lenders named in the Interpleader Action are also members of the putative class in this case, and this Court presides over both this

class action and the Interpleader Action. Id at ¶¶12-13.

According to the Reply Declaration of Michael Crossan that CAG filed in support of Order to Show Cause, CAG received approximately $20,640,626.48 in loan proceeds from Diversified (the "Diversified Loans") and approximately $3,178,008.14 from Sonoqui. Id. at ¶16, citing [Doc. 285, Interpleader Action]. In total, CAG received approximately $23,818,634.50. Id. at ¶16. According to Mr. Crossan's Declaration, CAG paid back Diversified approximately $2,116,974.12 in principal and interest on account of those loans. Id.

With respect to the Diversified Loans, according to the Crossan Declaration, the total amount that is due and owing to Diversified under the terms of the various loan agreements through May 31, 2020 was approximately $6,311,013.49 Id. at ¶17., citing Crossan Decl. at ¶22. With respect to the Sonoqui Loans, the total amount that is due and owing to Sonoqui under the terms of the various loan agreements as of the same date was approximately $671,994.08. Id. Therefore, the total amount owed by CAG to Diversified and Sonoqui as of May 31, 2020 was $6,983,007.57. Id.

CAG's obligation was non-recourse and as a result its obligation to repay the rest of the loans to Diversified and Sonoqui will depend on CAG's ability to monetize the assets that are secured by the debt. Id. at ¶18. In the Interpleader Action, CAG moved by Order to Show Cause for interpleader relief for the purpose of among other things, depositing the amount currently owed to Diversified and

Sonoqui under CAG's promissory notes with those entities into the Court's registry so that those claimants who loaned money to Diversified and Sonoqui had an opportunity to make a claim on those proceeds. Id. at ¶19, citing [Doc. 33 and Doc. 11, Interpleader Action]. CAG also requested that it be permitted to deposit into the Court's registry all payments that may become due in the future to Diversified and Sonoqui pursuant to the terms of CAG's written agreements with those entities. Id.

Plaintiffs and over two dozen other interpleader-defendants opposed CAG's interpleader relief on the basis that CAG has failed to meet its burden of establishing several of the basic requirements for statutory interpleader jurisdiction. Id at ¶ 20.

This Court scheduled a hearing on CAG's Order to Show Cause for September 23, 2020 to determine whether to allow the Interpleader Action to proceed forward. Id. at ¶23.

### B.    Mediation & Settlement

In an attempt to obtain a global resolution to both the instant class case and the Interpleader Action, CAG and the Thaxtons participated in a formal mediation on September 11, 2020.  Hunter Hughes was selected by the settling parties to serve as the mediator.  Id. at ¶23-24.

The settling parties through their counsel participated in multiple mediation sessions that spanned over the course of more than a month.  Class Counsel spent more than 100 hours preparing for and attending the mediation sessions and drafting

and negotiating numerous versions of the settlement documents. The Collins Defendants also provided proposed Class Counsel with hundreds of documents to support the affidavits that CAG filed in the Interpleader Action. The documents substantiated the amount of loan proceeds that CAG received from Diversified, Sonoqui, and the ALT Money entities as well as the terms of repayment under the various loan documents that CAG entered into with those entities. Id. at ¶24-27.

As explained below, the settling parties reached a class-wide settlement that provides significant relief to Plaintiffs and Settlement Class Members. Id. at ¶28.

## II.    THE TERMS OF THE SETTLEMENT AGREEMENT

The parties have agreed to the following settlement terms, as reflected in the Settlement Agreement attached as Exhibit B, Doss and Kellogg Declaration.

### A.    The Settlement Class

The Settlement Class is defined for Settlement purposes only. It includes any individuals or entities and their assignees who are citizens of the United States who lent money to Diversified Financing, LLC, Sonoqui, LLC or any of the ALT Money Investments entities and in exchange received a promissory note and/or membership interest issued by Diversified, Sonoqui or any of the ALT Money Investments entities indicating that the money would thereafter be loaned to CAG. See Ex. B at ¶3.1. ("Settlement Agreement").

