# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

STEPHEN THAXTON and PATRICIA
THAXTON, individually and on behalf of
all others similarly situated,

Plaintiffs,

v.

COLLINS ASSET GROUP, LLC,
COLLINS & HILTON ASSET
GROUP, LLC, DIVERSIFIED
FINANCING, LLC, MARK W. MILLER,
ALT MONEY INVESTMENTS, LLC,
ALT MONEY INVESTMENTS II, LLC,
ALT MONEY INVESTMENTS III, LLC,
ALT MONEY INVESTMENTS IV, LLC,
and SONOQUI, LLC,

Defendants.

Case No.: 1:20-CV-00941-ELR

## CLASS ACTION

## PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF PROPOSED SETTLEMENT

Plaintiffs Stephen Thaxton and Patricia Thaxton, individually and on behalf of those similarly situated ("Settlement Class") move without opposition for Final Approval of the settlement described in the Settlement Agreement ("Settlement").

## INTRODUCTION

Plaintiffs and the Collins Defendants reached a Settlement that will recover nearly $16 million out of approximately $23 million ultimately lent from Diversified Financing, LLC, ("Diversified"), Sonoqui, LLC ("Sonoqui") and the ALT Money entities to Collins Asset Group, LLC ("CAG") in a scam where Diversified, Sonoqui and ALT Money entities used unregistered salespersons and now-defunct shell companies to trick their investors into investing money in exchange for promissory notes. Diversified, Sonoqui and the ALT Money entities thereafter lent money to CAG. The scheme fell apart in 2017 when Diversified and Sonoqui's principals, including ringleader Daryl Bank, were indicted. In fact, just recently on April 30, 2021, while the Settlement claims process was underway in this case, a jury in the U.S. District Court in and for the Eastern District of Virginia convicted Daryl Bank on all 27 criminal counts brought against him. *See USA v. Daryl Bank, et al*., Case No. 2:17-cr-00126-RAJ-LRL. [Doc. 394]

The victims likely viewed their losses as unrecoverable. Yet with the help of Class Counsel, Plaintiffs were not only able to reach a Settlement that recovered some of their losses, it recovered a relatively high percentage in a fraud scenario. As a result, the Settlement has received an overwhelmingly positive response from the Settlement Class.

As explained in more detail below, no class member opted out or objected to the Settlement.   Class notice was mailed or emailed to 351 individuals and entities who were believed to be potential class members.   Two-thirds of those class members — 234 investors in all — responded by submitting claims to the Settlement Administrator.  In addition, while the Settlement Administrator continues to analyze the documents filed by class members to support their claim, it appears that each member of the Settlement Class will recover more than 50% of their principal investment, even after the requested 25% in attorney's fees and expenses are paid from the common fund.

## FACTUAL BACKGROUND

**A.     The Terms of the Proposed Settlement**

The parties have agreed to the following settlement terms, as reflected in the Settlement Agreement attached to the motion for preliminary approval. [Doc. 53, 58] at Exhibit B, Doss and Kellogg Declaration.

**1.     The Settlement Class**

The proposed Settlement Class is defined as follows:

Any individuals or entities and their assignees who are citizens of the United States who lent money to Diversified Financing, LLC, Sonoqui, LLC or any of the ALT Money Investments entities and in exchange received a promissory note and/or membership interest issued by Diversified, Sonoqui or any of the ALT Money Investments entities indicating that the money would thereafter be loaned to CAG.

See Ex. B at ¶3.1. ("Settlement Agreement").

### 2.    Monetary Relief

CAG will deposit $15,755,000 minus any Administrative Costs it has already paid (the "Settlement Amount")[1] in an interest-bearing Escrow Account within ten (10) business days of entry of the Final Order and Judgment. The Settlement Amount, together with any interest accrued thereon, will be used to pay any approved Attorneys' Fees and Reimbursable Expenses, Notice Costs and Administrative Costs incurred by the Settlement Administrator, and Taxes and Tax-Related Costs. See ¶2.43, Settlement Agreement. The remaining Distributable Settlement Amount shall be dispersed to the Settlement Class Members by check as promptly as possible after the Effective Date and, in any event, no later than 270 days after the Effective Date. See ¶5.1 and 9.3, Settlement Agreement. No settlement funds will revert to CAG, because no class member opted-out of the Settlement.

