**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

|  |  |
|---|---|
| STEPHEN THAXTON and PATRICIA THAXTON, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>COLLINS ASSET GROUP, LLC, COLLINS & HILTON ASSET GROUP, LLC, DIVERSIFIED FINANCING, LLC, MARK W. MILLER, ALT MONEY INVESTMENTS, LLC, ALT MONEY INVESTMENTS II, LLC, ALT MONEY INVESTMENTS III, LLC, ALT MONEY INVESTMENTS IV, LLC, and SONOQUI, LLC,<br><br>Defendants. | Case No.: 1:20-CV-00941-ELR<br><br>**CLASS ACTION** |

## FINAL ORDER AND JUDGMENT

Plaintiffs Stephen Thaxton and Patricia Thaxton, individually and on behalf of those similarly situated, and Defendant Collins Asset Group, Inc. entered into a proposed settlement embodied in a Settlement Agreement and Release ("Settlement

Agreement").[1] On January 13, 2021, this Court preliminarily approved the Settlement and ordered that notice be sent to Settlement Class Members.  [Doc. 63].  On February 27, 2021, in accordance with the schedule set by the Court, Class Counsel filed Plaintiffs' Unopposed Motion for Attorney's Fees, Costs, Expenses and Service Award.  [Doc. 67].  A fairness hearing was held on June 15, 2021. [Doc. 69].

Now before the Court is Plaintiffs' Unopposed Motion for Final Approval of Proposed Settlement [Doc. 70] and Plaintiffs' Unopposed Motion for Attorney's Fees, Expenses and Service Award.  [Doc. 67].  The Parties have requested that the Court enter this Final Order and Judgment granting final approval of the settlement, granting Class Counsel's motion for attorney's fees, expenses and service award and dismissing this Action and the related Interpleader Action[2] with prejudice.

The Court, having reviewed and considered the motions, affidavits and other submissions of the Parties, **IT IS ORDERED AND ADJUDGED**:

1.     The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2) and personal jurisdiction over the Class Representatives, members of the Settlement Class, and Defendants.  Additionally, venue is proper in this District pursuant to 28 U.S.C. § 1391(b).

---

[1] All terms herein shall have the same meaning as used in the Settlement Agreement.  The Court expressly incorporates into this Final Order and Judgment the Settlement Agreement and all exhibits thereto, that were filed on December 16,2020.  [Doc. 53].

[2] Collins Asset Group, LLC v. Diversified Financing, LLC et al., Case No. 1:20-CV-02818-ELR, (N.D. Ga.).

## I.   **Plaintiffs' Motion for Final Approval of Proposed Settlement [Doc. 70].**

### A.   **Summary of the Proposed Settlement.**

2.   The proposed Settlement Class is defined as follows:

> Any individuals or entities and their assignees who are citizens of the United States who lent money to Diversified Financing, LLC, Sonoqui, LLC or any of the ALT Money Investments entities and in exchange received a promissory note and/or membership interest issued by Diversified, Sonoqui or any of the ALT Money Investments entities indicating that the money would thereafter be loaned to CAG.

> See ¶3.1 ("Settlement Agreement").

3.   In accordance with the Settlement Agreement, CAG shall deposit $15,755,000, minus any Administrative Costs it has already paid (the "Settlement Amount"), in an interest-bearing Escrow Account within ten (10) business days of entry of the Final Order and Judgment.  The Settlement Amount, together with any interest accrued thereon, will be used to pay approved Attorneys' Fees and Reimbursable Expenses, Notice Costs and Administrative Costs incurred by the Settlement Administrator, and Taxes and Tax-Related Costs.   See  ¶2.43, Settlement Agreement.  The remaining Distributable Settlement Amount shall be dispersed to the Settlement Class Members on a *pro rata* basis calculated by their principal amount loaned less any amounts received from one or more  of  the issuers of  the  promissory  notes.  The  disbursements  will  be  issued  by  check

as promptly as possible after the Effective Date and, in any event, no later than 270 days after the Effective Date.  See ¶5.1 and 9.3, Settlement Agreement.

4.     In exchange for the Settlement Amount, Plaintiffs and the Settlement Class Members will, upon entry of the Final Approval Order and by operation of this Final Order and Judgment, provide Defendants with a full and final release for each and every Released Claim. See ¶ 2.40, Settlement Agreement. Additionally, upon the Effective Date of the Settlement Agreement, all claims and counterclaims by CAG and the Settlement Class Members in the Interpleader Action will be dismissed with prejudice.  See ¶7.3, Settlement Agreement.