### B.    Monetary Relief

CAG will deposit $15,755,000 (the "Settlement Amount") in an interest-bearing Escrow Account within ten (10) business days of entry of the Final Order and Judgment. The Settlement Amount, together with any interest accrued thereon, will be used to pay any approved Attorneys' Fees and Reimbursable Expenses, Notice Costs and Administrative Costs incurred by the Settlement Administrator, and Taxes and Tax-Related Costs. See ¶2.43, Settlement Agreement. The remaining Distributable Settlement Amount shall be dispersed to the Settlement Class Members by check as promptly as possible after the Effective Date and, in any event, no later than 270 days after the Effective Date. See ¶5.1 and 9.3, Settlement Agreement.

### C.    **Release**

In exchange for the Settlement Amount, Plaintiffs and the Settlement Class Members will, upon entry of the Final Approval Order and by operation of the Final Order and Judgment, provide Defendants with a full and final release for each and every Released Claim. See ¶ 2.40, Settlement Agreement. Additionally, upon the Effective Date of the Settlement Agreement, all claims and counterclaims by CAG and the Settlement Class Members in the Interpleader Action will be dismissed with prejudice. See ¶7.3, Settlement Agreement.

### D.    **Notice to the Settlement Class and Right to Object**

The Settlement Amount expressly provides for all costs of administration of the Settlement, which includes the cost of sending a Settlement Notice in the form attached as Exhibit B to Settlement Agreement. The Settlement Notice will be sent to the Settlement Class Members by first-class mail or email (when available) within 20 business days of the entry of a Preliminary Approval Order. See ¶4.2, Settlement Agreement. Additional notice will be provided by regional publication or otherwise, as best determined by the Settlement Administrator after consulting the parties, within twenty (20) Business Days of the entry of a Preliminary Approval Order and again thirty (30) days following the initial publication. Id. Within twenty (20) Business Days of the entry of a Preliminary Approval Order, the Settlement Administrator shall also establish a Settlement Website containing the Settlement Notice and the Settlement Agreement, and a toll-free Settlement Information Line to which Settlement Class Members can direct questions about the Settlement. ¶4.7, Settlement Agreement. Special Notice will also be provided to the individuals and entities listed in Exhibit D to the Settlement Agreement.    ¶4.3, Settlement Agreement.

Each Settlement Class Member shall have a right to opt out of or object to the Settlement within 60 days after the Notice Date. ¶2.38, Settlement Agreement. The requirements for filing and pursuing an objection will be described in the

Preliminary Approval Order, a proposed version of which is attached as Exhibit C to the Settlement Agreement.

### E.    **Attorneys' Fees and Expenses**

Class Counsel will request Attorneys' Fees equal to 25% of the Settlement Amount, or $3,938,750. Class Counsel will also seek reimbursement for their expenses and costs incurred in connection with this Action and the resulting Settlement. See ¶8.1, Settlement Agreement.

As will be explained and supported in more detail in a forthcoming petition for Attorneys' Fees and Expenses, Class Counsel respectfully submits that they did an extraordinary job on this case, warranting the significant 25% fee recovery. Class Counsel investigated circumstances and events that occurred three or more years ago and uncovered viable claims against CAG on behalf of an entire class of investors, none of whom had yet filed a claim.  Before that, the investors appeared to accept that they had been scammed by defunct companies and had no recourse for their losses.  Moreover, CAG filed its Interpleader Action after the Thaxtons' filed their lawsuit. CAG contends that it had no knowledge of the Thaxton lawsuit at the time of the Interpleader Action was filed and would have otherwise brought the Interpleader Action at some point.   Class Counsel aggressively prosecuted the lawsuit in good faith and also took on considerable financial risk to obtain these results, which represents a recovery of millions of dollars of the Settlement Class

Members' hard-earned savings. The two Class Counsel firms, Levine Kellogg Lehman Schneider + Grossman LLP and The Doss Firm, LLC, devoted thousands of hours of time and fronted thousands of dollars in costs on a contingency fee basis, with no guarantee of recovery or reimbursement for expenses.