### 3.    Release and Bar Order

In exchange for the Settlement Amount, Plaintiffs and the Settlement Class Members will, upon entry of the Final Approval Order and by operation of the Final Order and Judgment, provide Defendants with a full and final release for each and every Released Claim. See ¶ 2.40, Settlement Agreement. Additionally, upon the

---

[1] CAG made a payment of $31,763.00 to RG2 Claims Administration on or about April 1, 2021 for publication costs. See ¶21 of the Declaration of Jessie Montague attached hereto. ("RG2 Decl.")

Effective Date of the Settlement Agreement, all claims and counterclaims by CAG and the Settlement Class Members in the Interpleader Action will be dismissed with prejudice. See ¶7.3, Settlement Agreement.

The Collins Defendants continue to maintain they did nothing wrong and deny all allegations of wrongdoing in the Amended Complaint. As such, the Settlement also contains a Bar Order in exchange for the $15,755,000 settlement payment. See Section XI, Settlement Agreement. The Bar Order would prevent the (albeit unlikely) scenario where the now-defunct, bad-actor shell companies, and any entity or person seeking to bring a claim through them, makes a claim against the Collins Defendants. Diversified Financing, LLC, Sonoqui, LLC and the ALT Money entities, as well as their principals, were served with the motion for preliminary approval and accompanying settlement documents notifying them of the Bar Order and none objected or opposed the relief. [Doc. 59 and 60].[2]

---

[2]    Mark Miller, a named defendant in this Action who is represented by counsel, was the managing member of the now defunct ALT Money entities. As such, Miller was served with the motion for preliminary approval and accompanying settlement agreement containing the Bar Order and did not object or oppose the relief. Similarly, Daryl Bank the President and leader of Diversified and Sonoqui was likewise individually served with the motion for preliminary approval and accompanying settlement agreement containing the Bar Order through his criminal attorney's and at his last known address. Mr. Bank did not object to or oppose the relief. See attached RG2 Decl. at ¶12.

**4.     Notice to the Settlement Class and Claims Process**

The Settlement Amount expressly provides for all costs of administration of the Settlement, which includes the cost of sending a Settlement Notice in the form attached as Exhibit B to Settlement Agreement.

In accordance with the Settlement Agreement and this Court's January 13, 2021 Order granting preliminary approval of the Settlement [Doc. 63], the Settlement Administrator sent notice to the Settlement Class Members by first-class mail or email. RG2 Decl.  at ¶¶ 5-14. As implemented, the Settlement Administrator mailed and/or emailed this direct notice to 351 individuals who were believed to be potential class members. Id. at ¶ 14.

Additional notice was also provided by regional publication. Id. at ¶ 15.  The Settlement Administrator established a Settlement Website containing the Settlement Notice and the Settlement Agreement, and a toll-free Settlement Information Line to which Settlement Class Members were able direct questions about the Settlement. Id. at ¶ 17. Special Notice was also provided to the individuals and entities listed in Exhibit D to the Settlement Agreement. Id. at ¶ 11.

The Settlement Administrator also provided notice through a successful digital campaign. It achieved 2.4 million impressions on social media, paid searches and advertising. Id. at ¶ 16.

The deadline for Settlement Class Members to opt-out or object to the Settlement was April 3, 2021.  No Settlement Class Members opted out or objected. In addition, 234 claim forms were submitted to the Settlement Administrator, or more than 66% of the Settlement Class who received direct notice, which is very high compared to other class settlements. Id. at ¶ 20.

The claims process is governed by a detailed Claims Administration Protocol employing a variety of techniques to facilitate access and participation.  Id. The Settlement Administrator has developed protocols and a database to assist in processing claims, calculating payments, and assisting Settlement Class Members in curing any deficient claims. Id.