5.     The Settlement Agreement also contains a Bar Order in exchange for the $15,755,000 settlement payment.   See Section XI, Settlement Agreement. The Bar Order is meant to prevent Diversified Financing, LLC, Sonoqui, LLC and the ALT Money entities or any entity or person seeking to bring a claim through them,from making any claim against the Collins Defendants.

6.     Diversified Financing, LLC, Sonoqui, LLC, and the ALT Money entities were each served with the motion for preliminary approval and accompanying settlement documents notifying them of the Bar Order and none

objected to or opposed the relief.    [Doc. 59 and 60].[3]

   **B.    Class notice fully comports with the requirements of Rule 23 and constitutional due process.**

7.    In a declaration filed with the Court [Doc. 70-1], the Settlement Administrator advised that the notice plan was executed in accordance with the Settlement Agreement and the Order granting preliminary approval of the settlement. [Doc. 63].  As declared by the Settlement Administrator, the notice plan reached more than 75% of the Settlement Class and two-thirds of Settlement Class Members —234 class members in all—responded by submitting claims to the Settlement Administrator, which is a substantial response rate.  [Doc. 70-1].  The Settlement Administrator also advised that no member of the Settlement Class opted out or objected to the Settlement.  Id.

8.    The Court finds that notice of the Settlement that was disseminated to prospective members of the Settlement Class through direct mail, email, newsprint, digital media, and other means, fully comported with the requirements of both Rules 23(c)(2)(B) and (e)(1) and constitutional due process.  The notice furnished to the Settlement Class constituted the best notice practicable under the circumstances and was reasonably calculated, under the circumstances, to apprise Settlement Class

---

[3] Mark Miller, a named defendant in this Action who is represented by counsel, was the managing member of the now defunct ALT Money entities.  As such, Miller was served with the motion for preliminary approval and accompanying settlement agreement containing the Bar Order and did not object or oppose the relief.  Similarly, Daryl Bank the President and leader of Diversified and Sonoqui was likewise individually served with the motion for preliminary approval and accompanying settlement agreement containing the Bar Order through his criminal attorney's and athis last known address.  Mr. Bank did not object to or oppose the relief.  [Doc 70-1].

Members of (a) the nature of the action, the nature of the Settlement Class and its claims, and the material terms of the Settlement, including the benefits provided, the procedure for making a claim, the release and Bar Order provided to Defendants, the consequences of participating or not participating in the Settlement, and their options; (b) all applicable deadlines; (c) their right to opt out or object to any aspect of the Settlement and how to do so; (d) the attorneys' fee that Class Counsel would seek; (e) the date, place, and time of the Rule 23(e)(2) Fairness Hearing and their right to appear at the hearing; and (f) where they could obtain further information.

9.      In addition, the notice given by Defendants to state and federal officials pursuant to 28 U.S.C. § 1715 fully and timely satisfied the requirements of that statute.

**C.      The Settlement satisfies the requirements of Rule 23(e).**

10.      A court has broad discretion over the settlement approval process.  See, e.g., In re Motorsports Merch. Antitrust Litig., 112 F. Supp. 2d 1329, 1333 (N.D. Ga. 2000).  In exercising this discretion, courts in this Circuit analyze a settlement using the so-called Bennett factors.  See, e.g., Columbus Drywall & Insulation, Inc. v. Masco Corp., 258 F.R.D. 545, 558–59 (N.D. Ga. 2007); Ault v. Walt Disney World Co., 692 F.3d 1212, 1217 (11th Cir. 2012) (court must make findings that settlement "is not the product of collusion" and "that it is fair, reasonable and adequate").

The Bennett factors include: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the range of possible recovery at which a settlement is fair, adequate, and reasonable; (4) the anticipated complexity, expense, and duration of litigation; (5) the opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

11.     The 2018 amendments to Rule 23 similarly make clear that the court should "[focus] on the primary procedural considerations and substantive qualities that should always matter to the decision whether to approve the proposal." FED. R. CIV. P. 23(e)(2), 2018 Advisory Comm. Notes. The specific considerations include whether (1) the class was adequately represented; (2) the settlement was negotiated at arm's length; (3) the relief is adequate, taking into account the costs, risks, and delay of trial and appeal, how the relief will be distributed, the terms governing attorney's fees and any side agreements; and (4) whether Class Members are treated equitably relative to each other. See FED. R. CIV. P. 23(e).[4]