Class Counsel will not seek fees or costs if enforcement of the Settlement Agreement is necessary (beyond those the Court may award in its discretion). Furthermore, Class Counsel will submit a detailed Fee and Expense Application at least 30 days prior to the Fairness Hearing, or within any other timeframe set by the Court.

## III.    THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

Approval of a proposed settlement is a two-step process. First, the court decides whether the proposed settlement is "within the range of possible approval," *Fresco v. Auto Data Direct Inc.*, 2007 WL 2330895, at *4 (S.D. Fla. May 11, 2007), to decide "whether to direct notice . . . to the class, invite the class's reaction, and schedule a final fairness hearing." 4 *Newberg on Class Actions* § 13:10 (5th ed. 2015). Second, at the final approval hearing, the court decides if the settlement is fair, reasonable, and adequate. *Id.*

A court has broad discretion over this process. *See, e.g.*, *In re Motorsports Merchandise Antitrust Litig.*, 112 F. Supp. 2d 1329, 1333 (N.D. Ga. 2000) ("In its evaluation of the proposed settlement, the court should be mindful of the judicial

policy favoring settlement[.]"); *see also Lipuma v. Am. Express. Co.*, 406 F. Supp. 2d 1298, 1314 (S.D. Fla. 2005) ("There exists an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex."). In exercising this discretion, some courts in the Eleventh Circuit have authorized notice "where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason." *See In re Checking Account Overdraft Litig*., 275 F.R.D. 654, 661 (S.D. Fla. 2011). Other courts have considered the so-called *Bennett* factors[2] customarily used at the final approval stage. *See, e.g., Columbus Drywall & Insulation, Inc. v. Masco Corp*., 258 F.R.D. 545, 558-59 (N.D. Ga. 2007).

The December 2018 amendments to Rule 23 provide explicit new instructions, requiring notice to be issued if the court is likely to approve the settlement and certify a settlement class. *See* Fed. R. Civ. P. 23(e)(1)(B). Accordingly, the amendments specify that before finally approving a settlement, the court should consider whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;

---

[2] The *Bennett* factors include: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the range of possible recovery at which a settlement is fair, adequate, and reasonable; (4) the anticipated complexity, expense, and duration of litigation; (5) the opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

(C) the relief provided for the class is adequate, taking into account:

    (i) the costs, risks, and delay of trial and appeal;

    (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

    (iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Since the December 2018 amendments to Rule 23, some courts that have addressed the issue consider both the new Rule 23(e) and the *Bennett* factors. *See Grant v. Ocwen Loan Servicing, LLC*, 2019 WL 367648, at *5 (M.D. Fla. Jan. 30, 2019) (defining *Bennett* factors as "analogous" to Rule 23(e) inquiry); *Gumm v. Ford*, 2019 WL 479506, at *4 (M.D. Ga. Jan. 17, 2019). In this motion, Plaintiffs analyze the new Rule 23(e)(2) factors and rely on case law interpreting the *Bennett* factors, which are substantially similar. Regardless of what factors are used, however, notice of this Settlement is appropriate.

### A. <u>The Adequacy of Representation by Class Representatives & Class Counsel</u>

Adequacy of representation is an issue traditionally considered in connection with class certification and involves two questions: "(1) whether the class representatives have interests antagonistic to the interests of other class members; and (2) whether the proposed class' counsel has the necessary qualifications and experience to lead the litigation." *Columbus Drywall & Insulation, Inc*., 258 F.R.D. at 555.