To date, the amount claimed by all Settlement Class Members is approximately $23,981,826. That number is expected to be reduced as the Settlement Administrator denies claims that are not valid or supported by reasonable documentation. However, even if the full amount of claims stated above are approved, it appears that Settlement Class Members will recover approximately 50% of their principal investment, even after the requested 25% in attorney's fees and expenses are paid from the common fund.  This is a remarkable result, particularly for victims of a Ponzi scheme that involved a complicated multi-layered investment fraud.

### 5.    <u>Attorneys' Fees and Expenses</u>

Class Counsel has applied separately for attorneys' fees equal to 25% of the Settlement Amount, or $3,938,750. Class Counsel also seek reimbursement for their expenses and costs incurred in connection with this Action and the resulting Settlement. [Doc. 67].

<u>ARGUMENT</u>

## I.    The Court Should Finally Approve the Settlement

As a prerequisite to directing notice of a proposed settlement, the Court determined that it would likely be able to approve the Settlement and certify a settlement class. [Doc. 68]; see Rule 23(e)(1)(B). After inviting and receiving the Class's reaction, there were no opt-outs or objections to the Settlement. See RG2 Decl. at ¶ 18-19. This Court should now readily conclude that the Settlement is fair, reasonable, and adequate. See 4 Newberg on Class Actions § 13:10 (5th ed. 2015).

A court has broad discretion over the settlement approval process. *See, e.g., In re Motorsports Merch. Antitrust Litig*., 112 F. Supp. 2d 1329, 1333 (N.D. Ga. 2000). In exercising this discretion, courts in this Circuit analyze a settlement using the so-called Bennett factors.[3] *See, e.g.*, *Columbus Drywall & Insulation, Inc. v.*

---

[3] The *Bennett* factors include: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the range of possible recovery at which a settlement is fair, adequate, and reasonable; (4) the anticipated complexity, expense, and duration of litigation; (5) the opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

*Masco Corp.*, 258 F.R.D. 545, 558-59 (N.D. Ga. 2007); *Ault v. Walt Disney World Co.*, 692 F.3d 1212, 1217 (11th Cir. 2012) (court must make findings that settlement "is not the product of collusion" and "that it is fair, reasonable and adequate").

The 2018 amendments to Rule 23 similarly make clear that the court should "[focus] on the primary procedural considerations and substantive qualities that should always matter to the decision whether to approve the proposal." See Fed. R. Civ. P. 23(e)(2), 2018 Advisory Comm. Notes. The specific considerations include whether (1) the class was adequately represented; (2) the settlement was negotiated at arm's length; (3) the relief is adequate, taking into account the costs, risks, and delay of trial and appeal, how the relief will be distributed, the terms governing attorney's fees; and any side agreements; and (4) whether Class Members are treated equitably relative to each other. Fed. R. Civ. P. 23(e).[4]

Immediately below, Plaintiffs analyze the new Rule 23(e)(2) factors and rely on case law interpreting the *Bennett* factors, which are substantially similar. Regardless of which factors are used, final approval of this Settlement is warranted.

---

[4] This framework tracks the traditional approach, and since the 2018 amendments, courts in this Circuit have continued to weigh the *Bennett* factors. *See, e.g.*, *Berman v. General Motors, LLC*, 2019 WL 6163798, at *3 (S.D. Fla. Nov. 18, 2019); *Gumm v. Ford*, 2019 WL 2017497, at *2 (M.D. Ga. May 7, 2019).

## A.      The Class Was Adequately Represented.

Adequacy of representation is an issue traditionally considered in connection with class certification and involves two questions: "(1) whether the class representatives have interests antagonistic to the interests of other class members; and (2) whether the proposed class' counsel has the necessary qualifications and experience to lead the litigation." *Columbus Drywall & Insulation, Inc*., 258 F.R.D. at 555.

Here, the Plaintiffs have the same interest as other Settlement Class Members because they are asserting the same claims and share remarkably similar claims for injuries. Moreover, they have pursued this litigation vigorously by actively seeking out counsel, monitoring the lawsuit, and participating in mediation in an effort to obtain the maximum recovery for both themselves and for the other Settlement Class Members.