### 1.     The Class Was Adequately Represented.

12.     Adequacy of representation is an issue traditionally considered in connection with class certification and involves two questions: "(1) whether the class representatives have interests antagonistic to the interests of other class members;

---

[4] This framework tracks the traditional approach, and since the 2018 amendments, courts in this Circuit have continued to weigh the Bennett factors. See, e.g., Berman v. General Motors, LLC, 2019 WL 6163798, at *3 (S.D. Fla. Nov. 18, 2019); Gumm v. Ford, 2019 WL 2017497, at *2 (M.D. Ga. May 7, 2019).

and (2) whether the proposed class' counsel has the necessary qualifications and experience to lead the litigation." <u>Columbus Drywall & Insulation, Inc.</u>, 258 F.R.D. at 555.

13.    Here, the Plaintiffs have the same interest as other Settlement Class Members because they are asserting the same claims and share remarkably similar claims for injuries.  Moreover, they have pursued this litigation vigorously by actively seeking out counsel, monitoring the lawsuit, and participating in mediation in an effort to obtain the maximum recovery for both themselves and for the other Settlement Class Members.

14.    The Court finds Stephen Thaxton and Patricia Thaxton to be adequate class representatives. Pursuant to Rule 23, the Court confirms the appointment of Plaintiffs Stephen Thaxton and Patricia Thaxton as representatives of the Settlement Class.

15.    As to the adequacy of Class Counsel, "the adequacy of class counsel is presumed" absent specific proof to the contrary. <u>Diakos v. HSS Sys., LLC</u>, 137 F. Supp. 3d 1300, 1309 (S.D. Fla. 2015).  Throughout this complex Action,  Class Counsel has acted with diligence, skill, and professionalism.  Class Counsel are experienced in complex class litigation and have successfully prosecuted similar cases throughout the country.  Further, this Court has already appointed them as Class

Counsel in connection with this Settlement. In addition, Defendants do notchallenge Class Counsel's adequacy to serve as Class Counsel.

16.     Pursuant to Rule 23(g), the Court confirms the appointment of Jason R. Doss of The Doss Firm, LLC and Jason Kellogg of Levine, Kellogg, Lehman, Schneider + Grossman as Class Counsel.

### 2.     The Proposal was Negotiated at Arm's Length.

17.     The Court concludes that this Settlement was negotiated at arm's length and without collusion based on the terms of the settlement itself, the length and difficulty of the negotiations, and the oversight of an expert mediator, Hunter R. Hughes III, for more than 100 collective hours. See Ingram v. The Coca-Cola Co., 200 F.R.D. 685, 693 (N.D. Ga. 2001) ("The fact that the entire mediation was conducted under the auspices of Mr. Hughes, a highly experienced mediator, lends further support to the absence of collusion.").

### 3.     The Adequacy of Relief Provided by the Settlement.

18.     Class Counsel has significant experience in class action and complex fraud litigation, and believe that the multi-million-dollar relief provided by the Settlement Agreement is fair, reasonable, and adequate.   The Court is entitled to rely upon the judgment of experienced counsel.   See, e.g., Nelson v. Mead Johnson & Johnson Co., 484 F. App'x 429, 434 (11th Cir. 2012) ("Absent fraud, collusion, or

the like, the district court should be hesitant to substitute its own judgment for that of counsel.") (internal quotations omitted).

19.     Furthermore, the Settlement will recover nearly $16 million out of approximately $24 million that Diversified, Sonoqui, and/or the ALT Money entities ultimately lent to Collins Asset Group, LLC ("CAG") as part of their scam using unregistered salespersons and now-defunct shell companies to trick investors into lending money to Diversified and Sonoqui in exchange for promissory notes issued by those entities. This is an extraordinary result, especially in a case like this where there were multiple layers to the investment scheme and multiple shell companies and/or individuals such as Daryl Bank, whom a jury in this case could find fully culpable for the entire fraudulent scheme, leaving Plaintiffs and the Settlement Class with no ability to recover. [Doc. 70-1].

20.     The Settlement Class has embraced the Settlement.  The deadline for Settlement Class Members to opt-out or object to the Settlement was April 3, 2021. Id. No Settlement Class Members opted out or objected.  Id. In addition, 234 claim forms were submitted to the Settlement Administrator, which is over 66% of the Settlement Class who received notice.  Id.