Here, the Plaintiffs have the same interest as other Settlement Class Members because they are asserting the same claims and share remarkably similar claims for injuries. Moreover, they have pursued this litigation vigorously by actively seeking out counsel, monitoring the lawsuit, and participating in mediation in an effort to obtain the maximum recovery for both themselves and for the other Settlement Class Members.

As to the adequacy of Class Counsel, "the adequacy of class counsel is presumed" absent specific proof to the contrary. *Diakos v. HSS Sys., LLC*, 137 F. Supp. 3d 1300, 1309 (S.D. Fla. 2015). Throughout this complex Action, Class Counsel has acted with diligence, skill, and professionalism. Class Counsel are experienced in complex class litigation and have successfully prosecuted similar cases throughout the country. A description of Class Counsel and their experience is listed in Exhibit A to the Doss and Kellogg Decl. In addition, Defendants do not challenge Class Counsel's adequacy to serve as Class Counsel.

**B.**    **The Proposal was Negotiated at Arm's Length**

The Court can safely conclude this Settlement was negotiated at arm's length and without collusion based on the terms of the settlement itself, the length and difficulty of the negotiations, and the oversight of an expert mediator, Hunter R. Hughes III, over more than 100 collective hours. *See Ingram v. The Coca-Cola Co*., 200 F.R.D. 685, 693 (N.D. Ga. 2001) ("The fact that the entire mediation was conducted under the auspices of Mr. Hughes, a highly experienced mediator, lends further support to the absence of collusion.").

**C.**    **The Adequacy of Relief Provided by the Settlement**

Class Counsel, a group with significant experience in class action and complex fraud litigation, strongly believe that the multi-million-dollar relief provided by the Settlement Agreement is fair, reasonable, and adequate. The Court is entitled to rely upon the judgment of experienced counsel. *See, e.g, Nelson v. Mead Johnson & Johnson Co*., 484 F. App'x 429, 434 (11th Cir. 2012) ("Absent fraud, collusion, or the like, the district court should be hesitant to substitute its own judgment for that of counsel.") (internal quotations omitted). That the relief is fair, reasonable, and adequate is further confirmed by considering the four specific factors enumerated in Rule 23(e)(2).

*1.    The Risks Costs and Delay of Continued Litigation*

The cost and delay of continued litigation are obviously substantial given that the Settlement will bring about the conclusion of two separate lawsuits involving more than 100 parties. But for the Settlement, the parties will incur millions of dollars in legal fees and expenses related to discovery and motion practice. Due to the congestion of the federal courts and the uncertainties brought about by the COVID-19 pandemic, trial likely will not occur until 2022 (at the earliest) and appeals would likely delay a final resolution by an additional year.

### 2.    *The Effective Method of Distributing Relief*

The distribution process, which provides for prompt payments to Settlement Class Members by check for a simple and safe mechanism whereby Settlement Class Members can request that payment be made to a different payee, will be efficient and effective. The appointment of a Settlement Administrator, RG2 Claims Administration LLC, further reinforces the efficacy of the relief process because a qualified entity will be designated to manage the entire distribution process.

### 3.    *The Reasonable Terms Relating to Attorneys' Fees*

Class Counsel will request 25% of the negotiated $15,755,000 Settlement Amount. This request is consistent with *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768 (11th Cir. 1991), which mandates use of the percentage method and noted 25% was then viewed as the "bench mark." Following *Camden I*, fee awards in the Eleventh Circuit averaged around one-third. *See Wolff v. Cash 4 Titles*, 2012 WL

5290155 at *5-6 (S.D. Fla. Sept. 26, 2012) ("The average percentage award in the Eleventh Circuit mirrors that of awards nationwide—roughly one-third"); *George v. Acad. Mortg. Corp. (UT)*, 369 F. Supp. 3d 1356, 1382 (N.D. Ga. 2019) (discussing the normality of 33% contingency fees); Eisenberg, *Attorneys' Fees in Class Actions: 2009-2013*, 92 N.Y.U. LAW REV. 937, 951 (2017) (empirical study showing the median award in Eleventh Circuit is 33%). Given the diligence and experience of Class Counsel, which investigated and developed claims, the complexity of the issues involved, the substantial amount of time dedicated to the Action and Settlement, and the financial risk associated with the representation, a 25% fee in favor of Class Counsel is reasonable.