As to the adequacy of Class Counsel, "the adequacy of class counsel is presumed" absent specific proof to the contrary. *Diakos v. HSS Sys., LLC*, 137 F. Supp. 3d 1300, 1309 (S.D. Fla. 2015). Throughout this complex Action, Class Counsel has acted with diligence, skill, and professionalism. Class Counsel are experienced in complex class litigation and have successfully prosecuted similar cases throughout the country. Further, this Court has already appointed them as Class

Counsel in connection with this Settlement.  In addition, Defendants do not challenge Class Counsel's adequacy to serve as Class Counsel.

### B.    The Proposal was Negotiated at Arm's Length

The Court can safely conclude this Settlement was negotiated at arm's length and without collusion based on the terms of the settlement itself, the length and difficulty of the negotiations, and the oversight of an expert mediator, Hunter R. Hughes III, for more than 100 collective hours. *See Ingram v. The Coca-Cola Co*., 200 F.R.D. 685, 693 (N.D. Ga. 2001) ("The fact that the entire mediation was conducted under the auspices of Mr. Hughes, a highly experienced mediator, lends further support to the absence of collusion.").

### C.    The Adequacy of Relief Provided by the Settlement

Class Counsel, a group with significant experience in class action and complex fraud litigation, strongly believe that the multi-million-dollar relief provided by the Settlement Agreement is fair, reasonable, and adequate. The Court is entitled to rely upon the judgment of experienced counsel. *See, e.g., Nelson v. Mead Johnson & Johnson Co*., 484 F. App'x 429, 434 (11th Cir. 2012) ("Absent fraud, collusion, or the like, the district court should be hesitant to substitute its own judgment for that of counsel.") (internal quotations omitted). That the relief is fair, reasonable, and adequate is further confirmed by considering the four specific factors enumerated in Rule 23(e)(2).

Settlement that will recover nearly $16 million out of approximately $23 million ultimately lent to Collins Asset Group, LLC ("CAG") in a scam where Diversified, Sonoqui and the ALT Money entities used unregistered salespersons and now-defunct shell companies to trick their investors into investing money in exchange for promissory notes. This is an extraordinary result especially in a case like this where there were multiple layers to the investment scheme and other shell companies and/or individuals such as Daryl Bank, who may have been found by a jury in this case to be fully culpable for the entire fraudulent scheme, leaving Plaintiffs and the Settlement Class with no ability to recover from the Collins Defendants.

Plaintiffs' counsel who has extensive experience in representing victims in investment fraud cases strongly believe the relief is fair, reasonable, and adequate. [Doc. 67].

The Settlement Class has embraced the Settlement.  As stated above, the deadline for Settlement Class Members to opt-out or object to the Settlement was April 3, 2021 and no Settlement Class Members opted out or objected. In addition, 234 claim forms were submitted to the Settlement Administrator, which is over 66% of the Settlement Class who received direct notice. RG2 Decl.  at ¶ 20.

As explained above, it appears that Settlement Class Members will recover approximately 50% of their principal investment, even after the requested 25% in

attorney's fees and expenses are paid are paid from the common fund. This is a remarkable result particularly for victims of a Ponzi scheme.

That the relief is fair, reasonable, and adequate is further confirmed by considering four specific factors enumerated in new Rule 23(e)(2).

### 1. *The Risks, Costs and Delay of Continued Litigation*

The cost and delay of continued litigation are substantial given that the Settlement will bring about the conclusion of two separate lawsuits involving more than 100 parties. But for the Settlement, the parties will incur millions of dollars in legal fees and expenses related to discovery and motion practice. Due to the congestion of the federal courts and the uncertainties brought about by the COVID-19 pandemic, trial likely will not occur until 2022 (at the earliest) and appeals would likely delay a final resolution by an additional year.

The risks are also substantial. If the Settlement is not approved, there are significant procedural issues that will be heavily litigated about whether the Interpleader Action and/or Thaxton case will be able to proceed. Other inevitable motion practice related to the sufficiency of the allegations and class certification poses risks and challenges. And, even if Plaintiffs prevail on all of those legal issues, they face the risks that causation cannot be proved, discovery will not support their factual allegations, a jury might find for the Collins Defendants or that an appellate court might reverse a Plaintiff's judgment.