21.     To date, the amount claimed by all Settlement Class Members is approximately $24 million.

22.     That the relief is fair, reasonable, and adequate is further confirmed by considering four specific factors enumerated in new Rule 23(e)(2).

### a.     The Risks, Costs and Delay of Continued Litigation.

23.     The cost and delay of continued litigation are substantial given that the Settlement will bring about the conclusion of two separate lawsuits involving more than 100 parties.  But for the Settlement, the parties will likely incur significant amounts in legal fees and expenses related to discovery and motion practice.

24.     The risks are also substantial.  If the Settlement is not approved, there are significant procedural issues that will be heavily litigated about whether the Interpleader Action and/or Thaxton case will be able to proceed.  Other inevitable motion practice related to the sufficiency of the allegations and class certification poses risks and challenges.   And even if Plaintiffs prevail on all of those legal issues, they face the risks that causation cannot be proved, discovery will not support their factual allegations, a jury might find for the Collins Defendants or thatan appellate court might reverse a Plaintiff's judgment.

### b.     An Effective Method of Distributing Relief.

25.     The distribution process, which provides for prompt payments to Settlement Class Members by check for a simple and safe mechanism whereby Settlement Class Members can request that payment be made to a different payee, will be efficient and effective.  The appointment of a Settlement Administrator, RG2 Claims Administration LLC, further reinforces the efficacy of the relief process

because a qualified entity will be designated to manage the entire distribution process.

26.    Class members have been able to easily file claims and provide reasonable documentation to support their claim.   Once again, the fact that over 66% of the Settlement Class submitted claims seeking to recover from the Settlement Amount is support for the fact that the method for distributing relief is effective.

### c.    The Reasonable Terms Relating to Attorneys' Fees.

27.    Class Counsel requested 25% of the negotiated $15,755,000 Settlement Amount is reasonable.  [Doc. 67].  This request is consistent with Camden I Condo. Ass'n, Inc. v. Dunkle, 946 F.2d 768 (11th Cir. 1991), which mandates use of the percentage method and noted 25% was then viewed as the "benchmark." Following Camden I, fee awards in the Eleventh Circuit averaged around one-third. See Wolff v. Cash 4 Titles, 2012 WL 5290155 at *5–6 (S.D. Fla. Sept. 26, 2012) ("The average percentage award in the Eleventh Circuit mirrors that of awards nationwide—roughly one-third"); George v. Acad. Mortg. Corp. (UT), 369 F. Supp. 3d 1356, 1382 (N.D. Ga. 2019) (discussing the normality of 33% contingency fees); Eisenberg, Attorneys' Fees in Class Actions: 2009-2013, 92 N.Y.U. LAW REV. 937, 951 (2017) (empirical study showing the median award in Eleventh Circuit is 33%).

28.    Given the diligence and experience of Class Counsel, which investigated and developed Plaintiffs' claims, the complexity of the issues involved, the substantial amount of time dedicated to the Action and Settlement, and the financial risk associated with the representation, the Court finds that a 25% fee in favor of Class Counsel is reasonable.

### d.    The Agreements Identified Pursuant to Rule 23(e)(3).

29.    Rule 23(e)(3) states that "[t]he parties seeking approval must file a statement identifying any agreement made in connection with the proposal." Vendors providing services are subject to contracts relating to their obligations under the settlement. These provisions do not affect the adequacy of the relief.  In addition, no Settlement Class Member opted-out of the Settlement so that provision in the Settlement Agreement that could have given the Collins Defendants the ability to terminate the Settlement were not triggered and thus do not affect the adequacy of relief obtained here.

### 4. The Equitable Treatment of Class Members Relative to Others.

30.    The Settlement Agreement treats all members of the Settlement Class equally.  Accordingly, each class member is eligible to receive the same benefits as other class members.  No class members are favored over another and, therefore, the treatment is equitable.

31.     The Court  finds that the Class Representatives and Class Counsel have adequately represented the Settlement Class, finds that the Settlement is a product of extensive arms-length negotiations by seasoned counsel and that it is fair, reasonable, and adequate.