> ### 4.   *The Agreements Identified Pursuant to Rule 23(e)(3)*

Rule 23(e)(3) states that "[t]he parties seeking approval must file a statement identifying any agreement made in connection with the proposal."   Vendors providing services are subject to contracts relating to their obligations under the settlement. These provisions do not affect the adequacy of the relief.

### D.   **The Equitable Treatment of Class Members Relative to Others**

The proposed Settlement Agreement treats all members of the Settlement Class equally. Accordingly, each class member is eligible to receive the same benefits as other class members. No class members are favored over another and, therefore, the treatment is equitable.

**IV.    CLASS CERTIFICATION FOR SETTLEMENT IS APPROPRIATE**

In granting preliminary approval, the Court should also certify the Class for settlement purposes. "A class may be certified solely for purposes of settlement where a settlement is reached before a litigated determination of the class certification issue." *Figueroa v. Sharper Image Corp*., 517 F. Supp. 2d 1292, 1318 n. 19 (S.D. Fla. 2007); *see also, e.g., In re Home Depot, Inc. Customer Data Sec. Breach Litig*., 2016 WL 6902351 (N.D. Ga. Aug. 23, 2016) (certifying class for settlement purposes). Solely for the purposes of Settlement, the Parties have stipulated and agreed to the Action proceeding as a class action under Rule 23 and, accordingly, certification of the Settlement Class is appropriate because the Rule 23(a) requirements are satisfied.

### A.    The Settlement Class is Sufficiently Numerous

Rule 23(a)(1) requires that the class be so numerous that individual joinder of all plaintiffs is impracticable. There is no rigid standard for determining numerosity, but the Eleventh Circuit has held that, generally, "less than twenty-one is inadequate, more than forty adequate." *See Sanchez-Knutson v. Ford Motor Co*., 310 F.R.D. 529, 536 (S.D. Fla. 2015) (quoting *Cox v. Am. Cast Iron Pipe Co*., 784 F.2d 1546, 1553 (11th Cir. 1986)). Here, by CAG's own admission as an Interpleader Plaintiff, the proposed Settlement Class exceeds 100 persons or entities.

### B.    Questions of Law and Fact are Common to the Class

The second prerequisite to class status requires questions of law or fact common to the class. *See* Fed. R. Civ. P. 23(a)(2). Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011); *see also Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1356 (11th Cir. 2009) (describing plaintiff's commonality burden as a "low hurdle" that does not require all questions of law and fact raised to be common). Here, common issues of law and fact abound because each member of the proposed Settlement Class loaned money to Defendants Diversified, Sonoqui and/or the ALT Money Investment entities, through intermediaries in a scheme related to Defendants' normal business operations.

## C.    Plaintiffs' Claims are Typical of Class Members' Claims

The third prerequisite to class status mandates that the claims of the putative Class Representatives be typical of the claims held by the broader class, which is not a demanding test. *See* Fed. R. Civ. P. 23(a)(3); *County of Monroe, Fla. v. Priceline.com, Inc.*, 265 F.R.D. 659, 667 (S.D. Fla. 2010). Typicality measures whether a "significant nexus" exists between the claims of the Class Representatives and those of the class at large. *Columbus Drywall & Insulation, Inc.*, 258 F.R.D. at 555 (quoting *Hines v. Widnall*, 334 F.3d 1253, 1256 (11th Cir. 2003)). Furthermore, the typicality requirement does not mandate that all class members share identical claims, rather they must share only the same "essential characteristics" of the larger

class. *Id.* Plaintiffs' claims share the essential characteristics of the Settlement Class Members' claims because of the scheme in which Plaintiffs lost their investments.