### 2.    *An Effective Method of Distributing Relief*

The distribution process, which provides for prompt payments to Settlement Class Members by check for a simple and safe mechanism whereby Settlement Class Members can request that payment be made to a different payee, will be efficient and effective. The appointment of a Settlement Administrator, RG2 Claims Administration LLC, further reinforces the efficacy of the relief process because a qualified entity will be designated to manage the entire distribution process.

Class members have been able to easily file claims and provide reasonable documentation to support their claim.  Once again, the fact that over 66% of the Settlement Class submitted claims seeking to recover from the Settlement Amount is support for the fact that the method for distributing relief is effective.

### 3.    *The Reasonable Terms Relating to Attorneys' Fees*

Class Counsel requested 25% of the negotiated $15,755,000 Settlement Amount. [Doc. 67].  This request is consistent with *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768 (11th Cir. 1991), which mandates use of the percentage method and noted 25% was then viewed as the "benchmark." Following *Camden I*, fee awards in the Eleventh Circuit averaged around one-third. *See Wolff v. Cash 4 Titles*, 2012 WL 5290155 at *5-6 (S.D. Fla. Sept. 26, 2012) ("The average percentage award in the Eleventh Circuit mirrors that of awards nationwide—roughly one-third"); *George v. Acad. Mortg. Corp. (UT)*, 369 F. Supp. 3d 1356, 1382

(N.D. Ga. 2019) (discussing the normality of 33% contingency fees); Eisenberg, *Attorneys' Fees in Class Actions: 2009-2013*, 92 N.Y.U. LAW REV. 937, 951 (2017) (empirical study showing the median award in Eleventh Circuit is 33%). Given the diligence and experience of Class Counsel, which investigated and developed Plaintiffs' claims, the complexity of the issues involved, the substantial amount of time dedicated to the Action and Settlement, and the financial risk associated with the representation, a 25% fee in favor of Class Counsel is reasonable and should be approved.

### 4. *The Agreements Identified Pursuant to Rule 23(e)(3)*

Rule 23(e)(3) states that "[t]he parties seeking approval must file a statement identifying any agreement made in connection with the proposal." Vendors providing services are subject to contracts relating to their obligations under the settlement. These provisions do not affect the adequacy of the relief. In addition, no Settlement Class Member opted-out of the Settlement so that provision in the Settlement Agreement that could have given the Collins Defendants the ability to terminate the Settlement were not triggered and thus do not affect the adequacy of relief obtained here.

### D.    **The Equitable Treatment of Class Members Relative to Others**

The proposed Settlement Agreement treats all members of the Settlement Class equally. Accordingly, each class member is eligible to receive the same

benefits as other class members. No class members are favored over another and, therefore, the treatment is equitable.

## II.    The Court Should Certify the Proposed Settlement Class.

Settlement classes are routinely granted in similar circumstances and there is nothing unique about this case which would counsel otherwise. This Court has already found that it likely would certify the class when it preliminarily approved the settlement. As demonstrated below, that decision should be made final.

### A.    <u>The Settlement Class is Sufficiently Numerous</u>

Rule 23(a)(1) requires that the class be so numerous that individual joinder of all plaintiffs is impracticable. There is no rigid standard for determining numerosity, but the Eleventh Circuit has held that, generally, "less than twenty-one is inadequate, more than forty adequate." *See Sanchez-Knutson v. Ford Motor Co*., 310 F.R.D. 529, 536 (S.D. Fla. 2015) (quoting *Cox v. Am. Cast Iron Pipe Co*., 784 F.2d 1546, 1553 (11th Cir. 1986)). Here, by CAG's own admission as an Interpleader Plaintiff, the proposed Settlement Class exceeds 100 persons or entities.

### B.    <u>Questions of Law and Fact are Common to the Class</u>

The second prerequisite to class status requires questions of law or fact common to the class. *See* Fed. R. Civ. P. 23(a)(2). Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011); *see also Williams v. Mohawk*

*Indus., Inc.*, 568 F.3d 1350, 1356 (11th Cir. 2009) (describing plaintiff's commonality burden as a "low hurdle" that does not require all questions of law and fact raised to be common). Here, common issues of law and fact abound because each member of the proposed Settlement Class loaned money to Defendants Diversified, Sonoqui and/or the ALT Money Investment entities, through intermediaries in a scheme related to Diversified, Sonoqui and/or the ALT Money Investment entities normal business operations.