## II.     The Court Certifies the Settlement Class.

32.     For the reasons set forth above and below, the Court certifies the following Settlement Class for settlement purposes only:

> Any individuals or entities and their assignees who are citizens of the United States who lent money to Diversified Financing, LLC, Sonoqui, LLC or any of the ALT Money Investments entities and in exchange received a promissory note and/or membership interest issued by Diversified, Sonoqui or any of the ALT Money Investments entities indicating that the money would thereafter be loaned to CAG.[5]

### A.     The Settlement Class is Sufficiently Numerous.

33.     Rule 23(a)(1) requires that the class be so numerous that individual joinder of all plaintiffs is impracticable.  There is no rigid standard for determining numerosity, but the Eleventh Circuit has held that, generally, "less than twenty-one is inadequate, more than forty adequate." See Sanchez-Knutson v. Ford Motor Co., 310 F.R.D. 529, 536 (S.D. Fla. 2015) (quoting Cox v. Am. Cast Iron Pipe Co., 784 F.2d 1546, 1553 (11th Cir. 1986)).

---

[5] Excluded from the Settlement Class are (i) Plaintiffs' counsel and family members;  (ii) Defendants' employees, officers, directors, members, or managers; (iii) Defendants' legalrepresentatives; (iv) any entity in which Defendants have a controlling interest; (v) any Judge to whom the litigation is assigned and all members of the Judge's immediate family; and (vi) all persons who timely and validly request exclusion from the Settlement Class.

34.     Here, there is no question that the numerosity requirement is met given that hundreds of Settlement Class Members were provided notice of the Settlement and submitted claims.

**B.     Questions of Law and Fact are Common to the Class.**

35.     The second prerequisite to class status requires questions of law or fact common to the class.  See FED. R. CIV. P. 23(a)(2). Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury. See Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 349–50 (2011); see also Williams v. Mohawk Indus., Inc., 568 F.3d 1350, 1356 (11th Cir. 2009) (describing plaintiff's commonality burden as a "low hurdle" that does not require all questions of law and fact raised to be common). Here, common issues of law and fact abound because each member of the proposed Settlement Class loaned money to Defendants Diversified, Sonoqui and/or the ALT Money entities through intermediaries in a scheme, and received similar promissory notes in exchange for their money. The promissory notes also indicated that Plaintiffs' and the Settlement Class Members' money would subsequently be loaned by Defendants Diversified, Sonoqui and/or the ALT Money Investment entities to Collins Asset Group, LLC.  The Court finds that the commonality requirement is met.

**C.      Plaintiffs' Claims are Typical of Class Members' Claims.**

36.      The third prerequisite to class status mandates that the claims of the putative Class Representatives be typical of the claims held by the broader class, which is not a demanding test. See FED. R. CIV. P. 23(a)(3); County of Monroe, Fla. v. Priceline.com, Inc., 265 F.R.D. 659, 667 (S.D. Fla. 2010). Typicality measures whether a "significant nexus" exists between the claims of the Class Representatives and those of the class at large.  Columbus Drywall & Insulation, Inc., 258 F.R.D. at 555 (quoting Hines v. Widnall, 334 F.3d 1253, 1256 (11th Cir. 2003)). Furthermore, the typicality requirement does not mandate that all class members share identical claims, rather they must share only the same "essential characteristics" of the larger class.  Id. Plaintiffs' claims share the essential characteristics of the Settlement Class Members' claims because of the scheme in which Plaintiffs lost their investments.  The Court finds that the typicality requirement is met.

**D.      Plaintiffs and Class Counsel are Adequate Representatives.**

37.      Plaintiffs do not have antagonistic interests to the Settlement Class and the proposed Class Counsel possesses the necessary experience and qualifications to lead this litigation.  As stated above, the Court finds Stephen Thaxton and Patricia Thaxton to be adequate class representatives and accordingly, the final prerequisite

of class status has been met.  See FED. R. CIV. P. 23(a)(4); Columbus Drywall &

Insulation, Inc., 258 F.R.D. at 555.

**E.     Plaintiffs Meet the Requirements of Rule 23(b)(3).**

38.     Rule 23(b)(3) requires that "questions of law or fact common to class

members predominate over any questions affecting only individual members," and

that class treatment is "superior to other available methods for fairly and efficiently

adjudicating the controversy."

39.     The predominance requirement "tests whether proposed classes are

sufficiently cohesive to warrant adjudication by representation." Amchem Prods.,

Inc. v. Windsor, 521 U.S. 591, 623 (1997).   "Common issues of fact and law

predominate if they have a direct impact on every class member's effort to establish

liability and on every class member's entitlement to . . . relief." Carriuolo v. GM

Co., 823 F.3d 977, 985 (11th Cir. 2016).  Here, common questions predominate

because all claims arise from a similar course of conduct involving Plaintiffs, the

proposed Settlement Class members, CAG, Diversified Financing, LLC, Sonoqui,

LLC and/or any of the ALT Money entities.   Accordingly, the only significant

individual issues involve damages, which rarely present predominance problems.