### D.    Plaintiffs and Class Counsel are Adequate Representatives.

As discussed above, in Section III(A) of this motion, Plaintiffs do not have antagonistic interests to the Settlement Class and the proposed Class Counsel possesses the necessary experience and qualifications to lead this litigation. Accordingly, the final prerequisite of class status has been met. *See* Fed. R. Civ. P. 23(a)(4); *Columbus Drywall & Insulation, Inc.*, 258 F.R.D. at 555.

### E.    Plaintiffs Meet the Requirements of Rule 23(b)(3)

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members," and that class treatment is "superior to other available methods for fairly and efficiently adjudicating the controversy."

The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). "Common issues of fact and law predominate if they have a direct impact on every class member's effort to establish liability and on every class member's entitlement to . . . relief." *Carriuolo v. GM Co.*, 823 F.3d 977, 985 (11th Cir. 2016). Here, common questions predominate because all claims arise from a similar course of conduct involving Plaintiffs, the

proposed Settlement Class members, CAG, Diversified Financing, LLC, Sonoqui, LLC and/or any of the ALT Money entities. Accordingly, the only significant individual issues involve damages, which rarely present predominance problems. *See, e.g., Home Depot*, 2016 WL 6902351 at *2; *Brown v. Electrolux Home Products, Inc*., 817 F.3d 1225, 1239 (11th Cir. 2016) (individualized damage generally does not defeat predominance).

The inquiry into whether the class action is the "superior" method for a particular case focuses on "increased efficiency." *Agan v. Katzman & Korr, P.A*., 222 F.R.D. 692, 700 (S.D. Fla. 2004). Given the time and expense associated with litigating more than 100 cases separately, such a method would be inefficient in contrast to a class action and, therefore, the superiority element is satisfied. *See id*.

## V.   THE PROPOSED NOTICE PLAN IS ADEQUATE

Class notice must "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Wal-Mart Stores, Inc. v. Visa USA, Inc*., 396 F.3d 96, 114 (2d Cir. 2005). "Notice must be reasonably calculated, under all circumstances, to apprise the interested parties of the pendency of the action and afford them an opportunity to present their objections." *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 172 (1974) (internal quotations omitted). "Individual notice

must be provided to those class members who are identifiable through reasonable effort." *Id*. at 175.

Here, the form and method of notice of the Settlement jointly proposed by the Parties satisfies all due process considerations and meet the requirements of Rule 23(e)(1). See attached Declaration of William Wickersham. The Settlement Notice fully apprises Settlement Class Members of the existence of the lawsuit and the claims asserted, the proposed Settlement Agreement, and the information they need to make informed decisions about their rights. This includes (i) the risks attendant to continued litigation, (ii) the terms and operation of the Settlement Agreement, (iii) the nature and extent of the release, (iv) the maximum Attorneys' Fees and Expenses that will be sought; (v) the procedure and timing for objecting to the Settlement Agreement, and (vi) the date and place of the Fairness Hearing.

Because the Settlement Class Members have loaned money to Defendants Diversified, Sonoqui and/or the ALT Money entities, they are identifiable. Upon information and belief, Defendant CAG named what it believed to be most of the Settlement Class Members as defendants in the Interpleader Action. CAG was required by the Court in the Interpleader Action to serve those named defendants with the pleadings in that case. As a result, CAG has current or last-known contact information for them. Notice of the settlement will also be filed in the Interpleader Action. The Settlement Notice will be sent to the Settlement Class Members by first-

class mail or email (when available) within 20 business days of the entry of a Preliminary Approval Order.   Within that 20-day window, the Settlement Administrator shall also establish a Settlement Website containing the Settlement Notice and the Settlement Agreement, and a toll-free Settlement Information Line to which Settlement Class Members can direct questions about the Settlement.  Also, the Settlement Administrator will send Special Notice to individuals listed on Exhibit D of the Settlement Agreement who are believed to have sold the promissory notes to Settlement Class Members and attempt to contact those individuals to encourage them to inform their clients of the Settlement.  Finally, the Settlement Administrator will use the addresses of the known Settlement Class Members and the individuals who sold the promissory notes to geo-target those locations with publication notice in regional newspapers and on social media, i.e. Facebook.