### C.    Plaintiffs' Claims are Typical of Class Members' Claims

The third prerequisite to class status mandates that the claims of the putative Class Representatives be typical of the claims held by the broader class, which is not a demanding test. *See* Fed. R. Civ. P. 23(a)(3); *County of Monroe, Fla. v. Priceline.com, Inc.*, 265 F.R.D. 659, 667 (S.D. Fla. 2010). Typicality measures whether a "significant nexus" exists between the claims of the Class Representatives and those of the class at large. *Columbus Drywall & Insulation, Inc.*, 258 F.R.D. at 555 (quoting *Hines v. Widnall*, 334 F.3d 1253, 1256 (11th Cir. 2003)). Furthermore, the typicality requirement does not mandate that all class members share identical claims, rather they must share only the same "essential characteristics" of the larger class. *Id.* Plaintiffs' claims share the essential characteristics of the Settlement Class Members' claims because of the scheme in which Plaintiffs lost their investments.

### D.    <u>Plaintiffs and Class Counsel are Adequate Representatives.</u>

Plaintiffs do not have antagonistic interests to the Settlement Class and the proposed Class Counsel possesses the necessary experience and qualifications to lead this litigation. Accordingly, the final prerequisite of class status has been met. *See* Fed. R. Civ. P. 23(a)(4); *Columbus Drywall & Insulation, Inc*., 258 F.R.D. at 555.

### E.    <u>Plaintiffs Meet the Requirements of Rule 23(b)(3)</u>

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members," and that class treatment is "superior to other available methods for fairly and efficiently adjudicating the controversy."

The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). "Common issues of fact and law predominate if they have a direct impact on every class member's effort to establish liability and on every class member's entitlement to . . . relief." *Carriuolo v. GM Co*., 823 F.3d 977, 985 (11th Cir. 2016). Here, common questions predominate because all claims arise from a similar course of conduct involving Plaintiffs, the proposed Settlement Class members, CAG, Diversified Financing, LLC, Sonoqui, LLC and/or any of the ALT Money entities. Accordingly, the only significant

individual issues involve damages, which rarely present predominance problems. *See, e.g., Home Depot*, 2016 WL 6902351 at \*2; *Brown v. Electrolux Home Products, Inc*., 817 F.3d 1225, 1239 (11th Cir. 2016) (individualized damage generally does not defeat predominance).

The inquiry into whether the class action is the "superior" method for a particular case focuses on "increased efficiency." *Agan v. Katzman & Korr, P.A*., 222 F.R.D. 692, 700 (S.D. Fla. 2004). Given the time and expense associated with litigating more than 100 cases separately, such a method would be inefficient in contrast to a class action and, therefore, the superiority element is satisfied. *See id*.

## III.    Notice to the Settlement Class Complied with Due Process and Rule 23

Class notice must "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Wal-Mart Stores, Inc. v. Visa USA, Inc*., 396 F.3d 96, 114 (2d Cir. 2005). "Notice must be reasonably calculated, under all circumstances, to apprise the interested parties of the pendency of the action and afford them an opportunity to present their objections." *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 172 (1974) (internal quotations omitted). "Individual notice must be provided to those class members who are identifiable through reasonable effort." *Id*. at 175.

Here, the form and method of notice of the Settlement jointly proposed by the Parties satisfies all due process considerations and meet the requirements of Rule 23(e)(1). See [Doc. 53, 58], Declaration of William Wickersham. The Settlement Notice fully apprised Settlement Class Members of the existence of the lawsuit and the claims asserted, the proposed Settlement Agreement, and the information they need to make informed decisions about their rights. This includes (i) the risks attendant to continued litigation, (ii) the terms and operation of the Settlement Agreement, (iii) the nature and extent of the release, (iv) the maximum Attorneys' Fees and Expenses that will be sought; (v) the procedure and timing for objecting to the Settlement Agreement, and (vi) the date and place of the Fairness Hearing.