See, e.g., Home Depot, 2016 WL 6902351 at *2; Brown v. Electrolux Home

Products, Inc., 817 F.3d 1225, 1239 (11th Cir. 2016) (individualized damage

generally does not defeat predominance).

40.    The inquiry into whether the class action is the "superior" method for a particular case focuses on "increased efficiency." Agan v. Katzman & Korr, P.A., 222 F.R.D. 692, 700 (S.D. Fla. 2004).  Given the time and expense associated with litigating more than 100 cases separately, such a method would be inefficient in contrast to a class action and, therefore, the superiority element is satisfied.

## III.    Plaintiffs' Unopposed Motion for Attorney's Fees, Expenses and Service Award  [Doc. 67]

41.    In Plaintiffs' Unopposed Motion for Attorney's Fees, Expenses and Service Award, Class Counsel requests that the Court approve the requested attorney's fee of $3,938,750, which is 25% of the $15,755,000 Settlement Amount and reimbursement of current expenses in the amount of $14,926.90.  [Doc. 67].  In its motion, Class Counsel also requests service awards of $5,000 to each of the Class Representatives should the United States Eleventh Circuit Court of Appeals reverse its decision in Johnson v. NPAS Solutions, LLC, 975 F.3d 1244, 1258–60 (11th Cir. 2020), which is currently being considered for a rehearing *en banc*.  Id. However, at the final hearing held on June 15, 2021, Class Counsel stated that the Court could alternatively deny its request for service awards at this time and retain jurisdiction for the purpose of revisiting the denial of service awards if the Eleventh Circuit holds a rehearing *en banc* in Johnson and reverses its decision, or another Eleventh Circuit decision overrules the Johnson decision.

The Court finds this alternative approach appropriate.  Therefore, the Court denies Class Counsel's request for service awards of $5,000 to each of the Class Representatives pursuant to the ruling in Johnson, 975 F.3d at 1258–60.     The Court retains jurisdiction for the purpose of revisiting the denial of service awards should the Eleventh Circuit change course from the ruling in Johnson v. NPAS Solutions, LLC.

42.     Pursuant to the Settlement Agreement, Defendants agreed not to oppose the request for Attorney's fees and no Settlement Class Member objected to this Court awarding the amounts requested.

43.     It is well established that counsel whose work results in a substantial benefit to a class are entitled to a fee under the common benefit doctrine.  Boeing Co. v. Van Gemert, 444 U.S. 472, 478 (1980).  The doctrine serves the "twin goals of removing a potential financial obstacle to a plaintiff's pursuit of a claim on behalf of a class and of equitably distributing the fees and costs of successful litigation among all who gained from the named plaintiff's efforts." In re Gould Sec. Litig., 727 F. Supp. 1201, 1202 (N.D. Ill. 1989).  The doctrine also ensures those who benefit are not "unjustly enriched." Van Gemert, 444 U.S. at 478. The controlling authority in the Eleventh Circuit is Camden I Condominium Ass'n, Inc. v. Dunkle, 946 F.2d 768, 774–75 (11th Cir. 1991), which holds that fees in common fund cases must be calculated using the percentage rather than the lodestar approach.  Camden I

does not require any particular percentage.  The court stated: "There is no hard and fast rule … because the amount of any fee must be determined upon the facts of each case." 946 F.2d at 774; see also, e.g., Waters v. Int'l. Precious Metals Corp., 190 F.3d 1291, 1294 (1999).

44.	In selecting the percentage in a particular case, a district court should apply the factors from Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717 (5th Cir. 1974), as well any other pertinent factors.  Camden I, 946 F.2d at 776. Following Camden I, percentage-based fee awards in the Eleventh Circuit have averaged around 33% of the class benefit.  See, e.g., Wolff v. Cash 4 Titles, 2012 WL 5290155 at *5-6 (S.D. Fla. Sept. 26, 2012) (noting that fees in this Circuit are "roughly one-third"); T. Eisenberg, et al., Attorneys' Fees in Class Actions: 2009-2013, 92 N.Y.U. Law Rev. 937, 951 (2017) (the median fee from 2009 to 2013 was 33%); B. Fitzpatrick, An Empirical Study of Class Action Settlements and Their Fee Awards, 7 J. Empirical L. Stud. 811 (2010) (during 2006 and 2007 the median fee was 30%); Decl. of H. Hughes, Champs Sports Bar & Grill Co. v. Mercury Payment Systems, LLC, No. 1:16-CV-00012-MHC (N.D. Ga.) (Doc. 82-1 at 4–5) (90% of the hundreds of common fund settlements a leading Atlanta mediator has negotiateprovide for a fee of one-third of the benefit).