The Settlement Administrator believes that this process provides the best notice that is practicable under the circumstances and will provide notice to at least 75 percent of the Settlement Class, if not more.  *See* Wickersham Decl.  The Court thus should approve the plan. *See, e.g.,* Rule 23(c)(1)(B) (authorizing notice by electronic or other appropriate means); *Home Depot*, 2016 WL 6902351, at *5 (notice reaching 75 percent of the class through email and internet advertising satisfied Rule 23 and due process); *Morgan v. Public Storage*, 301 F.Supp.3d 1237, 1261-66 (S.D. Fla. 2016) (notice primarily by email and newspaper advertising); *In*

*re Pool Products Distribution Market Antitrust Litig.*, 310 F.R.D. 300, 317-8 (E.D. La. 2015) (email, digital ads, and print publication); see generally Federal Judicial Center, "Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide" (2010) (recognizing the effectiveness of notice that reaches between 70 and 95 percent of the class); R. Klonoff, Class Actions in the Year 2026: A Prognosis, 65 Emory L. J. 1569, 1650 & n. 479 (2016) ("Courts have increasingly utilized social media … to notify class members of certification, settlement, or other developments"). In sum, the form of the Settlement Notice and proposed procedures for notice satisfy the requirements of due process and should be approved.

## VI.    REQUEST FOR FAIRNESS HEARING

Rule 23(e)(2) provides that if a settlement proposal would bind class members, the court may give final approval of the settlement agreement only after (i) a hearing and (ii) finding that the settlement agreement is fair, reasonable, and adequate. As discussed above, in Section III of this motion, Plaintiffs respectfully submit that the settlement is fair, reasonable, and adequate.

## VII.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request this Court to grant this motion as well as any further relief the Court deems necessary or proper.

Case No.: 1:20-CV-00941-ELR

Dated:  December 21, 2020.                     Respectfully submitted,

THE DOSS FIRM, LLC                            LEVINE KELLOGG LEHMAN
                                              SCHNEIDER + GROSSMAN LLP

By: */s/Jason Doss*                           By: */s/Jason Kellogg*
    Jason R. Doss                                 Jason Kellogg, P.A.
    Georgia Bar No. 227117                        Florida Bar No. 0578401
    The Brumby Building, Suite 220                201 South Biscayne Boulevard
    127 Church Street                             Citigroup Center, 22nd Floor
    Marietta, Georgia 30060                       Miami, Florida 33131
    Telephone: (770) 578-1314                     Telephone: (305) 403-8788
    Facsimile: (770) 578-1302                     Facsimile: (305) 403-8789
    Primary Email: jasondoss@dossfirm.com         Primary Email: jk@lklsg.com

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Rule 7.1(D) of the Local Rules of the District of Georgia, the undersigned counsel for Plaintiffs hereby certifies that the foregoing document was prepared in a font and point selection approved by this Court and authorized in Local Rule 5.1(C).

By: /s/ Jason R. Doss

Jason R. Doss
Georgia Bar No. 227117

Case No.: 1:20-CV-00941-ELR

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing AMENDED UNOPPOSED MOTION FOR (I) PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT, (II) CERTIFICATION OF THE CLASS FOR SETTLEMENT PURPOSES, (III) APPROVAL OF NOTICE TO THE CLASS, AND (IV) SCHEDULING OF A FAIRNESS HEARING, WITH INCORPORATED MEMORANDUM OF LAW with the Clerk of the Court using the CM/ECF system.

This 21st day of December 2020.

By: <u>/s/ Jason R. Doss</u>

Jason R. Doss
Georgia Bar No. 227117