Because the Settlement Class Members have loaned money to Defendants Diversified, Sonoqui and/or the ALT Money entities, they are identifiable. Upon information and belief, Defendant CAG named what it believed to be most of the Settlement Class Members as defendants in the Interpleader Action. CAG was required by the Court in the Interpleader Action to serve those named defendants with the pleadings in that case. As a result, CAG has current or last-known contact information for them.

Notice of the settlement was also filed in the Interpleader Action. The Settlement Notice was sent to the Settlement Class Members by first-class mail or email (when available) within 20 business days of the entry of a Preliminary

Approval Order.   Within that 20-day window, the Settlement Administrator established a Settlement Website containing the Settlement Notice and the Settlement Agreement, and a toll-free Settlement Information Line to which Settlement Class Members can direct questions about the Settlement.   Also, the Settlement Administrator sent Special Notice to individuals listed on Exhibit D of the Settlement Agreement who are believed to have sold the promissory notes to Settlement Class Members and attempt to contact those individuals to encourage them to inform their clients of the Settlement.   Finally, the Settlement Administrator used the addresses of the known Settlement Class Members and the individuals who sold the promissory notes to geo-target those locations with publication notice in regional newspapers and on social media, i.e., Facebook.

As predicted in the motion for preliminary approval, the successful implementation of the notice plan has resulted in an unusually robust claims rate in excess of 66%.   The Court should thus find that the Settlement Class received the best notice practicable under the circumstances in compliance with Rule 23 and the Due Process Clause. *See, e.g.,* Rule 23(c)(1)(B) (authorizing notice by electronic or other appropriate means); *Home Depot*, 2016 WL 6902351, at *5 (notice reaching 75 percent of the class through email and internet advertising satisfied Rule 23 and due process); *Morgan v. Public Storage*, 301 F.Supp.3d 1237, 1261-66 (S.D. Fla. 2016) (notice primarily by email and newspaper advertising); *In re Pool Products*

Case No.: 1:20-CV-00941-ELR

*Distribution Market Antitrust Litig.*, 310 F.R.D. 300, 317-8 (E.D. La. 2015) (email, digital ads, and print publication); see generally Federal Judicial Center, "Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide" (2010) (recognizing the effectiveness of notice that reaches between 70 and 95 percent of the class); R. Klonoff, Class Actions in the Year 2026: A Prognosis, 65 Emory L. J. 1569, 1650 & n. 479 (2016) ("Courts have increasingly utilized social media … to notify class members of certification, settlement, or other developments").

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request this Court finally approve this Settlement, certify the Settlement Class, and enter judgment accordingly.

Case No.: 1:20-CV-00941-ELR

Dated:  May 27, 2021.                    Respectfully submitted,

THE DOSS FIRM, LLC                       LEVINE KELLOGG LEHMAN
                                         SCHNEIDER + GROSSMAN LLP

By: */s/Jason Doss*                      By: */s/Jason Kellogg*
      Jason R. Doss                            Jason Kellogg, P.A.
      Georgia Bar No. 227117                   Florida Bar No. 0578401
      The Brumby Building, Suite 220           201 South Biscayne Boulevard
      127 Church Street                        Citigroup Center, 22nd Floor
      Marietta, Georgia 30060                  Miami, Florida 33131
      Telephone: (770) 578-1314                Telephone: (305) 403-8788
      Facsimile: (770) 578-1302                Facsimile: (305) 403-8789
      Primary Email: jasondoss@dossfirm.com    Primary Email: jk@lklsg.com

Case No.: 1:20-CV-00941-ELR

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Rule 7.1(D) of the Local Rules of the District of Georgia, the undersigned counsel for Plaintiffs hereby certifies that the foregoing document was prepared in a font and point selection approved by this Court and authorized in Local Rule 5.1(C).

By: /s/ Jason R. Doss

Jason R. Doss
Georgia Bar No. 227117

Case No.: 1:20-CV-00941-ELR

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing UNOPPOSED MOTION FOR FINAL APPROVAL OF PROPOSED SETTLEMENT with the Clerk of the Court using the CM/ECF system.

This 27th day of May 2021.

By: /s/ Jason R. Doss

Jason R. Doss
Georgia Bar No. 227117