45.     In support of their motion for attorney's fees, Class Counsel submitted the Declaration of Michael B. Terry, a fee expert, who provided an expert opinion that "a fee award 25 percent of the settlement amount is a reasonable fee under all of the circumstances and is, in fact, below what is considered customary, despite the special circumstances of this case which would warrant a greater fee than is customary."[6]  Declaration of Michael B. Terry ("Terry Declaration") [Doc. 67-1].

46.     Courts routinely apply a 12-factor analysis when evaluating the reasonable percentage to award class counsel: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and the length of the professional relationship with the client; and (12) awards in similar cases. See id. at 772 n.3 (citing Johnson v. Ga. Highway Express, Inc., 488 F.2d 714, 717–19 (5th Cir. 1974)).

47.     These 12 factors are nonexclusive.  "Other pertinent factors are the time required to reach a settlement, whether there are any substantial objections by class

---

[6] Michael B. Terry's Declaration also cites to a string of cases to support his opinion.  See Terry Declaration ¶ 11 [Doc. 67-1].

members or other parties to the settlement terms or the fees requested by counsel, any non-monetary benefits conferred upon the class by the settlement, and the economics involved in prosecuting a class action." Id. at 775. In addition, the Eleventh Circuit has encouraged lower courts to consider any other factors unique to the particular case. See id. Most fundamentally, however, "monetary results achieved predominate over all other criteria." See id. at 774.

48.     Finally, when analyzing the various factors, a lodestar cross-check is unnecessary, and in the view of many class action scholars, is counterproductive and therefore undesirable.  In fact, "in the Eleventh Circuit, 'the lodestar approach should not be imposed through the back door via a 'cross-check.'" Wilson v. EverBank, No. 14-cv-22264, 2016 WL 457011, at *13 (S.D. Fla. Feb. 3, 2016) (quoting In re Checking Account Overdraft Litig., 830 F. Supp. 2d 1330, 1362 (S.D. Fla. 2011)). The Eleventh Circuit "made clear in Camden I that percentage of the fund is the *exclusive* method for awarding fees in common fund class actions." In re Checking Account Overdraft Litig., 830 F. Supp. 2d at 1362 (emphasis added) (citing Alba Conte, ATTORNEY FEE AWARDS § 2.7, at 91 n.41 ("The Eleventh . . . Circuit[ ] repudiated the use of the lodestar method in common-fund cases.")). Lodestar "encourages inefficiency" and "creates an incentive to keep litigation going in order to maximize the number of hours included in the court's lodestar calculation." Id. at

1362–63.  Thus, "courts in this Circuit regularly award fees based on a percentage of the recovery, without discussing lodestar at all." Id. at 1363; see also Reyes v. AT&T Mobility Servs., LLC, No. 10-20837, at *6 (S.D. Fla. Jun. 21, 2013) (Cooke, J.); In re Takata Airbag Prods. Liability Litig., No. 15-02599, at *9-10 (S.D. Fla. Nov. 1, 2017).

49.    Michael B. Terry reviewed the file in the context of the Camden I factors and concluded that Class Counsel's request for a fee equal to 25% of the Settlement Amount is reasonable under all of the circumstances and is, in fact, below what is considered customary, despite the special circumstances of this case which would warrant a greater fee than is customary.  See id. at ¶ 17.

50.    In light of these 12 factors, the arguments made by Class Counsel, Class Counsel's Declaration and the Declaration of Michael B. Terry all submitted with the unopposed motion, the Court finds that Class Counsel's request for an award of attorney's fees in the amount of $3,938,750, i.e., 25% of the $15,755,000 Settlement Amount, and reimbursement of current expenses in the amount of $14,926.90 is reasonable and warranted.

## IV.  Final Approval of the Settlement Agreement and Bar Order

51.    Pursuant to Rule 23(c)(3)(B), since no Settlement Class Members opted out or objected to the Settlement, the Court finds that all Settlement Class Members are bound by the Settlement Agreement and this Final Order and Judgment.

52.     The Court confirms its earlier appointment of RG2 Claims Administration LLC as the Settlement Administrator.

53.     The Court finally approves the distribution plan set forth in the Settlement Agreement as a fair and reasonable method to allocate the settlement benefits among Settlement Class Members.  The Court directs that the Settlement Administrator continue to effectuate the distribution plan according to the terms of the Settlement Agreement.  The Court reaffirms that any Settlement Class Members who fail to submit a claim in accordance with the requirements and procedures specified in the Notice shall be forever barred from making a claim, but will in all other respects be subject to, bound by, and enjoy the rights provided for pursuant to the provisions in the Settlement Agreement, the releases and Bar Order included in that Agreement and this Final Order and Judgment.

54.     By operation of this Final Order and Judgment,  as of the Effective Date, the Releases and Bar Order set forth in the Settlement Agreement shall be given full force and effect.

55.     The Settlement Class Representatives, Settlement Class Members, Defendants, and all Barred Persons (as defined in the Settlement Agreement) are hereby permanently barred and enjoined (including during the pendency of any appeal taken from this Final Order and Judgment) from commencing, pursuing, maintaining, enforcing, or prosecuting, either directly or indirectly, any Released

Claims or Barred Claims in any judicial, administrative, arbitral, or other forum against any Defendant or Defendants' Released Parties. For the avoidance of doubt, Section XI of the Settlement Agreement takes full force and effect and this permanent bar and injunction is necessary to protect and effectuate the Settlement Agreement, this Final Order and Judgment, and this Court's authority to effectuate the Settlement Agreement, and is ordered in aid of this Court's jurisdiction and to protect its judgments. Nothing in this Final Order and Judgment shall preclude any action to enforce the terms of the Settlement Agreement.

56.     The Settling Parties are ordered to implement each and every obligation set forth in the Settlement Agreement in accordance  with the terms and provisions of the Settlement Agreement. The Court retains jurisdiction over this action and the Settling Parties, Settlement Class Members, attorneys, and other appointed entities, for all matters relating to this action, including (without limitation) the administration, interpretation, effectuation or enforcement of the SettlementAgreement and this Final Order and Judgment.

57.     There is no just reason to delay entry of this Final Order and Judgment and immediate entry by the Clerk of the Court is directed pursuant to Rule 54(b) of the Federal Rules of Civil Procedure.

## V.   Conclusion

In sum, the Court **GRANTS "**Plaintiffs'  Unopposed Motion for Final Approval of Proposed Settlement." [Doc. 70].  Accordingly, the Court **APPROVES** the Settlement Agreement, except to the extent it provides a service or incentive award to Plaintiffs Stephen Thaxton and Patricia Thaxton for their service as Class Representatives.  Additionally, the Court **GRANTS IN PART AND DENIES IN PART "**Plaintiffs' Unopposed Motion for Attorney's Fees, Expenses and Service Award." [Doc. 67].  The Court **GRANTS** Class Counsel's requested attorney's fee of $3,938,750.00  and  the  reimbursement  of  litigation expenses  in the amount of $14,926.90 to be paid from the Settlement Amount in accordance with the Settlement Agreement.  However, the Court **DENIES** Class Counsel's request for service awards of $5,000.00 to each of the Class Representatives pursuant to  the  holding  in Johnson v. NPAS Solutions, LLC, 975 F.3d 1244.   The  Court  **RETAINS** jurisdiction for the  purpose of revisiting the denial of  service  awards should the Eleventh Circuit change course from the ruling in the Johnson v. NPAS Solutions case.

Further, in  accordance  with  the  Settlement  Agreement,  the  Court **DISMISSES WITH PREJUDICE** this action and the Interpleader Action, Collins Asset Group, LLC v. Diversified Financing, LLC et al., Case No. 1:20-CV-02818-ELR.  The Court **DIRECTS** the Clerk to file this Final Order and Judgment in the Interpleader Action, 1:20-CV-2818-ELR.   Additionally,  due  to  this  settlement

approval, the Court **DENIES AS MOOT** "Interpleader Plaintiff and Various Interpleader Defendants' Joint Motion to Reopen" in the Interpleader Action, 1:20-CV-2818-ELR.  [Doc. 354].

     **SO ORDERED**, this 18th day of June, 2021.

_Eleanor L. Ross_
_____
ELEANOR L. ROSS
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF GEORGIA